THACHER PROFFITT & WOOD LLP
Two World Financial Center
New York, New York 10281
(212) 912-**Judge Hellerstein**
Joseph G. Grasso
Jesse L. Snyder
*Attorneys for Plaintiff*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW STREAM COMMERCIAL FINANCE,
LLC,

                    Plaintiff,

      - against -

STAR OF AMERICA, O.N. 973452,
her engines, tackle, gear and
appurtenances, etc., *in rem*; MAJESTIC
STAR, O.N., 1100715, her engines, tackle,
gear and appurtenances, etc., *in rem*; Majestic
Voyages, Inc., *in personam;* and Majestic Star, Inc.,
*in personam,*

                    Defendants.

ECF CASE

Civ. No. _____
(In Admiralty)

RECEIVED
MAR 3 1 2008
U.S.D.C. S.D. N.Y.
CASHIERS

VERIFIED COMPLAINT

---

## <u>VERIFIED COMPLAINT</u>

    Plaintiff, NEW STREAM COMMERCIAL FINANCE, LLC (hereinafter "New Stream"),

by and through its attorneys, Thacher Proffitt & Wood LLP, as and for its Verified Complaint

against the STAR OF AMERICA, *in rem*; MAJESTIC STAR, *in rem;* Majestic Voyages, Inc., *in*

*personam,* and Majestic Star, Inc., *in personam,* in a cause of action both civil and maritime,

respectfully alleges upon information and belief:

## JURISDICTION

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Court has jurisdiction pursuant to 28 U.S.C. § 1333 and 46 U.S.C. § 31301 et seq. and the General Maritime Law of the United States.

## THE PARTIES

2.      Plaintiff New Stream is a Delaware limited liability company with an address at 38-C Grove Street, 2nd Floor, Ridgefield, Connecticut.

3.      *In rem* Defendant STAR OF AMERICA, O.N. 973452, is a 103.4 foot aluminum hulled passenger vessel of 67 gross tons that is registered in the United States and used for dinner cruises. STAR OF AMERICA is now within this District and within the jurisdiction of this Honorable Court, and is specifically located at Surfside 3 Marina Chelsea Piers, Pier 60.

4.      *In rem* Defendant MAJESTIC STAR, O.N. 1100715, is a 94.8 foot steel hulled passenger vessel of 97 gross tons that is registered in the United States and used for dinner cruises. MAJESTIC STAR is now within this District and within the jurisdiction of this Honorable Court, and is specifically located at Surfside 3 Marina Chelsea Piers, Pier 60.

5.      Upon information and belief, *in personam* Defendant Majestic Star, Inc. is a New Jersey corporation with offices located at 800 Palisade Avenue #22E, Fort Lee, NJ and 373 Park Avenue South, 7th Floor, New York, New York  10016. Majestic Star, Inc. is the owner of STAR OF AMERICA.

2

6.    Upon information and belief, *in personam* Defendant Majestic Voyages, Inc. is a Delaware corporation with a primary business location at 373 Park Avenue South, 7th Floor, New York, New York 10016. Majestic Voyages, Inc. is the owner of MAJESTIC STAR.

## FACTS

7.    Defendant Majestic Star, Inc. executed a Renewal Promissory Note ("Promissory Note 1") in favor of debis Financial Services, Inc., dated as of December 3, 1999, in the principal amount of One Million Three Hundred Seventy Four Thousand Two Hundred Sixteen and 77/100 ($1,374,216.77). Exhibit A. The Renewal Promissory Note amended and restated earlier promissory notes.

8.    As security for the Promissory Note 1, Majestic Star, Inc. executed, in favor of debis Financial Services, Inc., that certain First Preferred Mortgage ("Star of America First Mortgage"), dated October 30, 1997, on the STAR OF AMERICA, which mortgage was duly filed with the United States Coast Guard, National Documentation Center, on November 20, 1997 at 11:30 a.m. and recorded in Book 97-119, Page 89.  Exhibit B.

9.    Pursuant to an Assignment of Preferred Mortgage dated July 14, 2000, debis Financial Services, Inc. assigned the whole of its interest in Promissory Note 1 and in the Star of America First Mortgage securing Promissory Note 1, and all related agreements and guarantees, to Associates Commercial Corporation ("ACC") n/k/a CitiCapital Commercial Corporation ("CitiCapital"), which said Assignment was filed with the United States Coast Guard, National Vessel Documentation Center, on July 25, 2000, at 11:04 a.m., and recorded in Book 00-100, Page 485. Exhibit C. Accordingly, pursuant to a First Amendment to First Preferred Mortgage dated June 25, 2004, Majestic Star, Inc. and CitiCapital amended the Star of America First

Mortgage securing the Renewal Promissory Note to, among other things, reflect the change in the corporate name of the Mortgagee from "debis Financial Services, Inc." to "CitiCapital Commercial Corporation." Exhibit D. The First Amendment to First Preferred Mortgage was filed with the United States Coast Guard, National Vessel Documentation Center, on July 6, 2004 at 2:38 p.m. and recorded in Book 04-71, Doc. ID 180.

10.     Defendant Majestic Voyages, Inc. executed a Promissory Note ("Promissory Note 2") in favor of ACC n/k/a CitiCapital dated as of May 17, 2001 in the principal amount of Two Million Five Hundred Sixty-Five Thousand dollars ($2,565,000) (as amended, restated, supplemented or otherwise modified from time to time). Exhibit E.

11.     As security for Promissory Note 2, Majestic Voyages, Inc. executed, in favor of ACC n/k/a CitiCapital, that certain Preferred Ship Mortgage ("Majestic Star Mortgage"), dated May 17, 2001, on the MAJESTIC STAR, which mortgage was duly filed with the United States Coast Guard, National Documentation Center, on May 18, 2001 at 3:03 p.m. and recorded in Book 01-44, Page 220.   Exhibit F.

12.     Defendant Majestic Star, Inc. executed a Promissory Note ("Promissory Note 3") in favor of ACC dated as of May 17, 2001 in the principal amount of Five Hundred Thousand dollars ($500,000) (as amended, restated, supplemented or otherwise modified from time to time). Exhibit G.

13.     As security for Promissory Note 3, Majestic Star, Inc. executed, in favor of ACC n/k/a CitiCapital, that certain Preferred Ship Mortgage ("Star of America Second Mortgage"), dated May 17, 2001, on the STAR OF AMERICA, which mortgage was duly filed with the

United States Coast Guard, National Documentation Center, on May 18, 2001 at 3:03 p.m. and recorded in Book 01-44, Page 218. Exhibit H.

14.     Promissory Note 1 was guaranteed by Majestic Voyages, Inc., who executed a Guaranty in favor of debis Financial Services on or about October 30, 1997. Exhibit I. As described above, debis Financial Services' rights under this Guarantee were later assigned to ACC n/k/a CitiCapital.

15.     Promissory Notes 2 and 3 were guaranteed by Majestic Star, Inc. and Majestic Voyages, Inc., who each executed a Continuing Guaranty on or about May 17, 2001. Exhibits J, K.

16.     Pursuant to a certain Assignment and Assumption Agreement dated as of September 22, 2006, CitiCapital sold and assigned all of its rights, title and interest in each of the Promissory Notes and the Preferred Ship Mortgages to the Plaintiff. Exhibit L.

17.     At the time of the filing of this action, Majestic Star, Inc. is in default of its payment obligations under Promissory Notes 1 and 3, and Majestic Voyages, Inc. is in default of its payment obligations under Promissory Note 2. Majestic Star, Inc. has not paid principal and/or interest on Promissory Notes 1 and 3 since September 7, 2007, and Majestic Voyages, Inc. has not paid principal and/or interest on Promissory Note 2 since September 7, 2007. Under the terms of each of the Promissory Notes, the entire unpaid principal balance with interest is currently due and payable.

18.     No part of the amounts due to the Plaintiff have been paid, and there have been no other proceedings to recover such amounts.

19.    As a direct and proximate result of Majestic Star, Inc. and Majestic Voyages, Inc.'s default, Plaintiff is entitled to foreclose on the Star of America First Mortgage, the Star of America Second Mortgage and the Majestic Star Mortgage (collectively, the "Mortgages"), under 46 U.S.C. § 31325.

20.    As a direct and proximate result of Majestic Star, Inc. and Majestic Voyages, Inc.'s default, Plaintiff has valid and enforceable preferred mortgage liens against the STAR OF AMERICA, O.N. 973452 for $2,201,093.60 plus interest, and MAJESTIC STAR, O.N. 1100715, for $3,012,354.38 plus interest.

21.    In addition, Attorney's fees, costs, expenses and disbursements will be incurred in the prosecution of this action and will be due and owing from Defendants in accordance with each of the Mortgages.

WHEREFORE, Plaintiff prays:

A.    That, pursuant to Rule (3) of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Honorable Court enter an Order authorizing warrants for the arrest of the STAR OF AMERICA, O.N. 973452, and the MAJESTIC STAR, O.N. 1100715, and their engines, tackle, furniture, apparel, appurtenances, bunkers and all other necessaries, now or at any time on board.

B.    That warrants be issued for the arrest of the STAR OF AMERICA, O.N. 973452, and the MAJESTIC STAR, O.N. 1100715, and their engines, tackle, furniture, apparel, appurtenances, bunkers and all other necessaries, now or at any time on board.

C.    The actual notice of the commencement of this suit in manner approved by the Court be given to the master or caretaker of the STAR OF AMERICA, O.N. 973452, and the MAJESTIC STAR, O.N. 1100715, and to any person, firm or corporation which has recorded a Notice of Claim of any undischarged lien upon such vessels.

D.    That process in due form of law according to the course and practice of this Honorable Court in causes of admiralty and maritime jurisdiction may issue against STAR OF AMERICA, O.N. 973452, her engines, tackle, furniture, apparel, appurtenances, bunkers and all other necessaries, and that all persons claiming any title or right to said vessel may be cited to appear and answer under oath the allegations of this Verified Complaint.

E.    That process in due form of law according to the course and practice of this Honorable Court in causes of admiralty and maritime jurisdiction may issue against MAJESTIC STAR, O.N. 1100715, her engines, tackle, furniture, apparel, appurtenances, bunkers and all other necessaries, and that all persons claiming any title or right to said vessel may be cited to appear and answer under oath the allegations of this Verified Complaint.

F.    That the Star of America first and second Mortgages be declared to be valid and subsisting liens in the sum of $2,201,093.60 plus interest, together with all other amounts which have been or are required to be disbursed by Plaintiff for the care, insuring, preservation, storage and mooring of Defendant vessel, and all other advances, expenses, attorney fees, costs and disbursements by Plaintiff, together with post-judgment interest at the maximum statutory rate, such liens to be prior and superior to the interest, maritime and non-maritime liens or claims of any and all persons, firms, or corporations whatsoever.

G.    That the Majestic Star Mortgage be declared to be a valid and subsisting lien in the sum of $3,012,354.38 plus interest, together with all other amounts which have been or are required to be disbursed by Plaintiff for the care, insuring, preservation, storage and mooring of Defendant vessel, and all other advances, expenses, attorney fees, costs and disbursements by Plaintiff, together with post-judgment interest at the maximum statutory rate, such lien to be prior and superior to the interest, maritime and non-maritime liens or claims of any and all persons, firms, or corporations whatsoever.

H.    That STAR OF AMERICA, O.N. 973452, her engines, tackle, furniture, apparel, appurtenances, bunkers and all other necessaries be condemned and sold to pay the demands of Plaintiff, with interest and costs.

I.    That MAJESTIC STAR, O.N. 1100715, her engines, tackle, furniture, apparel, appurtenances, bunkers and all other necessaries be condemned and sold to pay the demands of Plaintiff, with interest and costs.

J.    That it be decreed that any and all persons, firms, or corporations claiming any interest in STAR OF AMERICA, O.N. 973452, are forever barred and foreclosed of and from all right or equity of redemption or claim of, in or to the mortgaged vessel and every part thereof.

K.    That it be decreed that that any and all persons, firms, or corporations claiming any interest in MAJESTIC STAR, O.N. 1100715, are forever barred and foreclosed of and from all right or equity of redemption or claim of, in or to the mortgaged vessel and every part thereof.

L.     That Plaintiff recover from all Defendants, jointly and severally, the amount of any deficiency, including attorneys' fees, expenses and costs that may be due the Plaintiff after applying the proceeds of the sale of the mortgaged vessels to the amount of the decrees herein.

M.     That Plaintiff have such other and further relief deemed just and proper by this Honorable Court.

Dated: New York, New York
       March 31, 2008

                              THACHER PROFFITT & WOOD LLP

                              By: _____

                              Joseph G. Grasso
                              jgrasso@tpw.com
                              Jesse L. Snyder
                              jsnyder@tpw.com

                              Two World Financial Center
                              New York, New York 10281
                              (212) 912-7400

                              *Attorneys for Plaintiff New Stream Commercial Finance, LLC*

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK      )
                               ) ss:
COUNTY OF NEW YORK    )

1.     My name is Jesse L. Snyder.

2.     I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.     I am an attorney in the firm of Thacher Proffitt & Wood LLP, as attorneys for the Plaintiff.

4.     I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.     The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.     The source of my knowledge and the grounds for my belief are the statements made and the documents, and information, received from the Plaintiff and agents and/or representatives of the Plaintiff.

7.    I am authorized to make this Verification on the behalf of the Plaintiff.

_____
Jesse L. Snyder

Sworn to before me this
31st day of March, 2008

_____
Notary Public

BRENDAN ERNEST ZAHNER
NOTARY PUBLIC, State of New York
No. 02ZA6088482
Qualified in Nassau County
Commission Expires March 3, 2011

11

Exhibit A

## RENEWAL PROMISSORY NOTE
### (Vessel Financing - Fixed Rate)

US$1,374,216.77

Date: as of December 3, 1999

For value received, Majestic Star, Inc., a New Jersey corporation, whose principal place of business is One World Trade Center, Suite 8901, New York, NY 10048 ("Maker"), promises to pay to the order of debis Financial Services, Inc., a Delaware corporation ("Lender"), at its principal place of business at 201 Merritt 7, Suite 700, Norwalk, Connecticut 06858, U.S.A., or at such other place as the holder of this Note may designate in writing, in United States funds, the principal, interest, and other sums specified below on the terms set forth below.

This Renewal Promissory Note ("Note") effectively renews, replaces and supersedes that Promissory Note dated October 30, 1997, which was amended by that Amendment Agreement dated November 21, 1997 and that Second Amendment to Promissory Note dated March 17, 1999, by Maker in favor of Lender, and all amounts formerly evidenced thereby are now due hereunder.

1.      Principal Amount.  The principal amount owing on this Note is one million three hundred seventy four thousand two hundred sixteen and 77/100 in United States dollars (US$1,374,216.77).

2.      Interest Rate.  The interest rate ("Interest Rate") on amounts owing shall be fixed at the following rate

Ten and one half percent (10.50%), which equals the Prime Rate of the Bank of America ("Prime Rate") (which is not necessarily the lowest rate of interest that Bank of America charges its borrowers), as of October 30, 1997, which was eight and one half percent (8.50%) on that date, plus two percent (2.00%) per annum, fixed for a period of thirty five (35) months from the date of this note ("Commencement Date"), and, at the option of the Lender, adjusted to the Prime Rate in effect on the day immediately following the due date of the thirty fifty (35th) payment, plus two percent (2.00%) per annum, to remain fixed for the following sixty (60) month period.  The Interest Rate may, at the option of the Lender, be adjusted in the above described manner at the end of each sixty (60) month period thereafter, for the term hereof.

Interest as stated is per annum, compounded monthly on the outstanding balance.  Interest begins to accrue on the Commencement Date, and continues until all amounts owing on this Note have been fully paid.  Interest is calculated on the basis of a 360-day year and a 30-day month, compounded monthly.

3.      Payment.  As payment of this Note, Maker will pay Lender as follows:

Commencing on the thirtieth (30th) day after the Commencement Date, and continuing on the same date ("Payment Date") of each and every month thereafter until fully paid (if the Payment Date is on the 28th or 29th of February or the 31st of any other month, the Payment Date is the last day of each month; if the Payment Date is on the 30th of any month, the Payment Date is the last day of February and the 30th of each month):

Months 1-3:     three (3) monthly consecutive payments of $0.00;

Months 4-12:    nine (9) equal, consecutive, monthly principal and interest payments of $28,806.10;

- 1 -

XWN03268

FORD FINANCIAL SERVICES

| Months 13-15: | three (3) monthly consecutive payments of $0.00; |
| Months 16-24: | nine (9) equal, consecutive, monthly principal and interest payments of $28,906.10; |
| Months 25-27: | three (3) monthly consecutive payments of $0.00; |
| Months 28-36: | nine (9) equal, consecutive, monthly principal and interest payments of $28,906.10; |
| Months 37-39: | three (3) monthly consecutive payments of $0.00; |
| Months 40-48: | nine (9) equal, consecutive, monthly principal and interest payments of $28,906.10; |
| Months 49-51: | three (3) monthly consecutive payments of $0.00, |
| Months 52-60: | nine (9) equal, consecutive, monthly principal and interest payments of $28,906.10; |
| Months 61-63: | three (3) monthly consecutive payments of $0.00; |
| Months 64-72: | nine (9) equal, consecutive, monthly principal and interest payments of $28,906.10; |
| Months 73-75: | three (3) monthly consecutive payments of $0.00, |
| Months 76-84: | nine (9) equal, consecutive, monthly principal and interest payments of $28,906.10; |
| Months 85-87: | three (3) monthly consecutive payments of $0.00; |
| Months 88-95: | eight (8) equal, consecutive, monthly principal and interest payments of $28,906.10; |

*Provided however, that payments are estimates based on a Prime Rate of 8.50% in effect as of October 30, 1997, and subject to change, and that such payments shall change in accordance with changes in the Interest Rate as defined above.*

The entire balance of principal, interest, and any other amounts owed under this Note are due and owing on the earlier of (a) November 3, 2007, or (b) an accelerated maturity date, if any, resulting from a default under this Note.

4.    **Prepayment.** Any prepayment of any or all of the outstanding principal balance due under this Note that is made on or before November 3, 2000, shall be subject to an early termination fee equal to one percent (1.00%) of that principal balance existing immediately prior to the application of the prepayment.   After November 3, 2000, any or all of the outstanding principal balance may be prepaid without penalty.

5.    **Taxes.** All payments (whether of principal, interest, or otherwise) made by Maker to Lender are to be made free and clear of and without deduction for any taxes, levies, duties, charges, fees, or withholdings of any nature.  If Maker is required by law to make any such deduction or withholding, the sum due from Maker will be increased to the extent necessary to ensure that Lender receives a sum equal to what it would have received had no such deduction or withholding been required.

VEDER FINANCIAL SERVICES

Maker shall deliver to Lender within thirty (30) days after it has made any payment from which it is required by law to make any deduction or withholding a receipt issued by the applicable tax or other authority evidencing the deduction or withholding.

6.    **Late Charge.** If any payment is not received in full by Lender within ten (10) days after it is due, Maker agrees to pay an amount equal to the lesser of five percent (5.0%) of the amount of the past-due payment or the maximum amount permitted under applicable law, in addition to the full amount of the past-due payment.

7.    **Default.** Maker will be in default if any of the following happens: (a) Maker fails to make when due any payment required by this Note; (b) Maker defaults under any agreement providing security for the payment of this Note; (c) Maker fails to make when-due any payment owed to Lender under any instrument, agreement, or document; (d) Maker becomes insolvent, a receiver is appointed for any part of Maker's property, Maker makes an assignment for the benefit of creditors, or any proceeding is commenced by or against Maker under any bankruptcy or insolvency law; (e) any creditor tries to take any property of Maker in which Lender has an interest; or (f) Lender in good faith deems itself unsecured.

8.    **Remedies.** On any default, Lender may at its option and without notice to Maker, declare the full amount owing under this Note immediately due and payable, and may increase the interest rate on this Note to the lesser of two percent (2.00%) per month over the highest interest rate which would otherwise apply pursuant to this Note or the maximum rate permitted by applicable law. Lender may hire someone else to help collect and/or restructure the obligations evidenced by this Note, and Maker will be liable for all costs of collection, restructure and workout, including but not limited to attorneys' fees and costs, whether or not there is a lawsuit, and the fees and costs incurred by Lender in any bankruptcy case (and all proceedings and matters therein), on any appeal, and as part of any postjudgment collection.

9.    **Collateral.** This Note is secured by, among other things, a vessel more particularly described in a first preferred ship mortgage ("Mortgage") dated October 30, 1997, signed by Maker and delivered to Lender.

10.    **Miscellaneous.**

a.    **General.** The obligations under this Note are absolute and not subject to any defense, offset, counterclaim, or claim of recoupment. Invoices are provided to Maker as a convenience. Maker is obligated to remit payments as stated herein to Lender or to the holder of this Note whether or not Maker receives an invoice. No delay or omission on the part of Lender in demanding payment or exercising any right under this Note will operate as a waiver of payment or any other right. Maker waives presentment, demand, protest, and notice of dishonor. All of Lender's rights shall inure to the benefit of its successors and assigns, and all of Maker's obligations, promises and agreements shall bind Maker's heirs, executors, administrators, permitted successors and permitted assigns. On any change in the terms of this Note, unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, accommodation maker, or endorser, will be released from liability. All such parties agree that Lender may renew, restructure, or extend this Note, release any party or collateral, impair, fail to realize upon, or fail to perfect Lender's security interest in any collateral; or take any other action deemed necessary by Lender without the consent of or notice to anyone. If there is more than one person or entity signing this Note as Maker, the obligations under this Note will be joint and several. At the discretion of Lender, payments made on this Note will be applied in the following order: (1) first, to any accrued late charges; (2) second, to any ancillary fees, costs, or other charges, the repayment for which Maker is responsible pursuant to this Note and the Mortgage; (3) third, to accrued interest; and (4) fourth, to outstanding principal. Maker shall provide Lender with any and all financial information, statements, and verification of income as Lender may reasonably request from time to time in a form satisfactory to Lender.

b.    **Interpretation.** When necessary to properly give meaning to or to clarify the terms of this Note, this Note is to be interpreted together with the Mortgage and any other documents

XMM08205

- 3 -

executed in connection with this Note and the Mortgage.

c.       Governing Law, Jurisdiction, and Venue.  If this Note is used in connection with a preferred ship mortgage, the Note is governed by federal law to the extent that federal law preempts state law or to the extent that there is federal statutory or common law which may be applied;  if there is no federal law to govern an issue, that issue is governed by Connecticut state law, excluding its conflict of laws principles.  If this Note is not used in connection with a preferred ship mortgage, the Note is governed by Connecticut state law, excluding its conflicts of law principles.  This Note has been delivered to Lender and accepted by Lender in the State of Connecticut.  Maker agrees, upon Lender's request that if there is a lawsuit, Maker will submit to the jurisdiction and venue of the federal or state courts of Connecticut.  Maker hereby waives the right to request a change of venue of any proceeding brought by Lender on this Note in any court in Connecticut.

Maker: Majestic Star, Inc.

By: _____

Spiros E. Kopelakis
President

STATE OF _____|
                                        |ss.:
COUNTY OF _____|

On the 30 day of March, 2000, before me came Spiros E. Kopelakis, personally known to me or who has produced _____Drivers License_____ as identification, who, by me duly sworn, did depose and say that he is the President of Majestic Star, Inc., the New Jersey corporation described in, and which executed the foregoing instrument, and that he signed his name thereto by order of the board of directors of said corporation.

_____ (sign name)

_____ (print name)

SEAL / STAMP                    NOTARY PUBLIC
                                        STATE OF _____

                                        OLABISI O. LAYENI YEE
                                        Notary Public, State of New York
                                        No. 43-4975704
My Commission No. is _____; My Commission Expires:  Qualified in Richmond County
                                        Commission Expires Dec. 17, 20__

- 4 -

## REAFFIRMATION

The undersigned Guarantors of the Borrower's obligations under the aforesaid Note consent to the above Renewal Promissory Note (Vessel Financing – Fixed Rate) and agree that their guarantees shall remain in full force and effect notwithstanding such amendment.

Guarantor:  Majestic Voyages, Inc.

By: _____
Spiros E. Kopelakis
President
FEIN:  22-3514453

Guarantor:  Spiros E. Kopelakis

By: _____
Spiros E. Kopelakis
400 Chambers Street, #14K
New York, NY 10282
SSN: 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

Guarantor:  Shirley B. Dreifus

By: _____
Shirley B. Dreifus
400 Chambers Street, #14K
New York, NY 10282
SSN: 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

- 5 -

Exhibit B

# FIRST PREFERRED SHIP MORTGAGE

Dated:            30<u>th</u> day of October, 1997

Owner:           Majestic Star, Inc., a New Jersey Corporation ("Owner"), whose principal place of business is 800 Palisade Avenue, No. 22E, Fort Lee, New Jersey 07024 ("Owner").

Mortgagee:       debis Financial Services, Inc., a Delaware corporation ("debis"), whose address is 201 Merritt 7, Suite 700, Norwalk, Connecticut 06856

## VESSEL

Vessel:          STAR OF AMERICA

Official Number:  973452

## ARTICLE I
### Grant of Mortgage

1.1    Parties.  This First Preferred Ship Mortgage ("Mortgage") is made and delivered by Owner to debis.  Owner is the sole owner of 100 percent of the whole of the vessel described above.

1.2    Debt.  Owner is or will be indebted to debis pursuant to that certain Promissory Note referring to this Mortgage, in the principal amount of US\$1,590,000.00 together with interest, expenses, and fees thereon.  The foregoing note, and all extensions, renewals, amendments, and modifications thereof, is hereafter referred to as the "Note."

1.3    Grant of Security Interest.  In consideration of debis's extension of credit to Owner as evidenced by the Note and to secure payment and performance of (a) the Note, (b) all obligations of Owner under this Mortgage, as it may be hereafter supplemented or amended, (c) all advances and costs of debis in preserving, handling, protecting, foreclosing, and disposing of the Collateral, as hereinafter defined, and (d) all obligations of Owner to debis of any type or nature whatsoever, whether now existing or hereafter arising (collectively, the "Indebtedness"), Owner hereby mortgages to debis and its successors and assigns 100 percent of the whole of the vessel described above, together with all gear, goods, furniture and furnishings, spare parts, equipment, supplies, and all other appurtenances, accessories, additions, improvements, and replacements now or hereafter acquired for such vessel, whether or not installed or removed therefrom (collectively, the "Vessel"), together with all insurance policies relating to the Vessel and its operations and all accounts, instruments, documents, chattel paper, and general intangibles relating to the Vessel or its use, charter, sale, exchange, or other disposition (including insurance recovery), all whether now or hereafter existing acquired (the Vessel collectively with the foregoing is referred to herein as the "Collateral").

## ARTICLE II
### Particular Covenants of Owner

2.1    Owner's Representations and Warranties.  Owner represents and warrants the following as of the date of execution of this Mortgage and continuing until the Indebtedness is satisfied in full:

a.   Owner is a citizen of the United States within the meaning of United States federal law dealing with vessel documentation;

b.   Owner is entitled to own the Vessel and to possess it, subject to any charter consented to by debis;

c.   the information provided in this Mortgage and in all attachments hereto is accurate and complete;

d.   all actions necessary for the valid execution and delivery of this Mortgage have been taken;

e.   there are no liens or encumbrances against any of the Collateral; and

f.   if Owner is a business structure, it is properly organized, in good standing, and authorized to do business where it does business.

1

2    **Owner's Affirmative Duties.**  Until all the Indebtedness is satisfied in full, whether or not the Vessel is chartered, Owner shall:

a.    maintain this Mortgage as a "preferred ship mortgage" against the Vessel within the meaning of United States federal documentation law;

b.    maintain the required United States Coast Guard endorsement on the Vessel, together with all class and other certifications required for the Vessel's use;

c.    maintain the Vessel's flag, registration, and documentation under United States law and all United States Coast Guard regulations;

d.    defend at its expense the security position given debis by this Mortgage, together with Owner's title and rights of possession to the Collateral for the benefit of debis, including the initiation at Owner's expense of whatever declaratory actions are reasonably necessary to establish or secure that security position, title, and rights;

e.    ensure that the Vessel's status as a vessel capable of United States documentation, Owner's status as a citizen of the United States, and this Mortgage's status as a Preferred Ship Mortgage are not jeopardized by any act or failure to act by Owner, any charterer of the Vessel, or otherwise;

f.    prominently display on board the Vessel, and promptly provide to potential lienholders, such notice of and information about this Mortgage as is required by debis and to prevent liens against the Vessel;

g.    maintain the Collateral free and clear of all liens, interests, claims, and encumbrances except the interests provided to debis;

h.    maintain the Vessel at Owner's expense in a seaworthy condition fit for the Vessel's contemplated uses and in the same or better condition as the Vessel was in on execution of this Mortgage, reasonable wear and tear excepted;

i.    promptly pay or otherwise discharge any claims, taxes, assessments, or penalties that are or may become a lien against the Collateral or any part thereof, whether or not an actual seizure of the Vessel has occurred;

j.    promptly notify debis, both orally and in writing, of any seizure of the Vessel or any claim asserted against the Vessel that might reasonably result in a seizure; and

k.    include in any charter of the Vessel a provision requiring the charterer to comply with this Mortgage to the extent that failure to do so would be a breach of this Mortgage by Owner.

2.3.    **Insurance.**  Owner shall maintain insurance on the Vessel in such amounts, against such risks, and with such companies as debis judges to be advisable. The insurance must include at least the following:

a.    full form hull and machinery insurance, in an amount equal to the full market value of the Vessel, covering the Vessel against all the usual marine risks as provided in the American Institute Hull Clauses (June 2, 1977, as amended), including, without limitation, the customary Inchmaree and four/fourths running-down clause;

b.    either (check as appropriate):

    __X__  (i) protection and indemnity insurance, as per Form SP23 or equivalent, including (if engaged in towing), collision and liability coverage for the towing vessel, and additional perils insurance, including pollution and cleanup coverage each in an amount that is the greater of US$1,000,000 or the full market value of the Vessel; or

    _____  (ii) separate insurance comparable to that described in subparagraph (b)(i) maintained with a P&I Club acceptable to debis in its reasonable discretion;

c.    breach of warranty endorsement or separate mortgagee's interest policy in favor of debis in the amount of the Note; and

d.    a deductible that is less than 5 percent of the full market value of the Vessel.

Copies of all policies or certificates evidencing insurance will be given to debis on receipt by Owner. All such insurance provided for herein must name debis as primary loss payee and co-insured, expressly waive subrogation against debis, and require the insurer to provide 30-day written notice to debis prior to any cancellation, termination, or reduction in coverage of or any other material modification to the insurance. Owner will not take any action that would jeopardize the existence, renewal, or effectiveness of the insurance required to be maintained on the Vessel.

On a partial loss of the Vessel for which the damage claimed does not exceed US$250,000.00, and for which an insurance recovery becomes due under any policy, debis consents that the underwriters may pay directly for repairs, salvage, or other charges, or may reimburse Owner or any charterer of the Vessel therefor, so long as Owner is not in default

2

hereunder. If the damage claim is in excess of the foregoing or, if Owner is in default hereunder, debis will be entitled to receive such insurance recovery directly from the underwriters and disburse the funds so received as debis deems appropriate. Upon actual or constructive total loss of the Vessel, insurance proceeds received by debis will be applied first to the payment to debis of all sums secured hereby with any remaining surplus paid to Owner or such other rightful claimant as may appear.

2.4    Inspection. Owner shall (a) at all times afford debis complete opportunity to inspect the Vessel and its papers and to examine Owner's or any charterer's related accounts and records and make copies or extracts therefrom and (b) certify upon debis's request that all wages and other claims that might give rise to a lien on the Vessel have been paid.

2.5    Documents. Owner shall execute and deliver whatever documents, instruments, and assurances debis requires to subject the Vessel more effectively to the lien hereof and to effect any sale provided in Section 3.2 below.

## ARTICLE III
### Default

3.1    Events of Default. Any one of the following is an "Event of Default":

a.    failure to timely pay principal, interest, or any other amount due under the Note, this Mortgage, or any of the Indebtedness;

b.    Owner makes any false or misleading representation to debis;

c.    Owner's breach of any of its obligations provided in this Mortgage;

d.    filing of any petition in bankruptcy by or against Owner, or appointment of a receiver for Owner of any of Owner's property, or the taking by any court of any action comparable thereto against Owner or any charterer of the Vessel;

e.    entry of an order or judgment against Owner in an amount of over US$20,000 in any court of any state or country, which remains unbonded for more than 30 days after the date of such order or judgment;

f.    debis's conclusion in good faith at any time that, through the anticipated violation of any term of this Mortgage, debis's position as preferred mortgage holder or that the value of debis's interest in any of the Collateral is impaired;

g.    Owner's breach of any term in any other agreement with debis, whether or not such agreement is made in connection with this transaction;

h.    failure to pay debis when due any proceeds from any insurance claim made with respect to the Vessel;

i.    seizure of the Vessel by any person or entity for any reason;

j.    the sale, charter, or transfer of any part of the Collateral or any interest therein without the prior written consent of debis on full disclosure to debis;

k.    operation of the Vessel contrary to law;

l.    removal of the Vessel from the United States unless there is an intent to return to the United States at the end of the voyage and the Vessel in fact returns to the United States within 30 days after its departure from the United States;

m.    abandonment of the Vessel;

n.    operating, berthing, mooring, or storing the Vessel in an unsafe or unsound manner;

o.    substantial damage or material reduction in value to any of the Collateral; and

p.    debis's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net worth, asset/liability ratio, or earnings, debis is in danger of not receiving timely payment of any portion of the Indebtedness.

3.2    Rights and Remedies on Default. On occurrence of an Event of Default, debis may but is not obligated to:

a.    declare the full amount of the Indebtedness, or any portion of it, to be immediately due and payable;

b.    take possession of the Vessel with or without legal process, wherever it may be, and hold, charter, or otherwise use the Vessel as it may deem to be for debis's best advantage, without being responsible for loss or damage;

c.    demand, collect, and retain all hire, freights, earnings, salvage awards or recoveries, recoveries on insurance or in general average, and all other sums due or to become due for the Vessel;

d.    if the Vessel is subject to a charter, collect payments under the charter and enforce Owner's rights and benefits thereunder;

e.    obtain appointment of a receiver for the Vessel with full rights and powers to use and operate the Vessel;

f.    after repossession, make any repairs and improvements to the Vessel that debis reasonably believes necessary to

3

promptly effect a sale of the Vessel to debis's best advantage, then sell the Vessel, free from any claim by Owner, in any manner provided by law (to the extent permitted by law, the sale may be public or private, and debis may become the purchaser, ten days' notice to Owner of any sale being conclusively presumed to be commercially reasonable);

g.   enforce its rights by an action at law, suit in equity, or other appropriate proceeding, whether (i) for the specific performance of any term hereof, (ii) for an injunction against a violation of any term hereof, (iii) for the performance of any loan agreement, note, ship mortgage, assignment, or security agreement executed by Owner in favor of debis, or (iv) in the aid of the exercise of any power granted by this Mortgage or by any such loan agreement, note, ship mortgage, assignment, or security agreement or by law; and

h.   exercise all the rights and remedies in foreclosure given to mortgagees by laws of the United States of America or other applicable provisions of law, including the law of any jurisdiction in which the Vessel may be found.

### ARTICLE IV
### Other Agreements on Default or Otherwise

**4.1    Sale of Vessel.**  Any sale of the Vessel made pursuant to this Mortgage, whether under the power of sale hereby granted or under judicial proceedings, will operate to divest all right, title, and interest of any nature whatsoever of Owner in the Vessel and will bar any and all claims of Owner, its successors and assigns, and all persons claiming by, through, or under them.

**4.2    Attorney-in-Fact.**  Owner irrevocably appoints debis its attorney-in-fact, with such appointment coupled with an interest, to effect any of the following:

a.   make, compromise, pursue, and collect on any claim that could be made on insurance on the Vessel provided pursuant to this Mortgage, provided, however, that debis must not act unreasonably as respects its exercise of that authority and shall pay to Owner or such other rightful claimant any amount it collects that is in excess of amounts owed debis by Owner;

b.   sign such certificates of title and other title-transfer documents, including builder's certificates and manufacturer's statements of origin, necessary to effect the purpose of this Mortgage;

c.   on an Event of Default, convey title to the Vessel to any purchaser, free and clear of any interest of Owner (Owner will, if and when required by debis, execute whatever form of conveyance of title to the Vessel debis may direct or approve and agrees that this requirement is subject to a suit for specific performance hereof);

d.   on an Event of Default, collect, compromise, and sue for all freight, hire, and earnings of the Vessel and all amounts due from underwriters under any insurance on the Vessel, salvage awards and recoveries, recoveries in general average, and all other sums thereafter due or to become due for the Vessel or any insurance and provide releases on behalf of Owner for any such amounts received;

e.   on an Event of Default, endorse and accept in the name of Owner all checks, notes, drafts, warrants, and other forms of payment that are part of the Collateral; and

f.   should the Vessel be arrested or detained, apply for and take possession of the Vessel with all rights and powers that Owner might exercise in any such event, including appearing in the name of Owner in any court where a suit is pending against the Vessel, taking such proceedings as may seem proper to debis toward the defense of the suit, and purchasing or discharging any lien.

**4.3    Powers and Remedies Cumulative.**  Each power or remedy given to debis by this Mortgage will be cumulative and in addition to every other power or remedy existing by law.  No delay or omission by debis in the exercise of any power or remedy may impair any such power or remedy or be construed to be a waiver of any Event of Default.

**4.4    Deficiency.**  debis will be entitled to collect from Owner any deficiency remaining on the Indebtedness after application against the Indebtedness of the net proceeds from sale or repossession of the Collateral provided, however, that debis will not be required to proceed against any of the Collateral prior to seeking to recover any portion of the Indebtedness from Owner. The sale price of the Collateral at any sale (or series of sales) held to foreclose debis's interest therein will conclusively be deemed to be the fair value of the Collateral sold regardless of the circumstances or who purchases the Collateral, provided that the sale was commercially reasonable.

4

XKMWIABCA

4.5    Payments by debis.  All advances and expenditures that debis in its discretion may make for repairs; maintenance; improvements for sale; storage, safeguarding, and insurance of the Vessel; payment of interests, liens, taxes, penalties, or other claims against any of the Collateral; defense of suits; costs of repossession; or any other purpose whatsoever related to the Collateral, the preservation of debis's security interest, or the exercise by debis of its remedies in the Collateral after an Event of Default must be repaid by Owner on demand with interest at the same rate as provided in the Note and until so paid will be a debt due from Owner to debis, with the amount secured by the lien provided by this Mortgage.  debis will not be obligated to make any such advances or expenditures, nor will the making thereof relieve Owner of any obligation or default with respect thereto.

### ARTICLE V
### Miscellaneous

5.1    No Power to Create Liens.  Neither Owner nor any charterer, operator, Master of Vessel, or any other person purporting to act on behalf of any of them or the Vessel has any right or power to create or incur a lien against any of the Collateral, other than the lien of this Mortgage.

5.2    Indemnification.  In addition to the provisions of Section 5.3 below, Owner agrees to pay and to indemnify debis and hold debis harmless from all claims, liabilities, costs, and expenses including, without limitation, legal fees and expenses, relating to the Collateral, the use of the Vessel, or payment of the Indebtedness including, without limitation, (a) the payment of any property, excise, sales, or other taxes, (b) the failure by Owner or any charterer to timely comply with any requirement of law applicable to the Vessel or the operation thereof, or (c) any of the transactions contemplated by this Mortgage.  The obligation to indemnify will survive payment of the Indebtedness.

5.3    Hazardous Substances.  Owner represents and warrants that the Vessel will not be used for the generation, manufacture, storage, treatment, disposal, transportation, release, or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended; 42 USC § 9601 et seq, the Superfund Amendments and Reauthorization Act of 1986, Pub L. No. 99-499, the Hazardous Materials Transportation Act, 49 USC § 1801 et seq, the Resource Conservation and Recovery Act, 49 USC § 6901 et seq, or other applicable state or federal laws, rules, or regulations adopted pursuant to any of the foregoing or intended to protect human health or the environment ("Environmental Laws").  The terms "hazardous waste" and "hazardous substance" also include, without limitation, petroleum, petroleum byproducts or any fraction thereof, and asbestos.  Owner hereby (a) releases and waives any claims against debis for indemnity or contribution if Owner becomes liable for cleanup or other costs under any Environmental Law and (b) agrees to indemnify debis and hold it harmless from and against any and all claims and losses resulting from a breach of this provision or as a result of a violation of any Environmental Law not caused by the gross negligence or willful misconduct of debis.  This obligation to indemnify will survive payment of the Indebtedness.

5.4    Waiver and Consent.  Any consent given by debis pursuant to this Mortgage will be consent only to the specific action for which consent is requested and given, and that consent cannot be construed as consent for any further or additional actions.  Any failure by debis to declare a default under this Mortgage or to protest Owner's having taken action without consent cannot be construed as a waiver of the default or the requirement that consent be obtained.

5.5    Severability.  If any part of this Mortgage is judged invalid, that partial invalidity will not cause this Mortgage as a whole to be invalid, and if any provision hereof is held invalid in one or more of its applications, that provision will remain effective as to all valid applications of it.

5.6    Applicable Law.  This Mortgage will be governed by United States federal law to the extent required and, to the extent not so required, by the laws of the State of Connecticut.

5.7    Costs of Collection; Attorney Fees.  Whether or not litigation is commenced, Owner promises to pay all of debis's costs and expenses of enforcing or construing the terms of this Mortgage, protecting the interest granted herein, and collecting the Indebtedness.  Costs and expenses include, without limitation, a reasonable hourly rate for collection personnel, whether employed in-house or on a contract basis, overhead costs as reasonably allocated to the collection effort, and all other expenses actually, reasonably, and necessarily incurred by debis.  Costs and expenses also include

XM49ABCA

5

costs and expenses, including legal expenses, incurred in any litigation or arbitration, or any appeal therefrom, and in any bankruptcy case, proceeding, or matter (including any efforts to modify or vacate the automatic stay).

5.8    Successors and Assigns.    All covenants, warranties, promises, conditions, agreements, and terms herein are binding on Owner and its successors and assigns and will inure to the benefit of debts and its successors and assigns. debts may assign or transfer the whole or any portion of the indebtedness and the interest provided thereby, and all obligations, rights, powers, and privileges herein provided will inure to the benefit of the assignee.

IN WITNESS WHEREOF, on the date above stated, Owner has caused this Mortgage to be executed on its behalf by its duly authorized officer.

OWNER:    Majestic Star, Inc.

By: _____

Its:    Spiros E. Kopelakis
        President

STATE OF _____New York_____

COUNTY OF _____New York_____

The foregoing First Preferred Ship Mortgage was acknowledged before me on this 30th of October, 1997, by Spiros E. Kopelakis, President of Majestic Star, Inc. who is personally known to me or who has produced NY State Drivers License (type of identification) as identification and who [did] [did not] take an oath.

_____
Notary Public in and for the above County and State

My commission expires: 11/25/97

SEAL & STAMP

MARY K. GLEASON
Notary Public, State of New York
No. 31-4989067
Qualified in New York County
Commission Expires October 11, 19

11/25/97

XMI60ABCA

Exhibit C

| DEPARTMENT OF TRANSPORTATION U.S. COAST GUARD CG-1332A (Rev. 6-83) | | GENERAL INDEX OR ABSTRACT OF TITLE CONTINUATION SHEET NO. 14 | | | OFFICIAL NO. 973452 | |
|---|---|---|---|---|---|---|
| INSTRUMENT SMTG | % CONVEYED 100 | DATE 12 22 97 | AMOUNT $500,000.00 | BOOK 98-02 | PAGE 759 | |
| FILED PORT NVDC | | DATE 12 29 97 | TIME 12 30 PM | | DATE TERMINATED | |
| GRANTOR REFERS TO BOOK NO. 97-219 PAGE NO. 80 THE WEBB FAMILY TRUST | | | | | | |
| GRANTEE MAJESTIC STAR, INC. | | | | | | |
| INSTRUMENT SB | % CONVEYED 100 | DATE 12 22 97 | AMOUNT $200,000.00 | BOOK 98-02 | PAGE 760 | |
| FILED PORT NVDC | | DATE 12 29 97 | TIME 12 30 PM | | DATE TERMINATED | |
| GRANTOR REFERS TO BOOK NO. 97-219 PAGE NO. 87 THE WEBB FAMILY TRUST | | | | | | |
| GRANTEE DEBIS FINANCIAL SERVICES, INC. 201 MERRITT 7, SUITE 700 NORWALK, CT 06856 | | | | | | |
| INSTRUMENT ASGM | % CONVEYED 100 | DATE 7 14 00 | AMOUNT $1,500,000.00 | BOOK 00-100 | PAGE 485 | |
| FILED PORT NVDC | | DATE 7 25 00 | TIME 11:04 AM | | DATE TERMINATED | |
| GRANTOR REFERS TO BK 97-119, PG 89 DEBIS FINANCIAL SERVICES INC | | | | | | |
| GRANTEE ASSOCIATES COMMERCIAL CORPORATION 300 EAST CARPENTER FREEWAY IRVING, TEXAS 75062 | | | | | | |
| INSTRUMENT SMTG | % CONVEYED 100 | DATE 5 17 01 | AMOUNT $200,000.00 | BOOK 01-44 | PAGE 217 | |
| FILED PORT NVDC | | DATE 5 18 01 | TIME 3 03PM | | DATE TERMINATED | |
| GRANTOR REFERS TO BOOK 97-119 PAGE 87 THE WEBB FAMILY TRUST JEFFREY L WEBB TRUSTEE | | | | | | |
| GRANTEE MAJESTIC STAR INC | | | | | | |

☐ ISSUED AS AN ABSTRACT OF TITLE          ☐ ISSUED FOR CHANGE OF PORT OF RECORD

DATE:              TIME:

PAGE:       OF       PORT:

PREVIOUS EDITION MAY BE USED                            DOCUMENTATION OFFICER Page 15 of 20
PREVIOUS EDITION MAY BE USED

Exhibit D

STAR OF AMERICA, Official Number 973452

# FIRST AMENDMENT
## TO FIRST PREFERRED SHIP MORTGAGE

THIS FIRST AMENDMENT dated June 25, 2004 to that certain FIRST PREFERRED SHIP MORTGAGE dated October 30, 1997 (this "Amendment") by and between Majestic Star, Inc. ("Owner"), whose address is 373 Park Avenue South, 7th Floor, New York, New York, 10016, in favor of CitiCapital Commercial Corporation, formerly known as Associates Commercial Corporation ("Mortgagee"), whose address is 8001 Ridgepoint Drive, 2nd Floor, Irving, Texas, 75063-3117.

### RECITALS:

WHEREAS,

(1) On October 30, 1997, Owner executed and delivered to debis Financial Services, Inc. ("debis"), the predecessor in interest to Mortgagee, that certain First Preferred Ship Mortgage in the amount of $1,500,000.00 bearing against the whole (100%) of the vessel STAR OF AMERICA, Official Number 973452, together with all engines, boilers, machinery, masts, boats, anchors, cables, chains, rigging, tackle, apparel, furniture, winches, capstans, outfit, tools, pumps, gears, furnishings, appliances, fittings, stores, spare and replacement parts, and all other appurtenances thereto, whether now owned or hereafter acquired, whether aboard or not aboard, and also any and all additions, improvements and replacements hereinafter made to such vessel (the "Vessel"), which Mortgage was duly filed with the United States Coast Guard, National Vessel Documentation Center, on November 20, 1997 at 11:30 a. m. and recorded in Book 97-119, Page 89 (the "Mortgage"); and

(2) The Mortgage was granted by Owner in favor of the debis to secure the payment and performance of all present and future obligations, liabilities and indebtedness of Owner to debis, including, without limitation, the obligations, liabilities and indebtedness of Owner to debis: (a) under that certain Promissory Note dated October 30, 1997 made payable by Owner to the order of debis in the original principal amount of $1,500,000.00 (the "Note"), as such Note was amended and restated by that certain Renewal Promissory Note dated December 3, 1999 made payable by Owner to the order of debis in the original principal amount of $1,374,216.77 (the "1999 Renewal Note"); (b) under the Mortgage; and (c) under any extensions or renewals of, amendments to, or replacements for any of the foregoing; and

(3) Pursuant to an Assignment of Preferred Mortgage dated July 14, 2000, debis assigned the whole of its interest in the Note, as amended and restated by the 1999 Renewal Note, and the Mortgage, among other instruments, to Mortgagee, which said Assignment was filed with the United States Coast Guard, National Vessel Documentation Center, on July 25, 2000, at 11:04 a.m. and recorded in Book 00-100, Page 485; and

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED/FILED

01105MTG-AMEND(STAR-OF-AM3).wpd

06 JUL '04        02:38 PM

LOCATOR NUMBER
04-71        180

(4)  Effective as of July 1, 2001, Mortgagee changed its corporate name from "Associates Commercial Corporation" to "CitiCapital Commercial Corporation;" and

(5)  On even date herewith, Owner and Mortgagee have entered into an Amendment to Loan Documents to restructure certain of the payments of principal and interest scheduled under the 1999 Renewal Note (the "Amendment"); and

(6)  In connection with the execution and delivery of the Amendment, Owner and Mortgagee desire to amend the Mortgage: (a) to reflect the change in the corporate name of Mortgagee, (b) to revise the stipulation as to applicable law, and (c) in certain other respects as set forth below; and

(7)  The execution and delivery of this instrument has been duly authorized, and all conditions and requirements have been satisfied and performed necessary to make this instrument a valid and binding agreement, to effect the amendment of the Mortgage as provided herein, and to confirm, affirm, reaffirm, restate, and continue the Mortgage as a valid, binding, and legal preferred ship mortgage for the security of all present and future obligations, liabilities and indebtedness of Owner to Mortgagee, including the obligations, liabilities and indebtedness of Owner to Mortgagee under the 1999 Renewal Note.

NOW THEREFORE, in consideration of the premises, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Owner covenants and agrees with Mortgagee as follows:

(A)  The Mortgage is hereby amended as follows:

(1)  By changing the corporate name of Mortgagee in the heading of the Mortgage, and in each additional location where it appears, from "debis Financial Services, Inc." to "CitiCapital Commercial Corporation," and by changing the addresses of Owner and Mortgagee to the addresses stated in the preamble to this instrument.

(2)  By revising Section 5.6 of the Mortgage to read, in its entirety, as follows:

5.6  Applicable Law.  This Mortgage shall be construed in accordance with, and the rights of the parties hereunder governed by, Chapter 313 of Title 46 of the United States Code and the general maritime law of the United States, to the extent applicable, and otherwise by the internal laws of the State of Texas.

(3)  By modifying the term "Mortgage" as used in the Mortgage to mean the Mortgage as amended by this instrument.

(B)  The maximum amount of direct or contingent obligations that is or may become secured by the Mortgage, as amended by this instrument, remains $1,500,000.00, excluding interest,

011080\MTG-AMEND(STAR-OF-AM1).wpd

2

expenses and fees. The interest of the Owner in the Vessel is a whole or one hundred percent (100%) interest, and the interest in the Vessel mortgaged by Owner to Mortgagee under the Mortgage is a whole or a one hundred percent (100%) interest.

(C)  The Mortgage, including all of the covenants and agreements on the part of Owner which are set forth therein or are incorporated therein by reference, and all of the rights, privileges, powers and immunities of Mortgagee that are provided for in the Mortgage, are in all respects confirmed, affirmed, reaffirmed and continued.

(D)  All of the covenants and agreements on the part of Owner that are set forth in, and all the rights, immunities, powers and the remedies of Mortgagee that are provided for in the Mortgage are incorporated herein and shall apply to the Vessel and otherwise with the same force and effect as though set forth at length in this Amendment.

(E)  Owner hereby represents and warrants to Mortgagee that:

(1)  Owner is a corporation duly organized and validly existing and in good standing under the laws of the State of New Jersey, and is and shall remain organized and in good standing under the laws of said state;

(2)  Owner is and shall remain a citizen of the United States of America within the meaning of Section 2 of the Shipping Act of 1916, as amended;

(3)  All corporate action necessarily required by law for the making and delivery of this Amendment has been duly and effectively taken; and

(4)  There has been no default by Owner under any covenant, term or condition of the Mortgage or of the obligations secured thereby.

(F)  This instrument is executed as and shall constitute an amendment to the Mortgage, and shall be construed in connection with and as part of the Mortgage. Terms which are defined in the Mortgage are used herein with such defined meanings. Mortgagee expressly does not hereby waive the preferred status of the Mortgage. If for any reason this Amendment, or any part hereof, shall be declared invalid or unenforceable for any reason whatsoever, such invalidity or unenforceability shall not be deemed to affect the validity or enforceability of the Mortgage, or of the indebtedness and other obligations secured thereby.

(G)  All the terms, provisions, conditions and covenants herein contained shall be binding upon Owner and on the successors and assigns of Owner, and shall inure to the benefit of Mortgagee and its successors and assigns.

(H)  This Amendment, and the rights and obligations of the parties hereto, shall, for all purposes, be construed in accordance with, and governed by, the laws of the United States, including,

01)08\MTG.AMEND(STAR-OF-AM1).wpd                    3

without limitation, Chapter 313 of Title 46 of the United States Code, as amended, and to the extent such laws shall not be applicable, then in accordance with the laws of the State of Texas as applied to contracts made, executed and performed within the State of Texas.

(I) The Mortgage, as amended hereby, may not be changed, modified or discharged orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

(J) This Amendment may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall be deemed one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this First Amendment to First Preferred Ship Mortgage to be executed as of the day and year first above written.

OWNER:

Majestic Star, Inc.

By: _____
Name: Spiros E. Kopelakis
Title: President

MORTGAGEE:

CitiCapital Commercial Corporation
(f/k/a Associates Commercial Corporation)

By: _____
Name: Joseph M. Stih
Title: S.V.P.

0110\MTG-AMEND(STAR-OF-AM1).wpd

4

## ACKNOWLEDGMENT

STATE OF NEW YORK

COUNTY OF NEW YORK

On June 25th, 2004, SPIROS E. KOPELAKIS, the person named above, acknowledged execution of the foregoing instrument in his capacity as the President of Majestic Star, Inc. for the purpose therein expressed.

IN WITNESS WHEREOF, I hereunto set my hand and seal this 25 day of June, 2004.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES: 02/17/2006

CHUAN WANG
Notary Public, State of New York
No. 01WA6002716
Qualified in Suffolk County
Commission Expires Feb. 17, 2006

# ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF _Dallas_

On June _30_, 2004, _Joseph M. Piter_ the person named above, acknowledged execution of the foregoing instrument in his/her capacity as the _Vice_ _President_ of CitiCapital Commercial Corporation (f/k/a Associates Commercial Corporation) for the purpose therein expressed.

IN WITNESS WHEREOF, I hereunto set my hand and seal this _30_ day of June, 2004.

_Darlene English_
NOTARY PUBLIC

MY COMMISSION EXPIRES: _March 14, 2005_

DARLENE ENGLISH
MY COMMISSION EXPIRES
March 14, 2005

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED/FILED

06 JUL '04            02 : 3 8 PM

LOCATOR NUMBER.

_____

0110SIMTG-AMEND(STAR-OY-AMS).wpd                    6

Exhibit E



## PROMISSORY NOTE

$2,565,000.00                          May 17, 2001                          Irving, Texas

FOR VALUE RECEIVED, the undersigned, MAJESTIC VOYAGES INC., a Delaware corporation ("Maker"), hereby promises to pay to the order of Associates Commercial Corporation, a Delaware corporation (which, together with its successors, endorsees and assigns, shall be referred to as "Payee"), at P. O. Box 6229, Carol Stream, Illinois, 60197-6229, in lawful money of the United States of America, the principal sum of TWO MILLION FIVE HUNDRED SIXTY-FIVE THOUSAND AND 00/100 Dollars ($2,565,000.00), or so much thereof as may be advanced and outstanding hereunder, together with interest on the outstanding principal balance from day to day remaining as herein specified, on demand, or if no demand is sooner made, in one hundred forty-three (143) consecutive monthly installments of interest, or of principal and interest, payable in arrears, according to the following schedule:

(a) Two (2) consecutive monthly installments of accrued and unpaid interest only, commencing on June 1, 2001, and continuing on the first day of July 2001; followed by

(b) Five (5) consecutive monthly installments of principal and accrued and unpaid interest, each in the amount of FORTY-ONE THOUSAND NINE HUNDRED TWO AND 99/100 Dollars ($41,902.99), commencing on August 1, 2001 and continuing on the first day of each successive month thereafter until and including December 1, 2001; followed by

(c) One Hundred Thirty-Two (132) consecutive monthly installments, commencing on January 1, 2002 and continuing on the first day of each successive month thereafter until and including December 1, 2012, with the installments scheduled in January, February and March of each year during this period to be skip payments or installments with no payments of principal or interest due, and the installments payable in April through December of each year during this period to be installments of principal and accrued and unpaid interest, each in the amount of FORTY-ONE THOUSAND NINE HUNDRED TWO AND 99/100 Dollars ($41,902.99); followed by

(d) Three (3) consecutive monthly skip payments or installments with no payment of principal or interest due, commencing on January 1, 2013, and continuing on the first day of February and March 2013; followed by

(e) A final installment of principal and accrued and unpaid interest in the amount of FORTY-ONE THOUSAND NINE HUNDRED TWO AND 99/100 Dollars ($41,902.99), plus any past-due principal, interest and other sums payable hereunder, payable on April 1, 2013.

In the absence of an Event of Default under this Note or any Loan Document, installments of principal and accrued and unpaid interest shall be applied first to interest with the balance of such installment allocated to principal. Maker may prepay the principal of this Note only upon the terms and conditions specified in the Loan Agreement between Maker and Payee dated of even date herewith (the "Loan Agreement").

This Note is the "Acquisition Note" provided for in the Loan Agreement. All capitalized terms used in this Note and not defined herein, including the terms "Swap Rate" and "Prime Rate" as used below, have the meanings assigned in the Loan Agreement.

The installments of principal and interest set forth above have been calculated on the basis of a twelve year term and a twelve year amortization. Following the recalculation of interest as provided below, Payee may adjust the amount of the scheduled payments hereunder to an amount sufficient to amortize fully the outstanding principal balance of this Note by the maturity date. Regardless of whether Payee adjusts the amount of scheduled payments under this Note, the final installment scheduled hereunder shall be in the amount of all of the then outstanding principal, accrued but unpaid interest, and all other

costs, expenses and fees arising out of or relating to the loan evidenced hereby, and may thus be substantially more than the amounts of the previously scheduled installments.

Except following an Event of Default under this Note, the Loan Agreement or under any other Loan Document, through April 30, 2006, the unpaid principal balance hereof shall bear interest prior to maturity at a fixed rate per annum equal to 10.50% per annum, which rate equals the five year "Swap Rate", as determined three (3) Business Days prior to the date of this Note, plus three and 50/100ths percent (3.50%). Effective as of May 1, 2006, the rate of interest payable hereunder, in the absence of a default, shall be recalculated either: (i) as a floating or variable rate equal to 1.75% plus the "Prime Rate"; or (ii) as a fixed rate at a rate per annum equal to 3.50% plus the seven year "Swap Rate" as determined three (3) Business Days prior to the date of recalculation of interest; provided, however, that, except following a default by Maker under this Note or any other Loan Document, the interest rate as calculated pursuant to this paragraph shall not be less than 10.25% per annum, nor exceed 12.75% per annum. Maker will select between the above options, and notify Payee of its selection in writing, no later than fifteen (15) Business Days prior to the date for recalculation of interest. In the event Maker selects option (i), the interest rate payable hereunder shall be adjusted with each change in the "Prime Rate." All past due principal and interest shall bear interest at the Default Rate.

Interest on the indebtedness evidenced by this Note shall be computed on the basis of a year of 360 days and the actual number of days elapsed (including the first day but excluding the last day) unless such calculation would result in a usurious rate, in which case interest shall be calculated on the basis of a year of 365 or 366 days, as the case may be. Interest at the applicable rates shall be computed daily on the principal balance outstanding hereunder.

Notwithstanding anything to the contrary contained herein, no provisions of this Note shall require the payment or permit the collection of interest in excess of the Maximum Rate. If any excess of interest in such respect is herein provided for, or shall be adjudicated to be so provided, in this Note or otherwise in connection with this loan transaction, the provisions of this paragraph shall govern and prevail, and neither Maker nor the sureties, guarantors, successors or assigns of Maker shall be obligated to pay the excess amount of such interest, or any other excess sum paid for the use, forbearance or detention of sums loaned pursuant hereto. If for any reason interest in excess of the Maximum Rate shall be deemed charged, required or permitted by any court of competent jurisdiction, any such excess shall be applied as a payment and reduction of the principal of indebtedness evidenced by this Note; and, if the principal amount hereof has been paid in full, any remaining excess shall forthwith be paid to Maker. In determining whether or not the interest paid or payable exceeds the Maximum Rate, Maker and Payee shall, to the extent permitted by applicable law, (i) characterize any non-principal payment as an expense, fee, or premium rather than as interest, (ii) exclude voluntary prepayments and the effects thereof and (iii) amortize, prorate, allocate, and spread in equal or unequal parts the total amount of interest throughout the entire contemplated term of the indebtedness evidenced by this Note so that the interest for the entire term does not exceed the Maximum Rate.

If default be made in the payment of principal or interest under this Note, or upon the occurrence of any other Event of Default, as such term is defined in the Loan Agreement, Payee may declare this Note to be immediately due and payable, and the same shall thereupon become immediately due and payable, without notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to accelerate, notice of intent to demand, protest, or other formalities of any kind, all of which are hereby expressly waived by Maker; provided, however, that upon the occurrence of an Event of Default under Section 10.1(d) or Section 10.1(e) of the Loan Agreement, this Note shall automatically become immediately due and payable. After acceleration, the outstanding principal balance of this Note, and all other sums payable hereunder, shall bear interest at the Default Rate. Following the occurrence of an Event of Default, Payee shall have the right to exercise any and all remedies provided under the Loan Documents or available to Payee in equity or under applicable law, including the right to foreclose or otherwise enforce all liens or security interests securing payment hereof, and the right to offset against this Note any sum or sums owed by Payee to Maker. The failure of Payee to exercise the rights and remedies provided in this paragraph shall not constitute a waiver of the right to exercise the same upon the occurrence of a subsequent Event of Default.

If Payee expends any effort in any attempt to enforce payment of all or any part or installment of any sum due Payee, or if this Note is placed in the hands of an attorney for collection, or if it is collected through any legal proceedings, Maker agrees to pay all collection costs and fees incurred by Payee, including reasonable attorneys' fees.

This Note shall be governed by and construed in accordance with the laws of the State of Texas and the applicable laws of the United States of America, including, without limitation, 46 U.S.C. §31322(b). This Note is payable in Dallas County, Texas. Any action or proceeding under or in connection with this Note against Maker or any other party ever liable for payment of any sums of money payable on this Note may be brought in any state or federal court in Dallas County, Texas. Maker and each such other party hereby irrevocably (i) submits to the nonexclusive jurisdiction of such courts and (ii) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in such court or that such court is an inconvenient forum. Nothing herein shall affect the right of Payee to bring any action or proceeding against maker or any other party liable hereunder or with respect to any collateral in any state or federal court in any other jurisdiction. Any action or proceeding by Maker or any other party liable hereunder against Payee shall be brought only in a court located in Dallas County, Texas.

Maker and each surety, guarantor, endorser, and other party ever liable for payment of any sums of money payable on this Note jointly and severally waive notice, presentment, demand for payment, protest, notice of protest and non-payment or dishonor, notice of acceleration, notice of intent to accelerate, notice of intent to demand, diligence in collecting, grace, and all other formalities of any kind, and consent to all extensions without notice for any period or periods of time and partial payments, before or after maturity, and any impairment of any collateral securing this Note, all without prejudice to the holder. Payee shall similarly have the right to deal in any way, at any time, with one or more of the foregoing parties without notice to any other party, and to grant any such party any extensions of time for payment of any of said indebtedness, or to release or substitute part or all of the collateral securing this Note, or to grant any other indulgences or forbearances whatsoever, without notice to any other party and without in any way affecting the personal liability of any party hereunder.

Payment of all principal, interest, premiums, fees, costs, expenses and other sums payable under this Note is secured by, among other security, a Preferred Ship Mortgage and a Security Agreement, both granted by Maker in favor of Payee on even date herewith, and bearing against the Collateral described therein, as those agreements may be amended and supplemented from time to time.

MAJESTIC VOYAGES INC.

By: _____

Name: SPIROS E. KOPELAKIS

Title: President

**"PAYMENT GUARANTEED"**

Payment of the foregoing instrument is guaranteed by the undersigned jointly and severally with the Maker thereof.

MAJESTIC STAR INC.

By:

Name: Spiros E. Kopelakis
Title: President

SPIROS E. KOPELAKIS, Individually

SHIRLEY DREIFUS

Exhibit F

PREFERRED SHIP MORTGAGE

Dated May _17_, 2001

-By-

MAJESTIC VOYAGES INC., as Sole Owner
One World Trade Center, Suite 8901
New York, New York 10048

-In Favor of-

ASSOCIATES COMMERCIAL CORPORATION, as Mortgagee
300 East Carpenter Freeway, 17th Floor
Irving, Texas 75062

-Covering the Vessel-

MAJESTIC STAR, Official Number 1109715

Interest in the Vessel Owned by Owner: 100%
Interest in the Vessel Mortgaged: 100%

Maximum Amount Secured: $3,965,000.00
(excluding interest, expenses and fees)

01108MTG-COV2

NATIONAL VESSEL DOCUMENTATION
USING
RECEIVED / FILED

1 8 MAY '01

RECORDED BOOK OL-44 230

# PREFERRED SHIP MORTGAGE

THIS PREFERRED SHIP MORTGAGE is executed on May 17, 2001 by MAJESTIC VOYAGES INC. ("Owner"), whose address is One World Trade Center, Suite 8901, New York, New York, 10048 in favor of Associates Commercial Corporation ("Mortgagee"), whose address is 300 East Carpenter Freeway, 17th Floor, Irving, Texas, 75062.

Owner is the sole owner of the whole of the following Vessel, a documented vessel of the United States, whose records are maintained at the National Vessel Documentation Center, Falling Waters, West Virginia.

| VESSEL | RIG | OFFICIAL NO. | GROSS TONS | NET TONS |
|---|---|---|---|---|
| MAJESTIC STAR | Passenger | 1109715 | 97 | 87 |

(hereinafter the "Vessel").

Owner is justly indebted to Mortgagee under that certain Loan Agreement dated of even date herewith (the "Loan Agreement"), and under those promissory notes, continuing guaranties and other instruments issued pursuant thereto, and Owner is or may become indebted to Mortgagee under or pursuant to one or more additional loan agreements, promissory notes, letters of credit, guarantees or other agreements, loans, extensions of credit or financial accommodations between Owner and Mortgagee, whether direct or indirect, absolute or contingent, presently existing or hereafter arising, and whether or not pursuant to commitment, as well as under any extensions or renewals of, amendments to and replacements for, any of the foregoing.

Owner has agreed to provide security for any and all present or future obligations of Owner to Mortgagee under the terms of this instrument.

NOW THEREFORE, in consideration of the premises and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in order to secure the prompt and punctual payment, performance and satisfaction of any and all obligations, liabilities, or indebtedness of the Owner to Mortgagee, whether now existing or hereafter arising, due or to become due, up to the maximum principal amount of $3,065,000.00 outstanding at any time, from time to time, including without limitation, and individually, collectively and interchangeably, any and all present and future advances, loans, financial accommodations and extensions of credit obtained or to be obtained by Owner from Mortgagee from time to time, one or more times, and the obligations of Owner under any and all loan agreements, promissory notes, letter-of-credit arrangements, endorsements, continuing guaranties, and other agreements, loans or extensions of credit (including, but not limited to, the indebtedness and obligations of Owner to Mortgagee under the Loan Agreement, and all promissory notes and other instruments of Owner or its affiliates issued pursuant thereto, and under all guaranties of the indebtedness and other obligations of affiliates of Owner contemplated thereby, including the indebtedness and other obligations of Majestic Star, Inc., together with any and all amendments thereto, and/or renewals, extensions and refinancings of any of the foregoing) as well as any and all other obligations that Owner may now or in the future owe to or incur in favor of Mortgagee, whether by way of assignment, purchase of a participation interest or otherwise, and whether absolute or contingent, liquidated or unliquidated, owed individually, jointly, severally or jointly and severally with others, as a principal obligor or as a surety, of every nature and description, in principal, interest, premiums and other fees and charges, together with all attorneys' fees, premiums of insurance, taxes, assessments, expenses and costs, and in order to secure the payment and satisfaction of any sums payable under, as well as the observance and performance of all of the obligations, covenants, agreements and stipulations contained in, this Mortgage (all of the foregoing, hereafter, collectively, the "Secured Obligations"), Owner mortgages to Mortgagee, its successors and assigns, on the terms set out below, the whole of the Vessel described above, together with all engines, boilers, machinery, masts, boats, anchors, cables, chains, rigging, tackle, apparel, furniture, capstans, outfit, tools, pumps, gear, furnishings, appliances, fittings and spare and replacement parts, all other appurtenances thereto appertaining or belonging, and all inventory and equipment related thereto, whether now owned or hereafter acquired by Owner, whether on board or not on board, and also any and all additions, improvements and replacements hereinafter made by Owner or on Owner's behalf to said Vessel, or any part thereof, and all products and proceeds of all of the foregoing.

0110SHIP.MTG.wpd

PROVIDED ALWAYS, that if Owner shall pay or cause to be paid the indebtedness arising hereunder and under the Secured Obligations, and Owner shall duly perform all the covenants, terms, and conditions of this Mortgage and the Secured Obligations, express or implied, then this Mortgage and the estate and rights hereunder shall cease, determine, and be void, otherwise to remain in full force and effect; subject, however, to the provisions hereinafter contained.

The maximum amount of direct or contingent obligations that is or may become secured by this Mortgage is $3,065,000.00, excluding interest, expenses and fees. For the purpose of securing payment of the Secured Obligations, plus interest, expenses and fees, and performance of Mortgage covenants, Owner has executed and delivered this Mortgage this date in the amount of $3,065,000.00 to be preferred under Chapter 313 of Title 46 of the United States Code. Unless otherwise stated herein, or on a Schedule attached hereto, the discharge amount of this Mortgage is the same as the total amount. The interest of the Owner in the Vessel is 100%, and the interest in the Vessel mortgaged hereby by Owner to Mortgagee is 100%.

## 1.00   TERMS AND CONDITIONS:

1.01      Recordation. Owner will cause this Mortgage to be duly recorded at its own expense, and will comply with all of the provisions of applicable laws and regulations of the United States of America, as amended, in order to establish and maintain this Mortgage as a "preferred mortgage" on the Vessel and upon all renewals, replacements and improvements made by or for the benefit of Owner to the Vessel for the amounts secured hereby. The description of the Vessel, including the data required by law to entitle this Mortgage to preferred status under Chapter 313 of Title 46 of the United States Code, is true and accurate. Owner will execute and record from time to time, at its own expense, such additional instruments as may be necessary or appropriate so that this Mortgage will remain a valid lien on the Vessel, all improvements thereto, and substitute parts incorporated therein, by or for the benefit of the Owner.

1.02      Restrictions on Sale, etc. Owner will not sell, mortgage, demise or bareboat charter (other than any charter to corporate affiliates of Owner) or otherwise transfer the Vessel, nor shall the Owner operate the Vessel other than in New York Harbor and its connecting waters, including the Hudson River, the East River, the Harlem River, the Upper Bay and western Long Island Sound, without the prior written consent of Mortgagee. Any consent by Mortgagee to any one sale, mortgage, demise or bareboat charter, transfer or operation of the Vessel outside the above navigation limits shall not be construed to be a waiver of this provision with respect to any subsequent proposed sale, mortgage, demise or bareboat charter, transfer or operation. Owner may from time to time enter into time charters of the Vessel in the ordinary course of business without the prior consent of Mortgagee (provided that the term of any such charter, including options, does not exceed one month). Time charters specifying a longer term may not be entered into without Mortgagee's prior written consent. All charters (whether bareboat, time or otherwise) permitted under this paragraph, with a term, including options, in excess of one (1) month, shall contain a clause placing the charterer on notice of this Mortgage and setting forth the agreement of charterer that any claim and any rights in and to the Vessel that the charterer may have against the Owner or the Vessel arising under or as a result of such charter shall be subordinate to the lien of this Mortgage.

1.03      No Other Liens. Neither Owner, any charterer, any operator, the master of the Vessel, nor any other person has any right, power or authority to create, incur or permit to be placed upon the Vessel or other property subject to this Mortgage any lien, security interest or claim whatsoever, other than (a) this Mortgage or other liens in favor of Mortgagee, (b) liens for salvage, (c) inchoate liens for current crew's wages, (d) liens covered by valid policies of insurance held by or otherwise in favor of Owner and Mortgagee and not in excess of the minimum limits specified in Paragraph 2.04 below, (e) inchoate liens not covered by insurance, incurred in the ordinary course of business and not more than thirty (30) days past due, and (f) such other liens as may be permitted by any loan or other agreement between Owner and Mortgagee. Any liens or charters to which the Vessel is currently subject (other than liens in favor of Mortgagee) are disclosed as follows (if blank then none):

1.04      Notice of Mortgage. Owner will cause to be placed and kept prominently displayed in a conspicuous place on the Vessel a notice as follows:

## NOTICE OF MORTGAGE

This Vessel is covered by a Preferred Ship Mortgage to Associates Commercial Corporation under authority of Chapter 313 of Title 46 of the United States Code, as

amended, to secure payment to the Mortgagee of certain indebtedness. A certified copy of the Mortgage is on board the Vessel and is on file at the office of the Owner, where it may be examined, upon demand, by any person having business with the Vessel. Under the terms of this Mortgage, neither the Owner, any operator, any charterer, any subcharterer, nor the master of this Vessel has the right, power or authority to create, incur or permit to exist on this Vessel any lien or encumbrance whatsoever except liens for current crew's wages and salvage, and the lien of said Mortgage.

Owner will promptly cause a counterpart of this Mortgage, certified by the United States Coast Guard, to be kept on board the Vessel, if required by Chapter 313 of Title 46 of the United States Code, and in the office of Owner, available for inspection, and will exhibit the same and the ship's papers upon demand to any person having business with the Vessel. Owner will take such other appropriate steps from time to time as will give notice to the world that Owner's right, title and interest in and to the Vessel is subject to this Mortgage, and that, except for this Mortgage, Owner has no right, power or authority to suffer or permit any liens or claims against the Vessel.

1.05. Additional Security. As additional security for the prompt and full payment and performance of all indebtedness and other undertakings and obligations of Owner hereunder and under the Secured Obligations, Owner hereby assigns to Mortgagee and grants to Mortgagee a continuing general security interest in all of Owner's right, title and interest in and to any and all present and future: (a) charter agreements entered into by Owner covering the charter of the Vessel together with the benefits, rights and remedies thereunder, including without limitation all charter hire payments, rates and other monies now or hereafter due or to become due pursuant to said charter agreements; and (b) any and all accounts; accounts receivable, equipment, machinery, fixtures, inventory, chattel paper, documents, letters of credit and letter of credit rights, instruments, general intangibles (including payment intangibles), and any supporting documents, including guaranties, whether now owned or hereafter acquired, arising out of the use or operation of, or otherwise related to, the Vessel; as well as (c) all products and proceeds of any of the foregoing (the "Additional Collateral").

Owner agrees and covenants that, notwithstanding this assignment, Mortgagee shall have none of Owner's obligations under any assigned charter. All of Owner's right, title and interest assigned with respect to any charter may be reassigned by Mortgagee and any subsequent assignee of Mortgagee, but only in conjunction with an assignment of this Mortgage and the Secured Obligations. It is expressly agreed that, anything herein contained to the contrary notwithstanding, Owner's obligation under any charter may be performed by Mortgagee or any subsequent assignee of Mortgagee without releasing Owner therefrom, and Mortgagee, shall not, by reason of this assignment, be obligated to perform any of Owner's obligations under any charter or to file any claim or take any other action to collect or enforce any payment assigned hereunder. Owner further agrees and covenants that none of said charters shall be amended, revised or altered in such a manner so as to materially affect the rights of Mortgagee.

If an event of default under the Secured Obligations or this Mortgage, or other event which with the giving of notice or lapse of time or both would become such an event of default, shall have occurred and be continuing, then no charter, account, accounts receivable, chattel paper or instruments shall be rescinded, canceled or otherwise discharged without first notifying Mortgagee. Owner represents and warrants that said charters, and all accounts, accounts receivable, chattel paper, documents, instruments and general intangibles pertaining to the Vessel, are or will be valid and subsisting between the parties thereto, that the Vessel shall have been, or shall be, delivered to and accepted by the charterer named in each charter, that Owner has not and shall not otherwise transfer, assign or pledge said charters or other Additional Collateral or any interest therein or thereunder, and that Owner has no knowledge of any facts which might impair or affect the validity of said charters or other Additional Collateral. In order to protect Mortgagee's security interest in any charter or other Additional Collateral granted by this assignment, Owner shall stamp or otherwise write in clear print on the final page of such charter, or the document or instrument evidencing such Additional Collateral, notice that such Additional Collateral is subject to a security interest held by Mortgagee (provided however that this requirement shall not be applicable to Owner's invoices). Owner shall take such action as Mortgagee may from time to time reasonably request to initiate or maintain or protect the security interest in any charter granted or to be granted pursuant to this paragraph, including, but not limited to, the filing of financing statements or other appropriate notices of this assignment in the public records, and providing notice of this assignment to the charterers of the Vessel or account debtors.

01108\SHIP.MTG2.wpd                                -3-

2.00    WARRANTIES; AGREEMENTS:  Owner represents, warrants and agrees that:

2.01    Organization; Citizenship. Owner was duly organized and is now a corporation, Owner is now, and during the life of this Mortgage shall remain, a citizen of the United States as defined in Section 2 of the Shipping Act of 1916, as amended. Owner will not permit the sale or transfer of any of its capital stock to any person or persons if such sale would impair the Owner's status as a citizen of the United States, eligible to operate vessels in the coastwise trade. Owner is duly authorized to mortgage the property conveyed hereby, and has taken all action necessary and required by law for the execution and delivery of this Mortgage, and the instruments evidencing the Secured Obligations. The Secured Obligations and this Mortgage are and will be the valid and enforceable undertakings of Owner in accordance with their terms.

2.02    Ownership; Defense of Claims. Owner owns and possesses the Vessel free from any Lien or other encumbrance whatsoever, except as set forth above, whether such Liens are well founded or unfounded, choate or inchoate. Owner will warrant and defend title of the Vessel and possession thereof for the benefit of Mortgagee against the claims and demands of all persons whatsoever.

2.03    Vessel Documentation; Registry or Flag. The Vessel is and shall remain documented under the laws of the United States. Owner will promptly and properly renew the Vessel's documentation with the United States Coast Guard as required and will not allow the Vessel to be used for any purpose other than that for which she is documented with the United States Coast Guard. Owner will not change the registry or flag of the Vessel without the prior written consent of Mortgagee. Any written consent of Mortgagee to any one change of registry or flag shall not be construed to be a waiver of this provision with respect to any subsequent change of registry or flag.

2.04    Insurance on Vessel. Owner will cause to be carried and maintained on the Vessel at no cost to Mortgagee at all times during the existence of this Mortgage, (1) full form hull and machinery insurance providing the broadest commercial coverage available, and including a liner negligence provision, with a stipulated agreed value in an amount not less than the fair market value of the Vessel (but in no event and at no time shall the aggregate hull insurance on the Vessel be in an amount less than the outstanding balance of the Secured Obligations), (2) protection and indemnity insurance, on form SP-23 or equivalent, including, without limitation, coverage for the passengers and crew of the Vessel, collision, contractual liability and wreck removal, (3) pollution liability and clean-up insurance, with limits per occurrence of no less than the limits of liability under the Oil Pollution Act of 1990, 33 U.S.C. §2701, et seq. and the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §9601, et seq., as each is amended from time to time, (4) excess risks, including excess protection and indemnity, excess collision, and excess pollution insurance, in one or more layers, with aggregate limits of not less than $10,000,000.00, and (5) such additional insurance or limits as may be required by Mortgagee. Owner will provide Mortgagee with an original certificate or cover note which evidences the coverage as required herein. Policy deductibles, if any, shall not exceed that which is customary for companies similarly situated and acceptable to Mortgagee. All insurance shall be placed and kept with insurers reasonably satisfactory to the Mortgagee and any evidence of insurance submitted to Mortgagee in a form acceptable to Mortgagee and shall be signed by the insurance company or by an agent authorized by the company to bind coverage. Owner may carry additional insurance or limits as desired; provided however that, with respect to any physical loss or damage or liability coverages pertaining to the Vessel, Owner shall cause Mortgagee to be named as an additional insured and a loss payee consistent with the requirements of this section so that Mortgagee may also receive the benefits of such additional insurance or limits as its interest may appear.

Should the Vessel be navigated outside its customary navigation limits, Owner shall, prior to any such navigation, procure an endorsement to the policies obtained hereunder authorizing such navigation, and procure increased value, war risk and related coverage as may be required by Mortgagee.

While laid up, the Vessel may, in lieu of the insurance specified herein, be insured by Owner or by any charterer thereof to the same amount under customary port risk policies satisfactory to Mortgagee.

All insurance shall name Mortgagee as a co-assured, as its interest may appear, and shall be payable as hereinafter provided. Such policies shall provide that Mortgagee will receive at least thirty (30) days written notice from the insurance company prior to cancellation or any material alteration in the insurance policy or reduction in coverage which could materially affect the interest of Mortgagee.

01105\SHIP-MTG2.wpd                                    -4-

Owner shall provide a separate Mortgagee's single interest or breach of warranty coverage in an amount at all times equal to or greater than the Owner's indebtedness to Mortgagee under the Secured Obligations, such that no act or omission of Owner, or any charterer, or breach of any warranty, including breach of any warranty of seaworthiness, whether express or implied, shall operate to forfeit Mortgagee's coverage under the above policies or result in a cancellation of insurance as to Mortgagee. No policy required under this Section 2.04 shall contain any warranty, including any warranty of seaworthiness, the breach of which is not covered by this single interest or breach of warranty coverage.

If any insurance referred to herein is not obtained by Owner, Owner will give Mortgagee written notice of such fact, and will endeavor to obtain such insurance. Owner will detain the Vessel in port until such insurance has been obtained. On an annual basis during the existence of this Mortgage, Owner will provide Mortgagee with a letter from a reputable insurance broker identifying and describing the insurance policies then in effect with respect to the Vessel, and affirming that such policies and coverages, and the limits applicable thereto, are standard in the industry in which the Vessel is engaged. Any failure by Owner to keep the Vessel fully insured as required herein shall constitute an Event of Default hereunder.

In the event of a partial loss of the Vessel, Mortgagee consents that the underwriters may pay directly for repairs, salvage or other charges, or may reimburse Owner therefor, provided that Owner is not in default hereunder. If Owner is in default hereunder, Mortgagee shall be entitled to receive such insurance money directly from the underwriters. In the event of actual or constructive total loss, or an agreed, arranged or compromised total loss, of the Vessel, all policy proceeds shall be paid directly to Mortgagee and shall be applied to the payment to Mortgagee of all sums secured hereby, whether then due or not. Any remaining surplus shall be paid to Owner or to whomever shall be entitled thereto. All policies shall name Mortgagee as loss payee as its interests may appear and shall be paid as provided in this Paragraph.

Owner will keep or cause the aforesaid insurance to be kept valid, and renew, or cause the renewal of same, when necessary, providing Mortgagee with appropriate renewal binders and policy copies once prepared. Owner will cause the premiums and costs thereof to be paid when due and will furnish Mortgagee with evidence satisfactory to Mortgagee that said payments have been made. If Owner shall at any time fail to comply with the foregoing, Mortgagee may, without obligation, procure such insurance and pay any unpaid premiums or may procure other insurance necessary to protect Mortgagee's interest in the Vessel. The costs and expenses thereof, with interest at the Default Rate (as such term is defined in the Loan Agreement), from the date of such expenditure until paid, shall be an additional indebtedness and obligation due from Owner to Mortgagee secured by this Mortgage, and payable on demand.

Owner will not do any act, nor voluntarily suffer or permit any act to be done, whereby any insurance is or may be suspended, impaired, or defeated. Owner will not suffer or permit the Vessel to engage in any voyages, nor to carry any cargos not permitted under the policies of insurance in effect, without first adding or causing the addition of specific insurance on the Vessel, to the amount herein required, and satisfactory to the Mortgagee, which permits and covers such voyages or the carriage of such cargos.

2.05    Compliance with Legal Restrictions. Owner covenants not knowingly to cause or permit the Vessel to be operated in any manner contrary to the laws of the United States or of any state or country wherein the same is operated.

2.06    Notice of Seizure. If the Vessel shall be libeled, attached, seized or otherwise detained under any legal authority, Owner shall immediately proceed to obtain the release or discharge of the Vessel as provided below, and, if Owner has not secured the release or discharge of the Vessel within forty-eight (48) hours, Owner shall immediately notify Mortgagee of the seizure by telephone or facsimile confirmed in writing and delivered to Mortgagee by overnight courier.

2.07    Maintenance of Vessel. Owner will exercise due diligence to put the Vessel in good running condition, order and repair, well and sufficiently tackled, appareled, furnished and equipped and make her seaworthy, and, at all times, at its own expense and risk, so maintain and preserve the Vessel, ordinary wear and tear excepted. Owner shall keep the Vessel in such condition that she complies with all applicable United States laws, treaties, conventions, rules, regulations and ABS Certifications and keep on board the Vessel, when required thereby, valid certificates showing compliance therewith. Owner will not make, or permit to be made, any change in the structure, type, or speed of the Vessel, or any change in her rig, without receiving Mortgagee's prior written approval.

2.08    Inspection of Vessel and Documents. Owner will, at all reasonable times, afford Mortgagee and its representatives, successors or assigns, complete access to the Vessel for the purpose of inspecting the same, and at Mortgagee's request, will

01108\SHIP-MTG2.wpd                                    -5-

deliver for inspection copies of any and all contracts and documents relating to the Vessel, whether on board or not. Owner will furnish to Mortgagee, on demand, all charter parties with respect to the Vessel, and full details as to the parties, times of carriage, and the like pertaining thereto.

2.09    Payment of Taxes, etc. Owner will pay and discharge, from time to time, or cause to be paid and discharged, all claims, taxes, assessments, governmental charges, fines and penalties lawfully imposed upon, or which may become a lien or charge upon the Vessel. Nothing herein shall require the payment of any such claim, tax assessment, charge, fine or penalty for which adequate reserves have been established so long as the same may be diligently contested in good faith and by appropriate legal proceedings and so long as such non-payment shall not result in the seizure, attachment or loss of the Vessel. Owner shall take, or cause to be taken, whatever steps may be required to release or discharge the Vessel from any arrest or seizure which may interfere with her regular use.

2.10    Financial Statements and Reports. Owner shall comply with the financial reporting requirements set forth in Article 8 of the Loan Agreement. Owner warrants that all information and representations furnished by Owner to Mortgagee concerning the Vessel or the financial condition of Owner and any guarantor shall be accurate and correct. Owner shall give Mortgagee immediate notice and copies of all tax notices, reports or inquiries, claims of liens, and of any damage, loss, seizure, attachment or judicial process which may affect the use, maintenance, operation, possession or ownership of the Vessel.

2.11    Hazardous Substances and Pollutants. Owner warrants that it will not use, generate, transport, store or dispose of, on, in, or about the Vessel, or utilize the Vessel in connection with, or so as to cause, either directly or indirectly, the release or discharge of any Hazardous Substance or Pollutant in violation of any applicable Environmental Laws. Owner hereby agrees to indemnify and hold Mortgagee harmless from any and all liability arising from the breach of this warranty, and to notify Mortgagee immediately upon any release or threatened release of any Hazardous Substance or Pollutant in, on, under or about the Vessel, and upon the initiation of any proceeding or inquiry with respect to such a release or threatened release by any governmental agency or other authority.

2.12    Compliance by Charterer. If any of the above-described duties, covenants, promises, conditions, agreements or terms shall have been delegated by Owner to any charterer in connection with any charter permitted hereunder, Owner will also cause charterer to comply fully therewith.

3.00    EVENTS OF DEFAULT: The following are Events of Default hereunder:

3.01    Failure to pay any installment of principal or interest scheduled under the Secured Obligations, or the principal or interest scheduled under any other indebtedness of Owner to Mortgagee, within ten (10) days of the date such payment is due.

3.02    A default by Owner under any commitment letter, loan agreement (including the Loan Agreement referenced above) or credit agreement governing any Secured Obligations or pursuant to which any Secured Obligation was issued.

3.03    Should Owner fail to maintain in full force and effect all insurance required in Section 2.04 of this Mortgage.

3.04    Default in the performance or observance by Owner or any Guarantor of any Secured Obligations, including, without limitation, any covenant, warranty, promise, condition, agreement or term contained herein, in any commitment letter, or in any loan agreement (including the Loan Agreement referenced above), credit agreement, note, mortgage, assignment, security agreement, guaranty or other agreement, or amendment or supplement thereof, evidencing or securing the Secured Obligations, or other indebtedness, of Owner to Mortgagee, or default by any guarantor under any guaranty or other agreement securing the payment of any indebtedness or the performance of any undertakings of Owner under the Secured Obligations, should such default remain uncured after ten (10) days from the occurrence thereof or after the expiration of any period of grace contained in such agreement, whichever is greater.

3.05    Any representation, warranty, statement, certificate, schedule or report made herein or furnished hereunder, or in any loan agreement (including the Loan Agreement referenced above), credit agreement, note, mortgage, assignment, security agreement, guaranty, or other agreement executed or endorsed by Owner or any Guarantor in favor of Mortgagee, shall prove to have been false or misleading in any material respect when made or deemed to have been made.

3.06    Any evidence of Debt to third persons for which Owner or any Guarantor is liable as principal, guarantor or otherwise shall become due by acceleration or otherwise and shall not promptly be paid or timely contested in appropriate proceedings.

3.07    Any proceeds from the sale, loss, requisition, seizure or forfeiture of, or from any insurance carried on or in respect of, the Vessel which is otherwise payable to Mortgagee shall not have been received by Mortgagee for distribution in accordance with the provisions hereof within ten (10) days after the same are received by Owner.

3.08    Owner shall (i) apply for or consent to the appointment of or the taking of possession by a receiver, custodian, trustee or liquidator of itself or of all or a substantial part of its property, (ii) admit in writing its inability to pay, or generally not be paying, its debts as they become due, (iii) make a general assignment for the benefit of creditors, (iv) commence a voluntary action under the Federal Bankruptcy Code (as now or hereafter in effect), (v) file a petition seeking to take advantage of any other law relating to bankruptcy, insolvency, reorganization, winding-up or composition or adjustment of debts, (vi) fail to controvert in a timely or appropriate manner or acquiesce in writing to any petition filed against the Owner in an involuntary action under such Bankruptcy Code or (vii) take any action for the purpose of effecting any of the foregoing.

3.09    A proceeding or case shall be commenced without the consent of the Owner in any court of competent jurisdiction seeking (i) the liquidation, reorganization, dissolution, winding-up or composition or readjustment of debts of Owner, (ii) the appointment of a receiver, trustee, custodian, liquidator or the like for Owner or of all or a substantial part of its assets or (iii) similar relief under any law relating to bankruptcy, insolvency, reorganization, winding-up or composition or adjustment of debts; and such proceeding or case continues undismissed, or an order, judgment or decree approving or ordering any of the foregoing is entered and continues unstayed for a period of thirty (30) days, or any order for relief against the Owner is entered in any involuntary case under the Bankruptcy Code.

3.10    Any Guarantor of any amounts due hereunder or otherwise under the Secured Obligations shall take any action as outlined in Paragraph (3.08) above or shall have instituted against Guarantor any action as outlined in Paragraph (3.09) above.

4.00    RIGHTS AND REMEDIES ON DEFAULT.    If any such Event of Default occurs and is continuing, Mortgagee may, at its option, do any one or more of the following:

4.01    Declare the Secured Obligations, all indebtedness arising under the Secured Obligations, and all other indebtedness of Owner to Mortgagee, in principal and interest, forthwith due and payable.

4.02    Enforce Mortgagee's rights by an action at law, suit in equity or other appropriate proceeding, whether for the specific performance of, or for an injunction against a violation of the Secured Obligations, including any term hereof, or of any loan agreement (including the Loan Agreement referenced above), credit agreement, note, mortgage, assignment, security agreement, guaranty or other instrument or agreement executed or endorsed by Owner or any Guarantor in favor of Mortgagee, or in the aid of the exercise of any power granted by this Mortgage, any said loan agreement, note, mortgage, assignment, security agreement, instrument or agreement, or by law.

4.03    Exercise all of the rights and remedies of foreclosure, and otherwise, given to Mortgagees by laws of the United States of America or other jurisdiction, including, but not limited to, all rights and remedies granted to Mortgagees under Chapter 313 of Title 46, United States Code, and under the Uniform Commercial Code as in force in any jurisdiction in which the Vessel or any Additional Collateral may be found.

4.04    Take and enter into possession of the Vessel and the Additional Collateral at any time, wherever the same may be, without legal process and without being responsible for loss or damage. Owner or any other person in possession of the Vessel or Additional Collateral shall forthwith, upon demand of Mortgagee, assemble and surrender possession of the Vessel and Additional Collateral to Mortgagee. Mortgagee may, without being responsible for loss or damage, hold, lay up, lease, charter, operate or otherwise use the Vessel for such time and upon such terms as it may deem to be for its best advantage; make any necessary repairs on the Vessel or Additional Collateral; and demand, collect and retain all hire, freights, earnings, issues, revenues, income, profits, return of premiums, salvage awards or recoveries, recoveries in general average, and all other sums due or to become due in respect of the Vessel or Additional Collateral or in respect of any insurance thereon from any person whomsoever.

4.05    Take and enter into possession of the Vessel and the Additional Collateral, at any time, wherever the same may be, without legal process, and if it seems desirable to Mortgagee and without being responsible for loss or damage, sell the Vessel and the Additional Collateral, at any place and at such time as Mortgagee may specify and in such manner as Mortgagee may deem advisable, free from any claim by Owner in admiralty, in equity, at law or by statute, after first giving Owner notice thereof ten (10) days in advance of the time and place of sale.

4.06    Exercise all rights, privileges and remedies in foreclosure or otherwise given Mortgagee by this Mortgage, or by any other instrument evidencing or securing the Secured Obligations, or by applicable law.

4.07    Collect, receive, compromise and sue for, in the name of Mortgagee or Owner all earned freights, charter hire, accounts, issues, revenues, income, profits or other earnings arising out of, or in any way connected with, the use or operation of the Vessel.

5.00    OTHER AGREEMENTS ON DEFAULT OR OTHERWISE:

5.01    Sale of Vessel or Additional Collateral.  Any sale of the Vessel or Additional Collateral made pursuant to this Mortgage, whether under the power of sale hereby granted or any judicial proceedings, shall operate to divest all right, title and interest of any nature whatsoever of Owner therein and thereto, and shall bar Owner, its successors and assigns, and all persons claiming by, through, or under them.  No purchaser shall be bound to inquire whether notice has been given, or whether any default has occurred, or as to the propriety of the sale, or as to the application of the proceeds thereof.

5.02    Attorney-In-Fact.  In the event that Owner shall default in the payment of the principal, premium, if any, or interest on any indebtedness forming a part of or arising under the Secured Obligations, or upon the occurrence of any other Event of Default hereunder, or under any loan agreement (including the Loan Agreement referenced above), credit agreement, note, mortgage, guaranty or security agreement evidencing or securing the Secured Obligations, or under any other undertaking of Owner to Mortgagee, Owner irrevocably appoints Mortgagee the attorney-in-fact of Owner, (1) to execute, deliver and to make, in the name of and on behalf of Owner, a good conveyance of title to the Vessel and the Additional Collateral to any purchaser (Owner will, if and when required by Mortgagee, execute such form of conveyance of title to the Vessel or Additional Collateral as Mortgagee may direct; Owner agrees that this requirement is subject to a suit for specific performance hereof); (2) to demand, collect, receive, compromise and sue for, in the name of Owner, all freight, hire, earnings, issues, revenues, accounts, accounts receivable, chattel paper, income and profits of the Vessel, and all amounts due from underwriters under any insurance thereon as payment of losses, or as return premiums, or otherwise, salvage award, and recoveries in general average or otherwise, and all other sums thereafter due or to become due in respect of, the Vessel, or in respect of any insurance thereon, from any person whomsoever to the extent of Owner's interest therein, which said interest is hereby assigned to Mortgagee; (3) to make, give and execute in the name of the Owner acquittances, receipts, releases or other discharges for the same, whether under seal or otherwise; (4) to endorse and accept, in the name of Owner, all checks, notes, drafts, warrants, agreements and other instruments in writing with respect to the foregoing.  Owner authorizes the Mortgagee to take any such action or exercise any power enumerated in this Paragraph, or otherwise provided for in this Mortgage or under applicable law.

5.03    Arrest of Vessel.  In the event that the Vessel shall be arrested or detained by a marshal or other officer of any court of law, equity or admiralty jurisdiction, or by any government or other authority, and shall not be released from arrest or detention within fifteen (15) days from the date of Owner's receipt of notice of any such arrest or detention, or within such lesser time as may be necessary under applicable law to avoid prejudice to Mortgagee's rights hereunder, Owner irrevocably appoints Mortgagee the attorney-in-fact of Owner and authorizes and empowers Mortgagee, or any appointee or appointees of Mortgagee, in the name of Mortgagee or Owner, its successor or assigns, to apply for and receive or take possession of the Vessel with all the rights and powers that Owner, its successors or assigns, might have, possess or exercise in any such event.  Owner authorizes and empowers Mortgagee, its appointees, or any of them, to appear in the name of Owner, its successors and assigns, in any court or other forum where a suit is pending against the Vessel because of, or on account of, any alleged lien against the Vessel from which the Vessel has not been released, and to take such proceedings as to them may seem proper towards the defense of such suit and the purchase or discharge of such lien.  All expenditures incurred for the purpose of such defense, purchase or discharge, with interest per annum at the Default Rate, from the date of any such expenditure until paid, shall be an additional indebtedness and obligation which shall be secured by this Mortgage, payable on demand.

01100SHIP-MTG7.wpd                                    -8-

5.04    Relationship of Owner and Mortgagee. In case Mortgagee shall have proceeded to enforce any right, power or remedy under this Mortgage by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Mortgagee, then and in every such case Owner and Mortgagee shall be restored to their former positions and rights hereunder with respect to the property subject or intended to be subject to this Mortgage, and all rights, powers and remedies of Mortgagee shall continue as if no such proceedings had been taken.

5.05    Cost of Collection; Attorneys' Fees. In addition to any other amounts recoverable under the Secured Obligations or this Mortgage, Owner hereby agrees to pay to Mortgagee on demand: (i) all costs and expenses incurred by Mortgagee in connection with the preparation, negotiation, and execution of this Mortgage, and any other Loan Documents or agreements between Owner and Mortgagee, and any and all amendments, modifications, renewals, extensions, and supplements thereof and thereto, including, without limitation, the fees and expenses of Mortgagee's legal counsel; (ii) all of Mortgagee's costs and expenses incurred by reason of Owner's breach or default under the Secured Obligations, including, without limitation, costs and expenses incurred in collecting any indebtedness arising under the Secured Obligations, costs and expenses of repossession, storing, holding, transporting, insuring, servicing, repairing, maintaining, chartering and selling the Vessel and the Additional Collateral, and collecting charter hire, rents or other proceeds of the disposition thereof, and the reasonable fees and expenses of attorneys and other professionals employed by Mortgagee in connection with the protection and enforcement of its interest in the Vessel and the Additional Collateral and its rights under the instruments evidencing the Secured Obligations and this Mortgage; and (iii) all other costs and expenses incurred by Mortgagee in connection with this Mortgage, or any other Loan Document or agreement between Owner and Mortgagee, including, without limitation, all costs, expenses, taxes, assessments, filing fees, and other charges levied by any governmental authority or otherwise payable in respect of this Mortgage or such other loan document or agreement, or in obtaining any mortgagee title insurance policy, survey, audit, or appraisal in respect of the Vessel, all of which shall be an additional indebtedness and obligation secured hereby.

5.06    Appointment of Receiver or Substitute Custodian. At Mortgagee's option, in any suit to foreclose the lien of this Mortgage, Mortgagee shall be entitled as a matter of right, and not as a matter of discretion, to the appointment of a receiver or substitute custodian of the Vessel. Any receiver so appointed shall have full rights and powers to use and operate the Vessel, and to a decree ordering and directing the sale and disposal thereof. In any such suit, Owner will enter a voluntary appearance. Mortgagee may bid and become a purchaser at such sale, and, in such event, shall be entitled to credit on the purchase price any and all sums due to Mortgagee hereunder. Any custodian so appointed shall have full rights and powers to retain possession of the Vessel, and to provide for her maintenance and safe-keeping prior to sale, in lieu of custody by the U.S. Marshal, other governmental authority, or their designees. Owner hereby designates Mortgagee, or any employee, agent, or other person named by Mortgagee at the time seizure of the Vessel is effected, or at the commencement of any suit, to serve as receiver or custodian of the Vessel as the case may be.

5.07    Defense of Claims Against Vessel. In the event Owner fails promptly to defend any claim against the Vessel, Owner authorizes Mortgagee, or its appointee, at its option, to appear in the name of Owner, its successors and assigns, in any court where a suit is pending against the Vessel because of any alleged lien against the Vessel and to take such action as to them may seem proper towards the defense of such suit and the discharge of such lien. All moneys expended by them for the purpose of such defense and/or discharge, with interest per annum at the Default Rate from the date of such expenditure until paid, shall be an additional indebtedness and obligation due from Owner to Mortgagee secured by this Mortgage, payable on demand.

5.08    Performance by Mortgagee. If Owner fails to pay any tax, claim, lien, or encumbrance that it is required to pay or discharge under the terms of this Mortgage, or to pay any insurance premium as aforesaid, or to maintain the Vessel as aforesaid, or commits or permits waste, or fails to perform or observe any term, agreement, provision, covenant, or condition of this Mortgage, Mortgagee may pay such claim, lien, encumbrance, tax, assessment, or premium, with right of subrogation thereunder, may make any repairs and take any steps it deems advisable to prevent or cure such waste, and may appear in any action or proceeding with respect to any of the foregoing and retain counsel therein, and take such action therein as Mortgagee deems advisable. For any of such purposes, Mortgagee may advance any sums of money it deems necessary. Mortgagee will pay to Mortgagee, immediately upon demand, all sums of money advanced by Mortgagee pursuant to this paragraph and until paid, all such sums, together with interest at the Default Rate from the date of such advance, shall be an additional indebtedness and obligation secured hereby. Mortgagee's rights under this paragraph shall be exercisable in Mortgagee's sole discretion. In no event shall this Mortgage be construed to obligate Mortgagee to exercise any right of cure provided

in this paragraph or elsewhere herein; nor shall Mortgagee be liable to Owner or any other person for any failure or refusal of Mortgagee to exercise any such right.

5.09    Powers and Remedies Cumulative. Each power or remedy herein given to Mortgagee, or granted to Mortgagee under the instruments evidencing the Secured Obligations, any guaranty thereof, or any additional mortgage or security agreement securing same, shall be cumulative and in addition to every other power or remedy specifically given in this Mortgage or existing in admiralty, in equity, at law or by statute. Each power or remedy may be exercised as often as deemed expedient by Mortgagee. No delay or omission by Mortgagee in the exercise of any power or remedy shall impair any such power or remedy, or shall be construed to be a waiver of any Event of Default. The acceptance by Mortgagee of any security or of any payment on account of any Secured Obligation shall not be a waiver of any right to take advantage of any further Event of Default or of any past Event of Default not completely cured thereby.

5.10    Application of Proceeds. The gross proceeds of the sale of the Vessel and the collection of the Additional Collateral, the gross earnings of any charter operation or other use of the Vessel by Mortgagee under any of the powers herein specified, and any and all other monies received by Mortgagee pursuant to or under the terms of this Mortgage, or in any proceedings hereunder, the application of which has not elsewhere herein been specifically provided for, shall be held by Mortgagee and shall be applied as follows:

First: To the payment of all expenses and charges incurred by Mortgagee in the exercise of its rights and remedies hereunder, including the expenses of any sale, the expenses of any retaking or collection, attorneys' fees, court costs, and any other expenses or advances made or incurred by Mortgagee in the protection of its rights or the pursuance of its remedies hereunder, and to provide adequate indemnity to Mortgagee against liens claiming priority over or equality with this Mortgage with interest per annum at the Default Rate, from the date of any such expense or charge incurred;

Second: To the payment of the Secured Obligations together with interest thereon;

Third: To the payment of all other sums secured hereby; and

Fourth: To the payment of any surplus thereafter remaining to Owner, subject to setoff in favor of Mortgagee for any other indebtedness of Owner.

In the event that the proceeds are insufficient to pay the amounts specified in subclauses "First", "Second" and "Third" above, Mortgagee shall be entitled to collect the balance from Owner or any other person liable therefor.

6.00    MISCELLANEOUS:

6.01    Quiet Enjoyment. Until the occurrence of one or more of the Events of Default described above, Owner shall be permitted to retain actual possession and use of the Vessel and the Additional Collateral.

6.02    Consent of Mortgagee. Whenever pursuant to this Mortgage the consent of Mortgagee is required, that consent shall not be unreasonably withheld.

6.03    Mortgage Securing Future Indebtedness. This Mortgage has been executed by Owner in favor of Mortgagee for the purpose of securing all indebtedness of Owner to Mortgagee that may now be existing and that may arise in the future under or pursuant to the Secured Obligations or this Mortgage. This Mortgage shall remain in full force and effect until such time as all of indebtedness arising under the Secured Obligations shall have been paid, in full, in principal, interest, costs, expenses, attorneys' fees and other fees and charges, and all of the Secured Obligations shall have been fully performed.

6.04    Notice. All notices, requests and other communications to any party hereunder shall be given to such party in the manner, and at its address or telecopy number, provided in the Loan Agreement. The effectiveness of any notice shall be governed by the Loan Agreement.

6.05    Capitalized Terms. Capitalized terms of otherwise defined herein shall have the meanings assigned to such terms in the Loan Agreement between Owner and Mortgagee.

6.06    Applicable Law. This Mortgage shall be construed in accordance with, and the rights of the parties hereunder governed by, Chapter 313 of Title 46 of the United States Code and the General Maritime Law of the United States, to the extent applicable, and otherwise by the internal laws of the State of Texas.

6.07    Successors and Assigns. All covenants, warranties, promises, conditions, agreements and terms herein shall bind Owner, its successors and assigns, and shall inure to the benefit of Mortgagee, its successors and assigns. In the event of any assignment of this Mortgage, the term "Mortgagee", as used in this Mortgage, shall mean any such assignee.

6.08    Savings Clause. In the event that any provision of this Mortgage is held to be invalid, such event shall not effect, in any respect whatsoever, the validity of the remainder of this Mortgage, and the remainder shall be reasonably construed without the invalid provision so as to carry out the intent of the parties hereto.

IN WITNESS WHEREOF, the undersigned has executed this instrument this the 17th day of May, 2001.

MAJESTIC VOYAGES INC.

By: _____
Name: Spiros E. Kopelakis
Title: President


ACKNOWLEDGMENT

STATE OF _NEW YORK_
COUNTY OF _NEW YORK_


BEFORE ME, the undersigned authority in and for the State and County aforesaid, personally came and appeared: Spiros E. Kopelakis, to me known, who, being by me duly sworn, did depose and state that he is President of Majestic Voyages Inc., the corporation which is described in and which executed the foregoing Preferred Ship Mortgage; that he signed his name thereto by order of the Board of Directors of such corporation; and he acknowledged the within instrument to be the free act and deed of the said corporation and himself as such officer therefor for the uses and purposes therein expressed.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 17th day of May, 2001.

_____
NOTARY PUBLIC

(Seal)

My Commission Expires: _____

CORINTHIA A. BERNARD
Notary Public, State of New York
No. 24-4922858
Qualified in Kings County
Certificate Filed in New York County
Commission Expires April 11, 2002

011CRSR1F-MTG7.wpd                          -11-

Exhibit G



# PROMISSORY NOTE

$500,000.00                                     May 17, 2001                                     Irving, Texas

FOR VALUE RECEIVED, the undersigned, MAJESTIC STAR, INC., a New Jersey corporation ("Maker"), hereby promises to pay to the order of Associates Commercial Corporation, a Delaware corporation (which, together with its successors, endorsees and assigns, shall be referred to as "Payee"), at P. O. Box 6229, Carol Stream, Illinois, 60197-6229, in lawful money of the United States of America, the principal sum of FIVE HUNDRED THOUSAND AND NO/100 Dollars($500,000.00), or so much thereof as may be advanced and outstanding hereunder, together with interest on the outstanding principal balance from day to day remaining as herein specified, on demand, or if no demand is sooner made, in sixty(60) consecutive monthly installments, of principal and interest, payable in advance, according to the following schedule:

(a) Twelve (12) consecutive monthly installments in the amount of TWELVE THOUSAND AND NO/100 Dollars ($12,000.00) each, commencing on June 1, 2001 and continuing on the first day of each succeeding month thereafter until and including May 1, 2002; followed by

(b) Twelve (12) consecutive monthly installments in the amount of ELEVEN THOUSAND AND NO/100 Dollars ($11,000.00) each, commencing on June 1, 2002 and continuing on the first day of each succeeding month thereafter until and including May 1, 2003; followed by

(c) Thirty-six (36) consecutive monthly installments in the amount of NINE THOUSAND NINE HUNDRED AND 14/100 Dollars ($9,900.14) each, commencing on June 1, 2003 and continuing on the first day of each succeeding month thereafter until and including May 1, 2006.

Notwithstanding the foregoing, the final installment shall be increased by the amount of any past due principal, interest, fees and other amounts payable hereunder, and thus may be substantially more than the scheduled amount of such installment. In the absence of an Event of Default under this Note or any Loan Document, installment payments shall be applied first to interest, with the balance of such installment allocated to principal.

This Note may be prepaid by Maker in whole or in part at any time without premium or penalty.

Except following an Event of Default under this Note, the Loan Agreement or under any other Loan Document, the unpaid principal balance hereof shall bear interest prior to maturity at a fixed rate per annum equal to 10.5%. All past due principal and interest shall bear interest at the Default Rate. Interest on the indebtedness evidenced by this Note shall be computed on the basis of a year of 360 days and the actual number of days elapsed (including the first day but excluding the last day) unless such calculation would result in a usurious rate, in which case interest shall be calculated on the basis of a year of 365 or 366 days, as the case may be. Interest at the applicable rates shall be computed daily on the principal balance outstanding hereunder.

Notwithstanding anything to the contrary contained herein, no provisions of this Note shall require the payment or permit the collection of interest in excess of the Maximum Rate. If any excess of interest in such respect is herein provided for, or shall be adjudicated to be so provided, in this Note or otherwise in connection with this loan transaction, the provisions of this paragraph shall govern and prevail, and neither Maker nor the sureties, guarantors, successors or assigns of Maker shall be obligated to pay the excess amount of such interest, or any other excess sum paid for the use, forbearance or detention of sums loaned pursuant hereto. If for any reason interest in excess of the Maximum Rate shall be deemed charged, required or permitted by any court of competent jurisdiction, any such excess shall be applied as a payment and reduction of the principal of indebtedness evidenced by this Note; and, if the principal amount hereof has been paid in full, any remaining excess shall forthwith be paid to Maker. In determining whether or not the interest paid or payable exceeds the Maximum Rate, Maker and Payee shall, to the extent permitted by applicable law, (i) characterize any non-principal payment as an expense, fee, or premium rather than as interest, (ii) exclude voluntary prepayments and the effects thereof, and (iii) amortize, prorate, allocate, and spread in equal or unequal parts the total amount of interest throughout the entire contemplated term of the indebtedness evidenced by this Note so that the interest for the

-tire term does not exceed the Maximum Rate.

If default be made in the payment of principal or interest under this Note, or upon the occurrence of any other Event of Default, as such term is defined in the Loan Agreement, the Payee may declare this Note to be immediately due and payable, and the same shall thereupon become immediately due and payable, without notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to accelerate, notice of intent to demand, protest, or other formalities of any kind, all of which are hereby expressly waived by Maker; provided, however, that upon the occurrence of an Event of Default under Section 10.1(d) or Section 10.1(e) of the Loan Agreement, this Note shall automatically become immediately due and payable. After acceleration, the outstanding principal balance of this Note, and all other sums payable hereunder, shall bear interest at the Default Rate. Following the occurrence of an Event of Default, Payee shall have the right to exercise any and all remedies provided under the Loan Documents or available to Payee in equity or under applicable law, including the right to foreclose or otherwise enforce all liens or security interests securing payment hereof, and the right to offset against this Note any sum or sums owed by Payee to Maker. Failure of Payee to exercise the rights and remedies provided in this paragraph shall not constitute a waiver of the right to exercise the same upon the occurrence of a subsequent Event of Default.

If Payee expends any effort in any attempt to enforce payment of all or any part or installment of any sum due to Payee, or if this Note is placed in the hands of an attorney for collection, or if it is collected through any legal proceedings, Maker agrees to pay all collection costs and fees incurred by Payee, including reasonable attorneys' fees.

This Note shall be governed by and construed in accordance with the laws of the State of Texas and the applicable laws of the United States of America, including, without limitation, 46 U.S.C. §31322(b). This Note is payable in Dallas County, Texas. Any action or proceeding under or in connection with this Note against Maker or any other party ever liable for payment of any sums of money payable on this Note may be brought in any state or federal court in Dallas County, Texas. Maker and each such other party hereby irrevocably (i) submits to the nonexclusive jurisdiction of such courts and (ii) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in such court or that such court is an inconvenient forum. Nothing herein shall affect the right of Payee to bring any action or proceeding against maker or any other party liable hereunder with respect to any collateral in any state or federal court in any other jurisdiction. Any action or proceeding by Maker or any other party liable hereunder against Payee shall be brought only in a court located in Dallas County, Texas.

Maker and each surety, guarantor, endorser, and other party ever liable for payment of any sums of money payable on this Note jointly and severally waive notice, presentment, demand for payment, protest, notice of protest and non-payment or dishonor, notice of acceleration, notice of intent to accelerate, notice of intent to demand, diligence in collecting, grace, and all other formalities of any kind, and consent to all extensions without notice for any period or periods of time and partial payments, before or after maturity, and any impairment of any collateral securing this Note, all without prejudice to Payee. Payee shall similarly have the right to deal in any way, at any time, with one or more of the foregoing parties without notice to any other party, and to grant any such party any extensions of time for payment of any of said indebtedness, or to release or substitute part or all of the collateral securing this Note, or to grant any other indulgences or forbearances whatsoever, without notice to any other party and without in any way affecting the personal liability of any party hereunder.

This Note is the "Refinance Note" provided for in the Loan Agreement between Maker, the Guarantors of this Note and Payee dated of even date herewith (the "Loan Agreement"). Capitalized terms not otherwise defined in this Note have the meanings assigned in the Loan Agreement. The payment of all principal, interest, fees, costs, expenses and other sums payable under this Note is secured by, among other security, a Preferred Ship Mortgage and a Security Agreement, both granted by Maker in favor of Payee on even date herewith, and bearing against the Collateral described therein, as such agreements may be amended and supplemented from time to time.

MAJESTIC STAR, INC.

By: _____

Name: SPIROS E. KOFELAKIS

Title: President

PROMISSORY NOTE - Page 2

**"PAYMENT GUARANTEED"**

Payment of the foregoing Instrument is guaranteed by the undersigned jointly and severally with the Maker thereof.

MAJESTIC VOYAGES INC.

By: _____

Name: Spiros E. Kopelakis

Title: President

_____

SPIROS E. KOPELAKIS, Individually

_____

SHIRLEY DREIFUS, Individually

Exhibit H

PREFERRED SHIP MORTGAGE

Dated May 17, 2001

-By-

MAJESTIC STAR, INC., as Sole Owner
One World Trade Center, Suite 8901
New York, New York 10048

-In Favor of-

ASSOCIATES COMMERCIAL CORPORATION, as Mortgagee
300 East Carpenter Freeway, 17th Floor
Irving, Texas 75062

-Covering the Vessel-

STAR OF AMERICA, Official Number 973452

Interest in the Vessel Owned by Owner: 100%
Interest in the Vessel Mortgaged: 100%

Maximum Amount Secured: $3,065,000.00
(excluding Interest, expenses and fees)

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED / FILED

1 8 MAY '01    -3 : 0 3 PM

RECEIVED
DOCUMENTATION OFFICER

0110SMTG-COV

# PREFERRED SHIP MORTGAGE

THIS PREFERRED SHIP MORTGAGE is executed on May _12_, 2001 by MAJESTIC STAR, INC. ("Owner"), whose address is One World Trade Center, Suite 8901, New York, New York, 10048 in favor of Associates Commercial Corporation ("Mortgagee"), whose address is 300 East Carpenter Freeway, 17th Floor, Irving, Texas, 75062.

Owner is the sole owner of the whole of the following Vessel, a documented vessel of the United States, whose records are maintained at the National Vessel Documentation Center, Falling Waters, West Virginia.

| VESSEL | RIG | OFFICIAL NO. | GROSS TONS | NET TONS |
|--------|-----|--------------|------------|----------|
| STAR OF AMERICA | Passenger | 973452 | 67 | 57 |

(hereinafter the "Vessel").

Owner is justly indebted to Mortgagee under that certain Loan Agreement dated of even date herewith (the "Loan Agreement"), and under those promissory notes, continuing guaranties and other instruments issued pursuant thereto, and Owner is or may become indebted to Mortgagee under or pursuant to one or more additional loan agreements, promissory notes, letters of credit, guarantees or other agreements, loans, extensions of credit or financial accommodations between Owner and Mortgagee, whether direct or indirect, absolute or contingent, presently existing or hereafter arising, and whether or not pursuant to commitment, as well as under any extensions or renewals of, amendments to and replacements for, any of the foregoing.

Owner has agreed to provide security for any and all present or future obligations of Owner to Mortgagee under the terms of this Instrument.

NOW THEREFORE, in consideration of the premises and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in order to secure the prompt and punctual payment, performance and satisfaction of any and all obligations, liabilities, or indebtedness of the Owner to Mortgagee, whether now existing or hereafter arising, due or to become due, up to the maximum principal amount of $3,065,000.00 outstanding at any time, from time to time, including without limitation and individually, collectively and interchangeably, any and all present and future advances, loans, financial accommodations and extensions of credit obtained or to be obtained by Owner from Mortgagee from time to time, one or more times, and the obligations of Owner under any and all loan agreements, promissory notes, letter-of-credit arrangement, endorsements, continuing guaranties, and other agreements, loans or extensions of credit (including, but not limited to, the indebtedness and obligations of Owner to Mortgagee under the Loan Agreement, under all promissory notes and other instruments of Owner or its affiliates issued pursuant thereto, and under all guaranties of the indebtedness and other obligations of affiliates of Owner contemplated thereby, including the indebtedness and other obligations of Majestic Voyages Inc.; together with any and all amendments thereto, and/or renewals, extensions and refinancings of any of the foregoing) as well as any and all other obligations that Owner may now or in the future owe to or incur in favor of Mortgagee, whether by way of assignment, purchase of a participation interest or otherwise, and whether absolute or contingent, liquidated or unliquidated, owed individually, jointly, severally or jointly and severally with others, as a principal obligor or as a surety, of every nature and description, in principal, interest, premiums and other fees and charges, together with all attorneys' fees, premiums of insurance, taxes, assessments, expenses and costs, and in order to secure the payment and satisfaction of any sums payable under, as well as the observance and performance of all of the obligations, covenants, agreements and stipulations contained in this Mortgage (all of the foregoing, hereafter, collectively, the "Secured Obligations"). Owner mortgages to Mortgagee, its successors and assigns, on the terms set out below, the whole of the Vessel described above, together with all engines, boilers, machinery, masts, boats, anchors, cables, chains, rigging, tackle, apparel, furniture, capstans, outfit, tools, pumps, gear, furnishings, appliances, fittings and spare and replacement parts, all other appurtenances thereto appertaining or belonging, and all inventory and equipment related thereto, whether now owned or hereafter acquired by Owner, whether on board or not on board, and also any and all additions, improvements and replacements hereinafter made by Owner or on Owner's behalf to said Vessel, or any part thereof, and all products and proceeds of all of the foregoing.

91108SHIP-MTG.wpd

PROVIDED ALWAYS, that if Owner shall pay or cause to be paid the indebtedness arising hereunder and under the Secured Obligations, and Owner shall duly perform all the covenants, terms, and conditions of this Mortgage and the Secured Obligations, express or implied, then this Mortgage and the estate and rights hereunder shall cease, determine, and be void, otherwise to remain in full force and effect; subject, however, to the provisions hereinafter contained.

The maximum amount of direct or contingent obligations that is or may become secured by this Mortgage is $3,065,000.00, excluding interest, expenses and fees. For the purpose of securing payment of the Secured Obligations, plus interest, expenses and fees, and performance of Mortgage covenants, Owner has executed and delivered this Mortgage this date in the amount of $3,065,000.00 to be preferred under Chapter 313 of Title 46 of the United States Code. Unless otherwise stated herein, or on a Schedule attached hereto, the discharge amount of this Mortgage is the same as the total amount. The interest of the Owner in the Vessel is 100%, and the interest in the Vessel mortgaged hereby by Owner to Mortgagee is 100%.

## 1.00    TERMS AND CONDITIONS:

1.01    **Recordation.** Owner will cause this Mortgage to be duly recorded at its own expense, and will comply with all of the provisions of applicable laws and regulations of the United States of America, as amended, in order to establish and maintain this Mortgage as a "preferred mortgage" on the Vessel and upon all renewals, replacements and improvements made by or for the benefit of Owner to the Vessel for the amounts secured hereby. The description of the Vessel, including the data required by law to entitle this Mortgage to preferred status under Chapter 313 of Title 46 of the United States Code, is true and accurate. Owner will execute and record from time to time, at its own expense, such additional instruments as may be necessary or appropriate so that this Mortgage will remain a valid lien on the Vessel, all improvements thereto, and substitute parts incorporated therein, by or for the benefit of the Owner.

1.02    **Restrictions on Sale, etc.** Owner will not sell, mortgage, demise or bareboat charter (other than any charter, to corporate affiliates of Owner) or otherwise transfer the Vessel, nor shall the Owner operate the Vessel other than in New York Harbor and its connecting waters, including the Hudson River, the East River, the Harlem River, the Upper Bay and western Long Island Sound, without the prior written consent of Mortgagee. Any consent by Mortgagee to any one sale, mortgage, demise or bareboat charter, transfer or operation of the Vessel outside the above navigation limits shall not be construed to be a waiver of this provision with respect to any subsequent proposed sale, mortgage, demise or bareboat charter, transfer, or operation. Owner may from time to time enter into time charters of the Vessel in the ordinary course of business without the prior consent of Mortgagee (provided that the term of any such charter, including options, does not exceed one month). Time charters specifying a longer term may not be entered into without Mortgagee's prior written consent. All charters (whether bareboat, time or otherwise) permitted under this paragraph, with a term, including options, in excess of one (1) month, shall contain a clause placing the charterer on notice of this Mortgage and setting forth the agreement of charterer that any claim and any rights in and to the Vessel that the charterer may have against the Owner or the Vessel arising under or as a result of such charter shall be subordinate to the lien of this Mortgage.

1.03    **No Other Liens.** Neither Owner, any charterer, any operator, the master of the Vessel, nor any other person has any right, power or authority to create, incur or permit to be placed upon the Vessel or other property subject to this Mortgage any lien, security interest or claim whatsoever, other than (a) this Mortgage or other liens in favor of Mortgagee, (b) liens for salvage, (c) inchoate liens for current crew's wages, (d) liens covered by valid policies of insurance held by or otherwise in favor of Owner and Mortgagee and meeting or exceeding the minimum limits specified in Paragraph 2.04 below, (e) inchoate liens not covered by insurance, incurred in the ordinary course of business and not more than thirty (30) days past due, and (f) such other liens as may be permitted by any loan or other agreements between Owner and Mortgagee. Any liens or charters to which the Vessel is currently subject (other than liens in favor of Mortgagee) are disclosed as follows (if blank then none):

1.04    **Notice of Mortgage.** Owner will cause to be placed and kept prominently displayed in a conspicuous place on the Vessel a notice as follows:

### NOTICE OF MORTGAGE

This Vessel is covered by a Preferred Ship Mortgage to Associates Commercial Corporation under authority of Chapter 313 of Title 46 of the United States Code, as

G1\06\SHIP-MTG.wpd                                                              -2-

amended, to secure payment to the Mortgagee of certain indebtedness. A certified copy of the Mortgage is on board the Vessel and is on file at the office of the Owner, where it may be examined, upon demand, by any person having business with the Vessel. Under the terms of this Mortgage, neither the Owner, any operator, any charterer, any subcharterer, nor the master of this Vessel has the right, power or authority to create, incur or permit to exist on this Vessel any lien or encumbrance whatsoever except liens for current crew's wages and salvage, and the lien of said Mortgage.

Owner will promptly cause a counterpart of this Mortgage, certified by the United States Coast Guard, to be kept on board the Vessel, if required by Chapter 313 of Title 46 of the United States Code, and in the office of Owner, available for inspection, and will exhibit the same and the ship's papers upon demand to any person having business with the Vessel. Owner will take such other appropriate steps from time to time as will give notice to the world that Owner's right, title and interest in and to the Vessel is subject to this Mortgage, and that, except for this Mortgage, Owner has no right, power or authority to suffer or permit any liens or claims against the Vessel.

1.05    Additional Security. As additional security for the prompt and full payment and performance of all indebtedness and other undertakings and obligations of Owner hereunder and under the Secured Obligations, Owner hereby assigns to Mortgagee and grants to Mortgagee a continuing general security interest in all of Owner's right, title and interest in and to any and all present and future: (a) charter agreements entered into by Owner covering the charter of the Vessel together with the benefits, rights and remedies thereunder, including without limitation all charter hire payments, rates and other monies now or hereafter due or to become due pursuant to said charter agreements; and (b) any and all accounts, accounts receivable, equipment, machinery, fixtures, inventory, chattel paper, documents, letters of credit and letter of credit rights, instruments, general intangibles (including payment intangibles), and any supporting documents, including guaranties, whether now owned or hereafter acquired, arising out of the use or operation of, or otherwise related to, the Vessel; as well as (c) all products and proceeds of any of the foregoing (the "Additional Collateral").

Owner agrees and covenants that, notwithstanding this assignment, Mortgagee shall have none of Owner's obligations under any assigned charter. All of Owner's right, title and interest assigned with respect to any charter may be reassigned by Mortgagee and any subsequent designee of Mortgagee, but only in conjunction with an assignment of this Mortgage and the Secured Obligations. It is expressly agreed that, anything herein contained to the contrary notwithstanding, Owner's obligation under any charter may be performed by Mortgagee or any subsequent assignee of Mortgagee without releasing Owner therefrom, and Mortgagee shall not, by reason of this assignment, be obligated to perform any of Owner's obligations under any charter or to file any claim or take any other action to collect or enforce any payment assigned hereunder. Owner further agrees and covenants that none of said charters shall be amended, revised or altered in such a manner so as to materially affect the rights of Mortgagee.

If an event of default under the Secured Obligations or this Mortgage, or other event which with the giving of notice or lapse of time, or both would become such an event of default, shall have occurred and be continuing, then no charter, accounts, accounts receivable, chattel paper or instruments shall be rescinded, canceled or otherwise discharged without first notifying Mortgagee. Owner represents and warrants that said charters, and all accounts, accounts receivable, chattel paper, documents, instruments and general intangibles pertaining to the Vessel, are or will be valid and subsisting between the parties thereto, that the Vessel shall have been, or shall be, delivered to and accepted by the charterer named in each charter, that Owner has not and shall not otherwise transfer, assign or pledge said charters or other Additional Collateral or any interest therein or thereunder, and that Owner has no knowledge of any facts which might impair or affect the validity of said charters or other Additional Collateral. In order to protect Mortgagee's security interest in any charter or other Additional Collateral granted by this assignment, Owner shall stamp or otherwise write in clear print on the front page of such charter, or the document or instrument evidencing such Additional Collateral, notice that such Additional Collateral is subject to a security interest held by Mortgagee (provided however that this requirement shall not be applicable to Owner's invoices). Owner shall take such action as Mortgagee may from time to time reasonably request to initiate or maintain or protect the security interest in any charter granted or to be granted pursuant to this paragraph, including, but not limited to, the filing of financing statements or other appropriate notices of this assignment in the public records, and providing notice of this assignment to the charterers of the Vessel or account debtors.

**2.00    WARRANTIES; AGREEMENTS:** Owner represents, warrants and agrees that:

**2.01    Organization; Citizenship.** Owner was duly organized and is now a corporation. Owner is now, and during the life of this Mortgage shall remain, a citizen of the United States as defined in Section 2 of the Shipping Act of 1916, as amended. Owner will not permit the sale or transfer of any of its capital stock to any person or persons if such sale would impair the Owner's status as a citizen of the United States, eligible to operate vessels in the coastwise trade. Owner is duly authorized to mortgage the property conveyed hereby, and has taken all action necessary and required by law for the execution and delivery of this Mortgage, and the instruments evidencing the Secured Obligations. The Secured Obligations and this Mortgage are and will be the valid and enforceable undertakings of Owner in accordance with their terms.

**2.02    Ownership; Defense of Claims.** Owner owns and possesses the Vessel free from any Lien or other encumbrance whatsoever, except as set forth above, whether such Liens are well founded or unfounded, choate or inchoate. Owner will warrant and defend title of the Vessel and possession thereof for the benefit of Mortgagee against the claims and demands of all persons whatsoever.

**2.03    Vessel Documentation; Registry or Flag.** The Vessel is and shall remain documented under the laws of the United States. Owner will promptly and properly renew the Vessel's documentation with the United States Coast Guard as required and will not allow the Vessel to be used for any purpose other than that for which she is documented with the United States Coast Guard. Owner will not change the registry or flag of the Vessel without the prior written consent of Mortgagee. Any written consent of Mortgagee to any one change of registry or flag shall not be construed to be a waiver of this provision with respect to any subsequent change of registry or flag.

**2.04    Insurance on Vessel.** Owner will cause to be carried and maintained on the Vessel at no cost to Mortgagee at all times during the existence of this Mortgage, (1) full form hull and machinery insurance providing the broadest commercial coverage available, and including a liner negligence provision, with a stipulated agreed value in an amount not less than the fair market value of the Vessel (but in no event and at no time shall the aggregate hull insurance on the Vessel be in an amount less than the outstanding balance of the Secured Obligations), (2) protection and indemnity insurance, on form SP-23 or equivalent, including, without limitation, coverage for the passengers and crew of the Vessel, collision, contractual liability and wreck removal, (3) pollution liability and clean-up insurance, with limits per occurrence of no less than the limits of liability under the Oil Pollution Act of 1990, 33 U.S.C. §2701, et seq. and the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §9601, et seq., as each is amended from time to time, (4) excess risks, including excess protection and indemnity, excess collision, and excess pollution insurance, in one or more layers, with aggregate limits of not less than $10,000,000.00, and (5) such additional insurance or limits as may be required by Mortgagee. Owner will provide Mortgagee with an original certificate or cover note which evidences the coverage as required herein. Policy deductibles, if any, shall not exceed that which is customary for companies similarly situated and acceptable to Mortgagee. All insurance shall be placed and kept with insurers reasonably satisfactory to the Mortgagee and any evidence of insurance submitted to Mortgagee in a form acceptable to Mortgagee shall be signed by the insurance company or by an agent authorized by the company to bind coverage. Owner may carry additional insurance or limits as desired, provided however that, with respect to any physical loss or damage or liability coverages pertaining to the Vessel, Owner shall cause Mortgagee to be named as an additional insured and a loss payee consistent with the requirements of this section so that Mortgagee may also receive the benefits of such additional insurance or limits as its interest may appear.

Should the Vessel be navigated outside its customary navigation limits, Owner shall, prior to any such navigation, procure an endorsement to the policies obtained hereunder authorizing such navigation, and procure increased value, war risk and related coverages as may be required by Mortgagee.

While laid up, the Vessel may, in lieu of the insurance specified herein, be insured by Owner or by any charterer thereof to the same amount under customary port risk policies satisfactory to Mortgagee.

All insurance shall name Mortgagee as a co-assured, as its interest may appear, and shall be payable as hereinafter provided. Such policies shall provide that Mortgagee will receive at least thirty (30) days written notice from the insurance company prior to cancellation or any material alteration in the insurance policy or reduction in coverage which could materially affect the interest of Mortgagee.

Owner shall provide a separate Mortgagee's single interest or breach of warranty coverage in an amount at all times equal to or greater than the Owner's indebtedness to Mortgagee under the Secured Obligations, such that no act or omission of Owner, or any charterer, or breach of any warranty, including breach of any warranty of seaworthiness, whether express or implied, shall operate to forfeit Mortgagee's coverage under the above policies or result in a cancellation of insurance as to Mortgagee. No policy required under this Section 2.04 shall contain any warranty, including any warranty of seaworthiness, the breach of which is not covered by this single interest or breach of warranty coverage.

If any insurance referred to herein is not obtained by Owner, Owner will give Mortgagee written notice of such fact, and will endeavor to obtain such insurance. Owner will detain the Vessel in port until such insurance has been obtained. On an annual basis during the existence of this Mortgage, Owner will provide Mortgagee with a letter from a reputable insurance broker identifying and describing the insurance policies then in effect with respect to the Vessel, and affirming that such policies and coverages, and the limits applicable thereto, are standard in the industry in which the Vessel is engaged. Any failure by Owner to keep the Vessel fully insured as required herein shall constitute an Event of Default hereunder.

In the event of a partial loss of the Vessel, Mortgagee consents that the underwriters may pay directly for repairs, salvage or other charges, or may reimburse Owner therefor, provided that Owner is not in default hereunder. If Owner is in default hereunder, Mortgagee shall be entitled to receive such insurance money directly from the underwriters. In the event of actual or constructive total loss, or as agreed, arranged or compromised total loss, of the Vessel, all policy proceeds shall be paid directly to Mortgagee and shall be applied to the payment to Mortgagee of all sums secured hereby, whether then due or not. Any remaining surplus shall be paid to Owner or to whomever shall be entitled thereto. All policies shall name Mortgagee as loss payee as its interests may appear and shall be paid as provided in this Paragraph.

Owner will keep or cause the aforesaid insurance to be kept valid, and renew, or cause the renewal of same, when necessary, providing Mortgagee with appropriate renewal binders and policy copies once prepared. Owner will cause the premiums and costs thereof to be paid when due and will furnish Mortgagee with evidence satisfactory to Mortgagee that said payments have been made. If Owner shall at any time fail to comply with the foregoing, Mortgagee may, without obligation, procure such insurance and pay any unpaid premiums, or may procure other insurance necessary to protect Mortgagee's interest in the Vessel. The costs and expenses thereof, with interest at the Default Rate (as such term is defined in the Loan Agreement), from the date of such expenditure until paid, shall be an additional indebtedness and obligation due from Owner to Mortgagee secured by this Mortgage and payable on demand.

Owner will not do any act, nor voluntarily suffer or permit any act to be done, whereby any insurance is or may be suspended, impaired, or defeated. Owner will not suffer or permit the Vessel to engage in any voyages, nor to carry any cargos not permitted under the policies of insurance in effect, without first adding or canceling the addition of specific insurance on the Vessel, to the amount herein required, and satisfactory to the Mortgagee, which permits and covers such voyages or the carriage of such cargos.

2.05    Compliance with Legal Restrictions. Owner covenants not knowingly to cause or permit the Vessel to be operated in any manner contrary to the laws of the United States or of any state or country wherein the same is operated.

2.06    Notice of Seizure. If the Vessel shall be libeled, attached, seized or otherwise detained under any legal authority, Owner shall immediately proceed to obtain the release or discharge of the Vessel as provided below, and, if Owner has not secured the release or discharge of the Vessel within forty-eight (48) hours, Owner shall immediately notify Mortgagee of the seizure by telephone or facsimile confirmed in writing and delivered to Mortgagee by overnight courier.

2.07    Maintenance of Vessel. Owner will exercise due diligence to put the Vessel in good running condition, order and repair, well and sufficiently tackled, appareled, furnished and equipped and make her seaworthy, and, at all times, at its own expense and risk, so maintain and preserve the Vessel, ordinary wear and tear excepted. Owner shall keep the Vessel in such condition that she complies with all applicable United States' laws, treaties, conventions, rules, regulations and ABS Certifications and keep on board the Vessel, when required thereby, valid certificates showing compliance therewith. Owner will not make, or permit to be made, any change in the structure, type, or speed of the Vessel, or any change in her rig, without receiving Mortgagee's prior written approval.

2.08    Inspection of Vessel and Documents. Owner will, at all reasonable times, afford Mortgagee and its representatives, successors or assigns, complete access to the Vessel for the purpose of inspecting the same, and at Mortgagee's request, will

deliver for inspection copies of any and all contracts and documents relating to the Vessel, whether on board or not. Owner will furnish to Mortgagee, on demand, all charter parties with respect to the Vessel, and full details as to the parties, times' of carriage, and the like pertaining thereto.

2.09    Payment of Taxes, etc. Owner will pay and discharge, from time to time, or cause to be paid and discharged, all claims, taxes, assessments, governmental charges, fines and penalties lawfully imposed upon, or which may become a lien or charge upon the Vessel. Nothing herein shall require the payment of any such claim, tax assessment, charge, fine or penalty for which adequate reserves have been established so long as the same may be diligently contested in good faith and by appropriate legal proceedings and so long as such non-payment shall not result in the seizure, attachment or loss of the Vessel. Owner shall take, or cause to be taken, whatever steps may be required to release or discharge the Vessel from any arrest or seizure which may interfere with her regular use.

2.10    Financial Statements and Reports. Owner shall comply with the financial reporting requirements set forth in Article 5 of the Loan Agreement. Owner warrants that all information and representations furnished by Owner to Mortgagee concerning the Vessel or the financial condition of Owner and any guarantor shall be accurate and correct. Owner shall give Mortgagee immediate notice and copies of all tax notices, reports or inquiries, claims of liens, and of any damage, loss, seizure, attachment or judicial process which may affect the use, maintenance, operation, possession or ownership of the Vessel.

2.11    Hazardous Substances and Pollutants. Owner warrants that it will not use, generate, transport, store or dispose of, on, in, or about the Vessel, or utilize the Vessel in connection with, or so as to cause, either directly or indirectly, the release or discharge of any Hazardous Substance or Pollutant in violation of any applicable Environmental Laws. Owner hereby agrees to indemnify and hold Mortgagee harmless from any and all liability arising from the breach of this warranty, and to notify Mortgagee immediately upon any release or threatened release of any Hazardous Substance or Pollutant in, on, under or about the Vessel, and upon the initiation of any proceeding or inquiry with respect to such a release or threatened release by any governmental agency or other authority.

2.12    Compliance by Charterer. If any of the above-described duties, covenants, promises, conditions, agreements or terms shall have been delegated by Owner to any charterer in connection with any charter permitted hereunder, Owner will also cause charterer to comply fully therewith.

3.00    EVENTS OF DEFAULT. The following are Events of Default hereunder:

3.01    Failure to pay any installment of principal or interest scheduled under the Secured Obligations, or the principal or interest scheduled under any other indebtedness of Owner to Mortgagee, within ten (10) days of the date such payment is due.

3.02    A default by Owner under any commitment letter, loan agreement (including the Loan Agreement referenced above) or credit agreement governing any Secured Obligations or pursuant to which any Secured Obligation was issued.

3.03    Should Owner fail to maintain in full force and effect all insurance required in Section 2.04 of this Mortgage.

3.04    Default in the performance or observance by Owner of any Guarantor of any Secured Obligations, including, without limitation, any covenant, warranty, promise, condition, agreement or term contained herein, in any commitment letter, or in any loan agreement (including the Loan Agreement referenced above), credit agreement, note, mortgage, assignment, security agreement, guaranty or other agreement, or amendment or supplement thereof, evidencing or securing the Secured Obligations, or other indebtedness, of Owner to Mortgagee, or default by any guarantor under any guaranty or other agreement securing the payment of any indebtedness or the performance of any undertakings of Owner under the Secured Obligations, should such default remain unicured after ten (10) days from the occurrence thereof or after the expiration of any period of grace contained in such agreement, whichever is greater.

3.05    Any representation, warranty, statement, certificate, schedule or report made herein or furnished hereunder, or in any loan agreement (including the Loan Agreement referenced above), credit agreement, note, mortgage, assignment, security agreement, guaranty, or other agreement executed or endorsed by Owner or any Guarantor in favor of Mortgagee, shall prove to have been false or misleading in any material respect when made or deemed to have been made.

3.06    Any evidence of Debt to third persons for which Owner or any Guarantor is liable as principal, guarantor or otherwise shall become due by acceleration or otherwise and shall not promptly be paid or timely contested in appropriate proceedings.

3.07    Any proceeds from the sale, loss, requisition, seizure or forfeiture of, or from any insurance carried on or in respect of, the Vessel which is otherwise payable to Mortgagee shall not have been received by Mortgagee for distribution in accordance with the provisions hereof within ten (10) days after the same are received by Owner.

3.08    Owner shall (i) apply for or consent to the appointment of or the taking of possession by a receiver, custodian, trustee or liquidator of itself or of all or a substantial part of its property, (ii) admit in writing its inability to pay, or generally not be paying, its debts as they become due, (iii) make a general assignment for the benefit of creditors, (iv) commence a voluntary action under the Federal Bankruptcy Code (as now or hereafter in effect), (v) file a petition seeking to take advantage of any other law relating to bankruptcy, insolvency, reorganization, winding-up or composition or adjustment of debts, (vi) fail to controvert in a timely or appropriate manner or acquiesce in writing to any petition filed against the Owner in an involuntary action under such Bankruptcy Code or (vii) take any action for the purpose of effecting any of the foregoing.

3.09    A proceeding or case shall be commenced without the consent of the Owner in any court of competent jurisdiction seeking (i) the liquidation, reorganization, dissolution, wind-up or composition or readjustment of debts of Owner, (ii) the appointment of a receiver, trustee, custodian, liquidator or the like for Owner or of all or a substantial part of its assets or (iii) similar relief under any law relating to bankruptcy, insolvency, reorganization, winding-up or composition or adjustment of debts; and such proceeding or case continues undismissed, or an order, judgment or decree approving or ordering any of the foregoing is entered and continues unstayed for a period of thirty (30) days, or any order for relief against the Owner is entered in any involuntary case under the Bankruptcy Code.

3.10    Any Guarantor of any amounts due hereunder or otherwise under the Secured Obligations shall take any action as outlined in Paragraph (3.08) above or shall have instituted against Guarantor any action as outlined in Paragraph (3.09) above.

4.00    RIGHTS AND REMEDIES ON DEFAULT:  If any such Event of Default occurs and is continuing, Mortgagee may, at its option, do any one or more of the following:

4.01    Declare the Secured Obligations, all indebtedness arising under the Secured Obligations, and all other indebtedness of Owner to Mortgagee, in principal and interest, forthwith due and payable.

4.02    Enforce Mortgagee's rights by an action at law, suit in equity or other appropriate proceeding, whether for the specific performance of, or for an injunction against a violation of the Secured Obligations, including any term hereof, or of any loan agreement (including the Loan Agreement referenced above), credit agreement, note, mortgage, assignment, security agreement, guaranty or other instrument or agreement executed or endorsed by Owner or any Guarantor in favor of Mortgagee, or in the aid of the exercise of any power granted by this Mortgage, any said loan agreement, note, mortgage, assignment, security agreement, instrument or agreement, or by law.

4.03    Exercise all of the rights and remedies of foreclosure, and otherwise, given to Mortgagees by laws of the United States of America or other jurisdiction, including, but not limited to, all rights and remedies granted to Mortgagees under Chapter 313 of Title 46, United States Code, and under the Uniform Commercial Code as in force in any jurisdiction in which the Vessel or any Additional Collateral may be found.

4.04    Take and enter into possession of the Vessel and the Additional Collateral at any time, whenever the same may be, without legal process and without being responsible for loss or damage. Owner or any other person in possession of the Vessel or Additional Collateral shall forthwith, upon demand of Mortgagee, assemble and surrender possession of the Vessel and Additional Collateral to Mortgagee. Mortgagee may, without being responsible for loss or damage, hold, lay-up, lease, charter, operate or otherwise use the Vessel for such time and upon such terms as it may deem to be for its best advantage; make any necessary repairs on the Vessel or Additional Collateral; and demand, collect and retain all hire, freights, earnings, issues, revenues, income, profits, return of premiums, salvage awards or recoveries, recoveries in general average, and all other sums due or to become due in respect of the Vessel or Additional Collateral or in respect of any insurance thereon from any person whomsoever.

4.05    Take and enter into possession of the Vessel and the Additional Collateral, at any time, wherever the same may be, without legal process, and if it seems desirable to Mortgagee and without being responsible for loss or damage, sell the Vessel and the Additional Collateral, at any place and at such time as Mortgagee may specify; and in such manner as Mortgagee may deem advisable, free from any claim by Owner in admiralty, in equity, at law or by statute, after first giving Owner notice thereof ten (10) days in advance of the time and place of sale.

4.06    Exercise all rights, privileges and remedies in foreclosure or otherwise given Mortgagee by this Mortgage, or by any other instrument evidencing or securing the Secured Obligations, or by applicable law.

4.07    Collect, receive, compromise and sue for, in the name of Mortgagee or Owner all earned freights, charter hire, accounts, issues, revenues, income, profits or other earnings arising out of, or in any way connected with, the use or operation of the Vessel.

## 5.00    OTHER AGREEMENTS ON DEFAULT OR OTHERWISE:

5.01    Sale of Vessel or Additional Collateral.  Any sale of the Vessel or Additional Collateral made pursuant to this Mortgage, whether under the power of sale hereby granted or any judicial proceedings, shall operate to divest all right, title and interest of any nature whatsoever of Owner therein and thereto, and shall bar Owner, its successors and assigns, and all persons claiming by, through, or under them.  No purchaser shall be bound to inquire whether notice has been given, or whether any default has occurred, or as to the propriety of the sale, or as to the application of the proceeds thereof.

5.02    Attorney-in-Fact.  In the event that Owner shall default in the payment of the principal, premium, if any, or interest on any indebtedness forming a part of or arising under the Secured Obligations, or upon the occurrence of any other Event of Default hereunder, or under any loan agreement (including the Loan Agreement referenced above), credit agreement, note, mortgage, guaranty or security agreement evidencing or securing the Secured Obligations, or under any other undertaking of Owner to Mortgagee, Owner irrevocably appoints Mortgagee the attorney-in-fact of Owner: (1) to execute, deliver and to make, in the name of and on behalf of Owner, a good conveyance of title to the Vessel and the Additional Collateral to any purchaser (Owner will, if and when required by Mortgagee, execute such form of conveyance of title to the Vessel or Additional Collateral as Mortgagee may direct; Owner agrees that this requirement is subject to a suit for specific performance hereof); (2) to demand, collect, receive, compromise and sue for, in the name of Owner, all freight, hire, earnings, issues, revenues, accounts, accounts receivable, chattel paper, income and profits of the Vessel, and all amounts due from underwriters under any insurance thereon as payment of losses, or as return premiums, or otherwise, salvage awards and recoveries, recoveries in general average or otherwise, and all other sums thereafter due or to become due in respect of the Vessel, or in respect of any insurance thereon, from any person whomsoever to the extent of Owner's interest therein, which said interest is hereby assigned to Mortgagee; (3) to make, give and execute in the name of the Owner acquittances, receipts, releases or other discharges for the same, whether under seal or otherwise; (4) to endorse and accept, in the name of Owner, all checks, notes, drafts, warrants, agreements and other instruments in writing with respect to the foregoing. Owner authorizes the Mortgagee to take any such action or exercise any power enumerated in this Paragraph, or otherwise provided for in this Mortgage or under applicable law.

5.03    Arrest of Vessel.  In the event that the Vessel shall be arrested or detained by a marshal or other officer of any court of law, equity or admiralty jurisdiction, or by any government or other authority, and shall not be released from arrest or detention within fifteen (15) days from the date of Owner's receipt of notice of any such arrest or detention, or within such lesser time as may be necessary under applicable law to avoid prejudice to Mortgagee's rights hereunder, Owner irrevocably appoints Mortgagee the attorney-in-fact of Owner and authorizes and empowers Mortgagee, or any appointee or appointees of Mortgagee, in the name of Mortgagee or Owner, its successor or assigns, to apply for and receive or take possession of the Vessel with all the rights of Owner, its successor or assigns, might have, possess or exercise in any such event. Owner authorizes and empowers Mortgagee, its appointees, or any of them, to appear in the name of Owner, its successors and assigns, in any court or other forum where a suit is pending against the Vessel because of, or on account of, any alleged lien against the Vessel from which the Vessel has not been released, and to take such proceedings as to them may seem proper towards the defense of such suit and the purchase or discharge of such lien. All expenditures incurred for the purpose of such defense, purchase or discharge, with interest per annum at the Default Rate, from the date of any such expenditure until paid, shall be an additional indebtedness and obligation which shall be secured by this Mortgage, payable on demand.

5.04    Relationship of Owner and Mortgagee. In case Mortgagee shall have proceeded to enforce any right, power or remedy under this Mortgage by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Mortgagee, then and in every such case Owner and Mortgagee shall be restored to their former positions and rights hereunder with respect to the property subject or intended to be subject to this Mortgage, and all rights, powers and remedies of Mortgagee shall continue as if no such proceedings had been taken.

5.05    Cost of Collection; Attorneys' Fees. In addition to any other amounts recoverable under the Secured Obligations or this Mortgage, Owner hereby agrees to pay to Mortgagee on demand: (i) all costs and expenses incurred by Mortgagee in connection with the preparation, negotiation, and execution of this Mortgage, and any other Loan Documents or agreements between Owner and Mortgagee, and any and all amendments, modifications, renewals, extensions, and supplements thereof and thereto, including, without limitation, the fees and expenses of Mortgagee's legal counsel; (ii) all of Mortgagee's costs and expenses incurred by reason of Owner's breach or default under the Secured Obligations, including, without limitation, costs and expenses incurred in collecting any indebtedness arising under the Secured Obligations, costs and expenses of repossession, storing, holding, transporting, insuring, servicing, repairing, maintaining, chartering and selling the Vessel and the Additional Collateral, and collecting charter hire, rents or other proceeds of the disposition thereof, and the reasonable fees and expenses of attorneys and other professionals employed by Mortgagee in connection with the protection and enforcement of its interest in the Vessel and the Additional Collateral and its rights under the instruments evidencing the Secured Obligations and this Mortgage; and (iii) all other costs and expenses incurred by Mortgagee in connection with this Mortgage, or any other Loan Document or agreement between Owner and Mortgagee, including, without limitation, all costs, expenses, taxes, assessments, filing fees, and other charges levied by any governmental authority or otherwise payable in respect of this Mortgage or such other loan document or agreement, or in obtaining any mortgage title insurance policy, survey, audit, or appraisal in respect of the Vessel, all of which shall be an additional indebtedness and obligation secured hereby.

5.06    Appointment of Receiver or Substitute Custodian. At Mortgagee's option, in any suit to foreclose the lien of this Mortgage, Mortgagee shall be entitled as a matter of right, and not as a matter of discretion, to the appointment of a receiver or substitute custodian of the Vessel. Any receiver so appointed shall have full rights and powers to use and operate the Vessel, and to a decree ordering and directing the sale and disposal thereof. In any such suit, Owner will enter a voluntary appearance. Mortgagee may bid and become a purchaser at such sale, and, in such event, shall be entitled to credit on the purchase price any and all sums due to Mortgagee hereunder. Any custodian so appointed shall have full rights and powers to retain possession of the Vessel, and to provide for her maintenance and safe-keeping prior to sale, in lieu of custody by the U.S. Marshal, other governmental authority, or their designees. Owner hereby designates Mortgagee, or any employee, agent, or other person named by Mortgagee at the time seizure of the Vessel is effected, or at the commencement of any suit, to serve as receiver or custodian of the Vessel as the case may be.

5.07    Defense of Claims Against Vessel. In the event Owner fails promptly to defend any claim against the Vessel, Owner authorizes Mortgagee, or its appointees, at its option, to appear in the name of Owner, its successors and assigns, in any court where a suit is pending against the Vessel because of any alleged lien against the Vessel and to take such action as to them may seem proper towards the defense of such suit and the discharge of such lien. All moneys expended by them for the purpose of such defense and/or discharge, with interest per annum at the Default Rate from the date of such expenditure until paid, shall be an additional indebtedness and obligation due from Owner to Mortgagee secured by this Mortgage, payable on demand.

5.08    Performance by Mortgagee. If Owner fails to pay any tax, claim, lien, or encumbrance that it is required to pay or discharge under the terms of this Mortgage, or to pay any insurance premium as aforesaid, or to maintain the Vessel as aforesaid, or commits or permits waste, or fails to perform or observe any term, agreement, provision, covenant, or condition of this Mortgage, Mortgagee may pay such claim, lien, encumbrance, tax, assessment, or premium, with right of subrogation thereunder, may make any repairs and take any steps it deems advisable to prevent or cure such waste, and may appear in any action or proceeding with respect to any of the foregoing and retain counsel therein, and take such action therein as Mortgagee deems advisable. For any of such purposes, Mortgagee may advance any sums of money it deems necessary. Mortgagee will pay to Mortgagee, immediately upon demand, all sums of money advanced by Mortgagee pursuant to this paragraph and until paid, all such sums, together with interest at the Default Rate from the date of such advance, shall be an additional indebtedness and obligation secured hereby. Mortgagee's rights under this paragraph shall be exercisable in Mortgagee's sole discretion. In no event shall this Mortgage be construed to obligate Mortgagee to exercise any right of cure provided

in this paragraph or elsewhere herein, nor shall Mortgagee be liable to Owner or any other person for any failure or refusal of Mortgagee to exercise any such right.

5.09    Powers and Remedies Cumulative. Each power or remedy herein given to Mortgagee, or granted to Mortgagee under the instruments evidencing the Secured Obligations, any guaranty thereof, or any additional mortgage or security agreement securing same, shall be cumulative and in addition to every other power or remedy specifically given in this Mortgage or existing in admiralty, in equity, at law or by statute. Each power or remedy may be exercised as often as deemed expedient by Mortgagee. No delay or omission by Mortgagee in the exercise of any power or remedy shall impair any such power or remedy, or shall be construed to be a waiver of any Event of Default. The acceptance by Mortgagee of any security or of any payment on account of any Secured Obligation shall not be a waiver of any right to take advantage of any further Event of Default or of any past Event of Default not completely cured thereby.

5.10    Application of Proceeds. The gross proceeds of the sale of the Vessel and the collection of the Additional Collateral, the gross earnings of any charter operation or other use of the Vessel by Mortgagee under any of the powers herein specified, and any and all other monies received by Mortgagee pursuant to or under the terms of this Mortgage, or in any proceedings hereunder, the application of which has not elsewhere herein been specifically provided for, shall be held by Mortgagee and shall be applied as follows:

First:  To the payment of all expenses and charges incurred by Mortgagee in the exercise of its rights and remedies hereunder, including the expenses of any sale, the expenses of any retaking or collection, attorneys' fees, court costs, and any other expenses or advances made or incurred by Mortgagee in the protection of its rights or the pursuance of its remedies hereunder, and to provide adequate indemnity to Mortgagee against liens claiming priority over or equality with this Mortgage with interest per annum at the Default Rate, from the date of any such expense or charge incurred;

Second:  To the payment of the Secured Obligations together with interest thereon;

Third:  To the payment of all other sums secured hereby; and

Fourth:  To the payment of any surplus thereafter remaining to Owner, subject to setoff in favor of Mortgagee for any other indebtedness of Owner.

In the event that the proceeds are insufficient to pay the amounts specified in subclauses "First", "Second" and "Third" above, Mortgagee shall be entitled to collect the balance from Owner or any other person liable therefor.

6.00    MISCELLANEOUS:

6.01    Quiet Enjoyment. Until the occurrence of one or more of the Event of Default described above, Owner shall be permitted to retain actual possession and use of the Vessel and the Additional Collateral.

6.02    Consent of Mortgagee. Whenever pursuant to this Mortgage the consent of Mortgagee is required, that consent shall not be unreasonably withheld.

6.03    Mortgage Securing Future Indebtedness. This Mortgage has been executed by Owner in favor of Mortgagee for the purpose of securing all indebtedness of Owner to Mortgagee that may now be existing and that may arise in the future under or pursuant to the Secured Obligations or this Mortgage. This Mortgage shall remain in full force and effect until such time as all of indebtedness arising under the Secured Obligations shall have been paid, in full, in principal, interest, costs, expenses, attorneys' fees and other fees and charges, and all of the Secured Obligations shall have been fully performed.

6.04    Notice. All notices, requests and other communications to any party hereunder shall be given to such party in the manner, and at its address or telecopy number, provided in the Loan Agreement. The effectiveness of any notice shall be governed by the Loan Agreement.

6.05    Capitalized Terms. Capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the Loan Agreement between Owner and Mortgagee.

6.06    Applicable Law. This Mortgage shall be construed in accordance with, and the rights of the parties hereunder governed by, Chapter 313 of Title 46 of the United States Code and the General Maritime Law of the United States, to the extent applicable, and otherwise by the internal laws of the State of Texas.

6.07    Successors and Assigns. All covenants, warranties, promises, conditions, agreements and terms herein shall bind Owner, its successors and assigns, and shall inure to the benefit of Mortgagee, its successors and assigns. In the event of any assignment of this Mortgage, the term "Mortgagee", as used in this Mortgage, shall mean any such assignee.

6.08    Savings Clause. In the event that any provision of this Mortgage is held to be invalid, such event shall not affect, in any respect whatsoever, the validity of the remainder of this Mortgage, and the remainder shall be reasonably construed without the invalid provision so as to carry out the intent of the parties hereto.

IN WITNESS WHEREOF, the undersigned has executed this instrument on this the 17th day of May, 2001.

MAJESTIC STAR, INC.

By: _____
Name:  Spiros E. Kopelakis
Title:  President

## ACKNOWLEDGMENT

STATE OF  NEW YORK

COUNTY OF  NEW YORK

BEFORE ME, the undersigned authority in and for the State and County aforesaid, personally came and appeared: Spiros E. Kopelakis to me known, who, being by me duly sworn, did depose and state that he is President of Majestic Star, Inc., the corporation which is described in and which executed the foregoing Preferred Ship Mortgage; that he signed his name thereto by order of the Board of Directors of such corporation; and he acknowledged the within instrument to be the free act and deed of the said corporation and himself as such officer thereof for the uses and purposes herein expressed.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this  17th  day of May, 2001.

_____
NOTARY PUBLIC

(Seal)

My Commission Expires: _____

CORINTHIA A. BERNARD
Notary Public, State of New York
No. 24-4026550
Qualified in Kings County
Certificate Filed in New York County
Commission Expires April 11, 2002

01108\SINP-MTG.wpd                    -11-

Exhibit I

GUARANTY

Majestic Voyages, Inc. is a corporation organized under the laws of New Jersey ("Guarantor"). Majestic Star, Inc. is a corporation organized under the laws of New Jersey ("Borrower"). debis Financial Services, Inc. ("debis"), is a corporation organized under the laws of the state of Delaware in the United States of America. Relying in part on the provision of this Guaranty by Guarantor, debis has agreed to provide certain financing to Borrower.

1.    Nature of Guaranty and Guaranteed Obligations.    Guarantor hereby unconditionally and irrevocably guarantees the payment and performance of any and all obligations of Borrower to debis of whatever nature, whether currently existing or hereafter created ("Guaranteed Obligations"). This Guaranty is unlimited and continuing.

2.    Payment and Performance.    Payment or other performance by Guarantor is due on this Guaranty immediately on Borrower's failure to pay or perform on any of the Guaranteed Obligations. Payment on this Guaranty is to be made in United States currency at debis's principal place of business at 201 Merritt 7, Suite 700, Norwalk, Connecticut 06856-5425; or such other place of payment as debis may hereafter designate by notice to Guarantor.

3.    Waiver of Defenses and Limitations on Guarantor Liability.    It is Guarantor's intent and purpose that the obligations under this Guaranty be primary, absolute, autonomous, and unconditional under any and all circumstances. Accordingly, Guarantor waives any and all defenses, rights, and benefits that Guarantor or Borrower might assert to avoid or limit liability on the Guaranteed Obligations, other than actual payment of the Guaranteed Obligations, including but not limited to the following:

(a)    Invalidity, irregularity, or unenforceability of any of the Guaranteed Obligations or the instruments, documents, or agreements evidencing them;

(b)    Release or substitution of any collateral for the Guaranteed Obligations and/or the failure of debis to exercise any remedy it may have with respect to any collateral for any of the Guaranteed Obligations;

(c)    Settlement or compromise by debis of any of the Guaranteed Obligations for less than full payment or performance;

(d)    Failure of debis to take action against Borrower or any other party who might be liable on any of the Guaranteed Obligations;

(e)    Impairment of recourse against Borrower;

(f)    "One action" or "antideficiency" laws;

(g)    Any election of remedies by debis;

(h)    Presentment, protest, or notice of dishonor with respect to any and all instruments evidencing any of the Guaranteed Obligations;

(i)    The discharge of any indebtedness of Borrower under the United States Bankruptcy Code or otherwise;

(j)    Any defense based on a statute of limitations; and

(k)    Any claim of setoff, counterclaim, or claim of recoupment.

Guarantor also waives any right to require debis to (a) continue lending money or extend other credit to Borrower; (b) make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Guaranteed Obligations, or notice of any action or nonaction on the part of Borrower or any other parties responsible for

payment of the Guaranteed Obligations; (c) resort for payment or to proceed directly or at once against any person, including Borrower or any other Guarantor; (d) proceed directly against or exhaust any collateral held by debis; (e) give notice of the terms, time, and place of any public or private sale of personal property held by debis as security or to comply with any other applicable provisions of the Uniform Commercial Code; (f) pursue any other remedy within debis's power; or (g) commit any act or be guilty of any omission of any kind, or at any time, with respect to any matter whatsoever.

4.    No Subrogation; Waiver of Claims.    Guarantor releases and waives any rights or claims of subrogation, contribution, or otherwise, legal or equitable, that it may have against Borrower or any of Borrower's property, including any property taken by debis as collateral for any of the Guaranteed Obligations, based on any payment made by Guarantor on the Guaranteed Obligations.    Guarantor hereby waives any and all claims against Borrower, legal or equitable, then existing or thereafter arising, so that Guarantor is no longer a "creditor" of Borrower under federal bankruptcy laws, if and when (a) Borrower becomes insolvent, and (b) the amount of the Guaranteed Obligations exceeds the liquidation value of debis's interest in Borrower's property.

5.    Debt Subordination.    Any indebtedness of Borrower now or hereafter owed to Guarantor is subordinated to the Guaranteed Obligations.    In the event of insolvency and consequent liquidation of Borrower and its assets through bankruptcy, an assignment of creditors, liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of Guarantor are to be paid to debis first until all the Guaranteed Obligations have been satisfied in full.    Guarantor hereby grants debis a security interest in all claims that Guarantor has or may acquire in the future against Borrower or any of its property to secure payment of the Guaranteed Obligations.    If debis so requires, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor must be appropriately endorsed and delivered to debis.    Guarantor agrees, and debis is hereby authorized in the name of Guarantor, to execute and file financing statements and continuation statements and to execute such other documents and take such other actions as debis deems necessary or appropriate to perfect, preserve, and enforce its rights under this Guaranty.

6.    Notices.    All notices required to be given under this Guaranty will be effective upon the earlier of actual delivery or two days after being deposited in the United States mail, first class, postage prepaid, addressed to the address set forth below.    A change in Guarantor's address will be effective ten days after debis receives written notice of the change.    To the extent permitted by applicable law, if there is more than one Guarantor, notice to any Guarantor will constitute notice to all Guarantors. The address and facsimile numbers for notice to debis are:

debis Financial Services, Inc.
Mangrove Bay Office Centre
17757 U.S. Highway 19 North, Suite 475
Clearwater, Florida 33764
Attention: Group Leader
Facsimile: (813) 531-6883

7.    Attorneys' Fees.    Whether or not litigation has commenced, Guarantor promises to pay all of debis's costs and expenses in enforcing or interpreting the terms of this Guaranty.    Costs and expenses include without limitation a reasonable hourly rate for collection personnel, whether employed in-house or on a contract basis, overhead costs as reasonably allocated to the collection effort, and all the expenses actually, reasonably, and necessarily incurred by debis.    Costs and expenses also include costs and expenses, including legal fees, incurred before, during, or after any litigation or arbitration or any appeal therefrom and in any bankruptcy case, proceeding, or matter.

8.    Assignment.    This Guaranty is binding on the heirs, successors, and assigns of Guarantor and will inure to the benefit of debis's successors and assigns.    If any provision of this Guaranty is determined to be illegal or unenforceable, all other provisions will remain effective.    All rights and remedies of this Guaranty are cumulative.

9.    Bankruptcy Proceedings.    If payment on the Guaranteed Obligations is made by or on behalf of Borrower and thereafter debis must remit the amount of that payment to a trustee or similar person under any bankruptcy law or law for the relief of debtors, that portion of the Guaranteed Obligations so remitted will be considered unpaid for purposes of enforcement of this Guaranty.

10.    Effect and Necessity of Writing. This writing constitutes the complete understanding of the parties with respect to the terms of this Guaranty. To be effective, any modification of this Guaranty must be in writing and signed by the party against whom the modification is sought to be enforced.

11.    Governing Law and Jurisdiction. This Guaranty is to be governed by and construed in accordance with the laws of the State of Connecticut without giving effect to its provisions relating to conflicts of law. Guarantor agrees that by executing this Guaranty, it is submitting to the jurisdiction and venue of the federal or state courts of Connecticut, and hereby waives its right to seek a change of venue if any action on this Guaranty is brought in a court in Connecticut.

12.    Miscellaneous. Guarantor confirms that it has received adequate consideration for this Guaranty. If more than one individual or entity constitutes Guarantor, each individual or entity is jointly and severally liable under this Guaranty. Guarantor agrees to furnish debis with any and all financial information, statements and verification of income, as debis may reasonably request from time to time and in a form satisfactory to debis, within seven days from debis's dispatch of its request if transmitted via facsimile or if deposited in the United States mail, first class, postage prepaid to the address set forth below.

Dated this ___30th___ day of October, 1997.

GUARANTOR:  MAJESTIC VOYAGES, INC.

By: _____

Name:   Spiros Kopelakis

Title:    President

Address:       800 Palisade Avenue, No. 22E
               Fort Lee, New Jersey 07024

FEIN:       ..... 223514455

Exhibit J



## CONTINUING GUARANTY

For Valuable Consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, for themselves, their heirs, executors, personal representatives, successors and assigns (individually called "Guarantor" and collectively called "Guarantors"), jointly and severally, hereby unconditionally guarantee to Associates Commercial Corporation, its successors, endorsees and assigns (collectively called "Associates"), that Majestic Voyages Inc. (the "Borrower"), with its principal office address at One World Trade Center, Suite 8901, New York, New York 10048, shall promptly and fully perform, pay and discharge all of its present and future liabilities, obligations and indebtedness to Associates, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or unmatured, and whether originally contracted with or otherwise acquired by Associates (all of which liabilities, obligations and indebtedness is herein individually and collectively called the "Indebtedness"). This Guaranty is an absolute and unconditional guarantee of payment and not of collectibility. The liability of each Guarantor hereunder is not conditional or contingent upon the genuineness, validity, sufficiency or enforceability of the Indebtedness or any instruments, agreements, or chattel paper related thereto (collectively called the "Agreements"), or any security or collateral therefor (collectively called "Security"), or the pursuit by Associates of any rights or remedies which it now has or may hereafter have. If the Borrower fails to pay the Indebtedness promptly as the same becomes due, or if Borrower otherwise fails to perform any obligation under any of the Agreements, each Guarantor agrees to pay on demand the entire Indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by Associates by reason of the Borrower's default or the default of any Guarantor hereunder, and agrees to be bound by and to pay on demand any deficiency established by the sale of any of the Agreements or Security, all without relief from valuation and appraisement laws and without requiring Associates to (i) proceed against the Borrower by suit or otherwise, (ii) foreclose, proceed against, liquidate or exhaust any of the Agreements or Security, or (iii) exercise, pursue or enforce any right or remedy Associates may have against the Borrower, any co-Guarantor (whether hereunder or under a separate instrument) or any other party. Each Guarantor agrees that this Guaranty shall not be discharged or affected by any circumstances which constitute a legal or equitable discharge of a guarantor or surety, or by the death of any Guarantor; the records of Associates shall be received as conclusive evidence of the amount of the Indebtedness at any time owing; one or more successive or concurrent suits may be brought and maintained against any or all of the Guarantors, at the option of Associates, with or without joinder of the Borrower or any of the other Guarantors as parties thereto; such Guarantor will not avail itself of any defense whatsoever which the Borrower may have against Associates, other than full payment of the Indebtedness; such Guarantor will not seek a change of venue from any jurisdiction or court in which any action, proceeding or litigation is commenced; and such Guarantor will not exercise any right of subrogation it may acquire, by any payment hereunder or otherwise, unless and until all Indebtedness has been paid in full, and if any amount is paid to a Guarantor on account of such right of subrogation while any

Indebtedness remains unpaid, such amount will be paid forthwith to Associates to be credited against the Indebtedness, whether matured or unmatured.

EACH GUARANTOR HEREBY WAIVES NOTICE OF ANY ADVERSE CHANGE IN THE CONDITION OF BORROWER OR OF ANY OTHER FACT WHICH MIGHT MATERIALLY INCREASE SUCH GUARANTOR'S RISK, WHETHER OR NOT ASSOCIATES HAS KNOWLEDGE OF THE SAME. EACH GUARANTOR ALSO HEREBY WAIVES ANY CLAIM, RIGHT OR REMEDY WHICH SUCH GUARANTOR MAY NOW HAVE OR HEREAFTER ACQUIRE AGAINST BORROWER THAT ARISES HEREUNDER AND/OR FROM THE PERFORMANCE BY ANY GUARANTOR HEREUNDER INCLUDING, WITHOUT LIMITATION, ANY CLAIM, REMEDY OR RIGHT OF SUBROGATION, REIMBURSEMENT, EXONERATION, CONTRIBUTION, INDEMNIFICATION, OR PARTICIPATION IN ANY CLAIM, RIGHT OR REMEDY OF ASSOCIATES AGAINST THE BORROWER OR ANY SECURITY WHICH ASSOCIATES NOW HAS OR HEREAFTER ACQUIRES, WHETHER OR NOT SUCH CLAIM, RIGHT OR REMEDY ARISES IN EQUITY, UNDER CONTRACT, BY STATUTE, UNDER COMMON LAW OR OTHERWISE.

No termination hereof shall be effective until the Guarantors deliver to Associates a written notice signed by them electing not to guarantee any new extension of credit that may be granted by Associates to the Borrower after its receipt of such notice, but such notice shall not affect the obligations of the Guarantors hereunder as to any and all Indebtedness existing at the time such notice is received. Each Guarantor hereby waives (i) notice of acceptance hereof and notice of any extensions of credit given by Associates to the Borrower from time to time; (ii) presentment, demand, protest, and notice of non-payment or protest as to any note or other evidence of Indebtedness signed, accepted, endorsed or assigned to Associates by the Borrower; (iii) all exemptions and homestead laws; (iv) any other demands and notices required by law; and (v) any right to trial by jury. Associates may at any time and from time to time, without notice to or the consent of any Guarantor, and without affecting or impairing the obligation of any Guarantor hereunder: (a) renew, extend or refinance any part of all of the Indebtedness of the Borrower or any indebtedness of its customers, or any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (b) accept partial payments of the Indebtedness and apply such payments to any part of the Indebtedness; (c) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate, in any manner, any of the Indebtedness, any Security, or any indebtedness of any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (d) consent to the transfer of any Security; (e) bid and purchase at any sale of any of the Agreements or Security; and (f) exercise any and all rights and remedies available to Associates by law or agreement, even if the exercise thereof may affect, modify or eliminate a Guarantor's right of subrogation against the Borrower. Each Guarantor shall continue to be liable under this Guaranty, the provisions hereof shall remain in full force and effect, and Associates shall not be estopped from exercising any rights hereunder, notwithstanding (i) Associates' waiver of or failure to enforce any of the terms, covenants or conditions contained in any of the Agreements; (ii) any reason of, or failure on the part of Associates to perfect any security interest in or

01109\CORPORATE-GUARANTY2.wpd          Page 2 of 3

foreclose, proceed against, or exhaust, any Security; or (iii) Associates' failure to take new, additional or substitute security or collateral for the Indebtedness.

Each Guarantor agrees that Associates may bring any legal proceedings it deems necessary to enforce any or all of such Guarantor's obligations hereunder in any court in the State in which Associates' office administering the Indebtedness is located; and service of process may be made upon such Guarantor by mailing a copy of the summons to such Guarantor at its address last known to Associates. All rights and remedies of Associates are cumulative and not alternative. Each provision of this Guaranty is intended to be severable. Any term or provision hereof declared to be contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining terms and provisions hereof.

IN WITNESS WHEREOF, the Guarantor(s) have executed this Guaranty on the _17_ day of May, 2001.

WITNESSES:                          GUARANTOR:

                                    MAJESTIC STAR, INC.

_Bi P. D_                           By: _Spiros E. Kopelakis_
                                    Name: Spiros E. Kopelakis
                                    Title: President
_Ana N. Z_                          Address: One World Trade Center, Suite 8901
                                             New York, New York 10048
                                    Federal Tax ID or SSN: 22-3543657

Exhibit K



## CONTINUING GUARANTY

For Valuable Consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, for themselves, their heirs, executors, personal representatives, successors and assigns (individually called "Guarantor" and collectively called "Guarantors"), jointly and severally, hereby unconditionally guarantee to Associates Commercial Corporation, its successors, endorsees and assigns (collectively called "Associates"), that Majestic Star, Inc. (the "Borrower"), with its principal office address at One World Trade Center, Suite 8901, New York, New York 10048, shall promptly and fully perform, pay and discharge all of its present and future liabilities, obligations and indebtedness to Associates, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or unmatured, and whether originally contracted with or otherwise acquired by Associates (all of which liabilities, obligations and indebtedness is herein individually and collectively called the "Indebtedness"). This Guaranty is an absolute and unconditional guarantee of payment and not of collectibility. The liability of each Guarantor hereunder is not conditional or contingent upon the genuineness, validity, sufficiency or enforceability of the Indebtedness or any instruments, agreements, or chattel paper related thereto (collectively called the "Agreements"), or any security or collateral therefor (collectively called "Security"), or the pursuit by Associates of any rights or remedies which it now has or may hereafter have. If the Borrower fails to pay the Indebtedness promptly as the same becomes due, or if Borrower otherwise fails to perform any obligation under any of the Agreements, each Guarantor agrees to pay on demand the entire Indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by Associates by reason of the Borrower's default or the default of any Guarantor hereunder, and agrees to be bound by and to pay on demand any deficiency established by the sale of any of the Agreements or Security, all without relief from valuation and appraisement laws and without requiring Associates to (i) proceed against the Borrower by suit or otherwise, (ii) foreclose, proceed against, liquidate or exhaust any of the Agreements or Security, or (iii) exercise, pursue or enforce any right or remedy Associates may have against the Borrower, any co-Guarantor (whether hereunder or under a separate instrument) or any other party. Each Guarantor agrees that: this Guaranty shall not be discharged or affected by any circumstances which constitute a legal or equitable discharge of a guarantor or surety, or by the death of any Guarantor; the records of Associates shall be received as conclusive evidence of the amount of the Indebtedness at any time owing; one or more successive or concurrent suits may be brought and maintained against any or all of the Guarantors, at the option of Associates, with or without joinder of the Borrower or any of the other Guarantors as parties thereto; such Guarantor will not avail itself of any defense whatsoever which the Borrower may have against Associates, other than full payment of the Indebtedness; such Guarantor will not seek a change of venue from any jurisdiction or court in which any action, proceeding or litigation is commenced; and such Guarantor will not exercise any right of subrogation it may acquire, by any payment hereunder or otherwise, unless and until all Indebtedness has been paid in full, and if any amount is paid to a Guarantor on account of such right of subrogation while any Indebtedness remains unpaid, such

amount will be paid forthwith to Associates to be credited against the Indebtedness, whether matured or unmatured.

EACH GUARANTOR HEREBY WAIVES NOTICE OF ANY ADVERSE CHANGE IN THE CONDITION OF BORROWER OR OF ANY OTHER FACT WHICH MIGHT MATERIALLY INCREASE SUCH GUARANTOR'S RISK, WHETHER OR NOT ASSOCIATES HAS KNOWLEDGE OF THE SAME. EACH GUARANTOR ALSO HEREBY WAIVES ANY CLAIM, RIGHT OR REMEDY WHICH SUCH GUARANTOR MAY NOW HAVE OR HEREAFTER ACQUIRE AGAINST BORROWER THAT ARISES HEREUNDER AND/OR FROM THE PERFORMANCE BY ANY GUARANTOR HEREUNDER INCLUDING, WITHOUT LIMITATION, ANY CLAIM, REMEDY OR RIGHT OF SUBROGATION, REIMBURSEMENT, EXONERATION, CONTRIBUTION, INDEMNIFICATION, OR PARTICIPATION IN ANY CLAIM, RIGHT OR REMEDY OF ASSOCIATES AGAINST THE BORROWER OR ANY SECURITY WHICH ASSOCIATES NOW HAS OR HEREAFTER ACQUIRES, WHETHER OR NOT SUCH CLAIM, RIGHT OR REMEDY ARISES IN EQUITY, UNDER CONTRACT, BY STATUTE, UNDER COMMON LAW OR OTHERWISE.

No termination hereof shall be effective until the Guarantors deliver to Associates a written notice signed by them electing not to guarantee any new extension of credit that may be granted by Associates to the Borrower after its receipt of such notice, but such notice shall not affect the obligations of the Guarantors hereunder as to any and all Indebtedness existing at the time such notice is received. Each Guarantor hereby waives (i) notice of acceptance hereof and notice of any extensions of credit given by Associates to the Borrower from time to time; (ii) presentment, demand, protest, and notice of non-payment or protest as to any note or other evidence of Indebtedness signed, accepted, endorsed or assigned to Associates by the Borrower; (iii) all exemptions and homestead laws; (iv) any other demands and notices required by law; and (v) any right to trial by jury. Associates may at any time and from time to time, without notice to or the consent of any Guarantor, and without affecting or impairing the obligation of any Guarantor hereunder: (a) renew, extend or refinance any part of all of the Indebtedness of the Borrower or any indebtedness of its customers, or any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (b) accept partial payments of the Indebtedness and apply such payments to any part of the Indebtedness; (c) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate, in any manner, any of the Indebtedness, any Security, or any indebtedness of any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (d) consent to the transfer of any Security; (e) bid and purchase at any sale of any of the Agreements or Security; and (f) exercise any and all rights and remedies available to Associates by law or agreement, even if the exercise thereof may affect, modify or eliminate a Guarantor's right of subrogation against the Borrower. Each Guarantor shall continue to be liable under this Guaranty, the provisions hereof shall remain in full force and effect, and Associates shall not be estopped from exercising any rights hereunder, notwithstanding (i) Associates' waiver of or failure to enforce any of the terms, covenants or conditions contained in any of the Agreements; (ii) any reason of, or failure on the part of Associates to perfect any security interest in or

foreclose, proceed against, or exhaust, any Security; or (iii) Associates' failure to take new, additional or substitute security or collateral for the Indebtedness.

Each Guarantor agrees that Associates may bring any legal proceedings it deems necessary to enforce any or all of such Guarantor's obligations hereunder in any court in the State in which Associates' office administering the Indebtedness is located; and service of process may be made upon such Guarantor by mailing a copy of the summons to such Guarantor at its address last known to Associates. All rights and remedies of Associates are cumulative and not alternative. Each provision of this Guaranty is intended to be severable. Any term or provision hereof declared to be contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining terms and provisions hereof.

IN WITNESS WHEREOF, the Guarantor(s) have executed this Guaranty on the 17 day of May, 2001.

WITNESSES:                          GUARANTOR:

                                    MAJESTIC VOYAGES INC.

                                    By: _____
                                    Name: Spiros E. Kopelakis
                                    Title: President
                                    Address: One World Trade Center, Suite 8901
                                             New York, New York 10048
                                    Federal Tax ID or SSN: 22-3514453

Exhibit L

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement, dated as of September 22, 2006 ("Agreement"), is made and entered into by and between CITICAPITAL COMMERCIAL CORPORATION, having an address of 3950 Regent Boulevard, Irving, Texas 75602, Attention: Michael D. Finn, First Vice President ("Seller") and NEW STREAM COMMERCIAL FINANCE, LLC, having an address of 38C Grove Street, 2nd Floor, Ridgefield, Connecticut 06877, Attention: James J. McKay, Managing Director ("Buyer").

### RECITALS

WHEREAS, Seller desires to sell, and Buyer desires to purchase and assume, Seller's right, title and interest in and to the Loan Documents (as hereinafter defined), on and subject to the terms and conditions set forth in this Agreement; and

WHEREAS, Annex I hereto identifies the Loan Documents that are being acquired by Buyer;

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter contained, and for other good and valuable consideration, Seller and Buyer agree as follows:

### ARTICLE I
### DEFINITIONS

1.1    Certain Defined Terms.  Capitalized terms used herein shall have the following respective meanings, and all references to Sections or Annexes in the following definitions shall refer to Sections or Annexes of or to this Agreement:

"Business Day" means a day other than a Saturday or Sunday or a day on which commercial banks in New York, New York are authorized or obligated by law or executive order to be closed.

"Closing Date" means the date of this Agreement as set forth in the Preamble.

"Confidentiality Agreement" means any and all confidentiality or similar agreements that were executed by and between Seller and Buyer during the course of completing the transactions contemplated hereby.

"Loan Documents" means the documents set forth on Annex I hereto, together with all of Seller's rights and obligations thereunder.

"Majestic Parties" means, collectively, Majestic Voyages Inc., Majestic Star, Inc., Spiros Kopelakis and Shirley Dreifus.

"Party" means Buyer or Seller, as applicable.

"Person" means and includes any individual, partnership, corporation (including a business trust and a public benefit corporation), joint stock company, estate, association, firm, enterprise, trust, limited liability company, unincorporated association, joint venture and any other entity or governmental authority.

"Purchase Price" has the meaning set forth in Section 2.2(a).

1.2    Rules of Construction.  Unless otherwise specified, references in this Agreement to a Section, subsection or clause refer to such Section, subsection or clause as contained in this Agreement.  The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole, including all Annexes as the same may from time to time be amended, restated, modified or supplemented, and not to any particular section, subsection or clause contained in this Agreement or any such Annex.  Wherever from the context it appears appropriate, each term stated in either the singular or plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter genders.  The words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; the word "or" is not exclusive; references to Persons include their respective successors and permitted assigns (to the extent and only to the extent permitted hereunder and by the Loan Documents) or, in the case of governmental Persons, Persons succeeding to the relevant functions of such Persons; and all references to statutes and related regulations shall include any amendments of the same and any successor statutes and regulations.  Section and other headings and captions are included solely for convenience of reference and are not intended to affect the interpretation of any provision of this Agreement.

## ARTICLE II
## PURCHASE AND SALE

2.1    Assignment and Assumption.  In consideration of the Purchase Price, as of the Closing Date and on and subject to the terms, provisions and conditions hereof:

(a)    Seller irrevocably sells, transfers, assigns, grants and conveys all of Seller's right, title and interest in and to each of the Loan Documents to Buyer, together with all payment and performance obligations evidenced by the Loan Documents;

(b)    Buyer irrevocably acquires from Seller, all of Seller's right, title and interest in and to each such Loan Document, together with all payment and performance obligations evidenced by the Loan Documents, and assumes and agrees to perform and comply with all obligations of Seller with respect to each such Loan Document;

*provided that:*

EACH SUCH ASSIGNMENT AND ASSUMPTION SHALL BE WITHOUT RECOURSE TO SELLER, OR ANY PAST, PRESENT OR FUTURE AFFILIATE, SUBSIDIARY, PARENT OR PARTICIPANT OF SELLER, AND, EXCEPT AS EXPRESSLY SET FORTH IN SECTION 4.1, WITHOUT ANY REPRESENTATION OR WARRANTY BY SELLER, OF ANY KIND OR NATURE WHATSOEVER, WHETHER EXPRESSED, IMPLIED OR IMPOSED BY LAW, INCLUDING, WITHOUT LIMITATION, (I) ANY OF THE

2

17387236

WARRANTIES DESCRIBED IN SECTION 3-417 OF THE UNIFORM COMMERCIAL CODE, ALL OF WHICH WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED BY SELLER; (II) WITH RESPECT TO (A) THE LEGALITY, SUFFICIENCY, VALIDITY, OR ENFORCEABILITY OF ANY OF THE DOCUMENTS; (B) THE COMPLETENESS OF ANY INFORMATION CONTAINED IN THE LOAN DOCUMENTS; (C) THE COLLECTABILITY OF ANY AMOUNT OWED TO SELLER BY ANY MAJESTIC PARTY; (D) THE FINANCIAL CONDITION OF ANY MAJESTIC PARTY; (E) THE VALIDITY, ENFORCEABILITY, ATTACHMENT, PRIORITY, OR PERFECTION OF ANY SECURITY INTEREST, MORTGAGE, OR OTHER LIEN DESCRIBED IN THE LOAN DOCUMENTS; (F) THE EXISTENCE, VALUE OR CONDITION OF ANY COLLATERAL DESIRED IN THE LOAN DOCUMENTS; OR (G) IF PART OF THE LOAN DOCUMENTS, THE ACCURACY, COMPLETENESS OR RELIABILITY OF ANY REPORTS OR OTHER INFORMATION PREPARED BY THIRD-PARTIES, INCLUDING WITHOUT LIMITATION, APPRAISALS, OPINIONS OF VALUE, ENVIRONMENTAL SITE ASSESSMENTS, LIEN SEARCHES, TITLE SEARCHES, TITLE CERTIFICATES, PROPERTY DESCRIPTIONS, TITLE INSURANCE POLICIES AND PROPERTY SURVEYS.

On the Closing Date, subject to the terms of this Agreement, all of Seller's right, title and interest in and to each such Loan Document will vest in Buyer and Seller shall be released from its obligations with respect to each such Loan Document.

    2.2    Purchase Price.

        (a)    The purchase price for the Loan Documents shall be $2,750,000.00 in cash ("Purchase Price").

        (b)    The Purchase Price shall be paid by Buyer to Seller on the Closing Date by wire transfer, using Seller's wire instructions set forth below.

    2.3    Seller's Closing Responsibilities.  On the Closing Date, Seller shall deliver to Buyer:

        (a)    each original promissory note listed on Annex I, endorsed to Buyer pursuant to an Allonge, duly executed by Seller, substantially in the form attached hereto as Annex II; and

        (b)    copies of all other items listed on Annex I, together with an assignment to be prepared by Buyer in form and substance satisfactory to Seller, in Seller's sole discretion, with respect to such of the Loan Documents as have been recorded with the National Vessel Documentation Center, duly executed by Seller; and

        (c)    authorization of Buyer by Seller to file assignments of those Loan Documents consisting of UCC financing statements.

    2.4    Buyer's Closing Responsibilities.  On the Closing Date, Buyer shall pay to Seller, the full amount of the Purchase Price, by confirmed wire transfer of immediately available funds.

17387236

2.5    Transfer and Recordation Taxes; Responsibility for Recording.    Buyer shall promptly and diligently record, at Buyer's sole expense, all assignments and notices, including, without limitation, the assignments referred to in Section 2.3(b), necessary to effect the transaction described in this Agreement. Buyer shall be responsible for, and shall pay when due and payable, all transfer, filing and recording fees and taxes, costs and expenses, and any State or County documentary taxes, if any, with respect to the filing or recording of any document or instrument contemplated hereby.    Buyer shall bear sole responsibility for recording all assignments, instruments or other documents delivered to Buyer pursuant to this Agreement.

## ARTICLE III
## CONDITIONS PRECEDENT TO EFFECTIVENESS

This Agreement shall not be effective unless and until all of the following conditions precedent have been satisfied:

(i)    Buyer and Seller have duly executed and delivered this Agreement;

(ii)    The Majestic Parties shall have each duly executed and delivered to Seller an agreement (in form and substance satisfactory to Seller) providing for, among other things, certain stipulation and agreements relating to the Loan Documents, releases and indemnifications of Seller and certain related parties; and

(iii)    Buyer has paid and Seller has received, in good funds, the entire Purchase Price.

## ARTICLE IV
## REPRESENTATIONS, WARRANTIES AND RELATED COVENANTS

4.1    Seller's Representations.    Seller represents and warrants to Buyer that:

(a)    Seller (A) is duly organized and validly existing under the laws of its jurisdiction of incorporation, (B) is in good standing under such laws and (C) has full power and authority, and has taken all action necessary, to execute and deliver this Agreement, and to consummate the transactions contemplated hereby;

(b)    Assuming due authorization, execution and delivery by Buyer, this Agreement is a legal, valid and binding obligation of Seller, enforceable in accordance with the terms hereof;

(c)    No consent, approval, authorization, order, registration or qualification of, or with, any court or regulatory authority or other governmental body having jurisdiction over Seller, the absence of which would adversely affect the legal and valid execution, delivery and performance by Seller of this Agreement or the documents and instruments contemplated hereby or the taking by Seller of any actions contemplated herein, is required;

4

(d)    Neither the execution and delivery of this Agreement, the consummation of the transactions contemplated hereby, or the fulfillment of or compliance with the terms and conditions of this Agreement, conflict with or result in a breach of or a default under any of the terms, conditions or provisions of any legal restriction (including, without limitation, any judgment, order, injunction, decree or ruling of any court or governmental authority, or any federal, state, local or other law, statute, rule or regulation) or any covenant or agreement or instrument to which Seller is now a party, or by which Seller or any of Seller's property is bound, nor does such execution, delivery, consummation or compliance violate or result in the violation of the Certificate of Incorporation or By-Laws of Seller;

(e)    With respect to the Loan Documents, Seller is the legal and beneficial owner thereof free and clear of any lien, encumbrance or other adverse claims or interests against title created by, through or under Seller; and

(f)    Seller has full power and authority, and has taken all action necessary, to execute and deliver this Agreement and to consummate the transactions contemplated hereby.

4.2    <u>Buyer's Representations</u>.  Buyer represents and warrants to Seller that:

(a)    Buyer (A) is duly organized and validly existing under the laws of its jurisdiction of organization, (B) is in good standing under such laws and (C) has full power and authority, and has taken all action necessary, to execute and deliver this Agreement, and to consummate the transactions contemplated hereby and to assume the right, title, interest and obligations of Seller under the Loan Documents;

(b)    From and after the date hereof, Buyer shall be bound by the provisions of the Loan Documents and shall have assumed all of Seller's obligations thereunder;

(c)    Buyer is sophisticated with respect to decisions to acquire assets of the type represented by the Loan Documents and is experienced in acquiring assets of such type;

(d)    Buyer has received, or has been accorded the opportunity to receive, a copy of all of the Loan Documents and other information requested by Buyer as Buyer deems appropriate to make its own credit analysis and decision to enter into this Agreement and to purchase the Loan Documents;

(e)    Buyer has, independently and without reliance upon Seller, or any director, officer, employee, counsel, agent or other representative of Seller, and based on such documents and information as it has deemed appropriate, made its own credit and investment analysis and decision to enter into this Agreement and to purchase the Loan Documents;

(f)    Assuming due authorization, execution and delivery by Seller, this Agreement is a legal, valid and binding obligation of Buyer, enforceable in accordance with the terms hereof;

5

17387236

(g)    No consent, approval, authorization, order, registration or qualification of, or with, any court or regulatory authority or other governmental body having jurisdiction over Buyer, the absence of which would adversely affect the legal and valid execution, delivery and performance by Buyer of this Agreement or the documents and instruments contemplated hereby or the taking by Buyer of any actions contemplated herein, is required;

(h)    Neither the execution and delivery of this Agreement, the consummation of the transactions contemplated hereby, or the fulfillment of or compliance with the terms and conditions of this Agreement, conflict with or result in a breach of or a default under any of the terms, conditions or provisions of any legal restriction (including, without limitation, any judgment, order, injunction, decree or ruling of any court or governmental authority, or any federal, state, local or other law, statute, rule or regulation) or any covenant or agreement or instrument to which Buyer is now a party, or by which Buyer or any of Buyer's property is bound, nor does such execution, delivery, consummation or compliance violate or result in the violation of the Certificate of Organization or Operating Agreement;

(i)    Brokers.  If a broker or similar intermediary was involved in this transaction, Buyer represents and warrants that such broker was and is the representative of Buyer, not of Seller; that the broker had no authority to make any statements on behalf of Seller; that Buyer had the opportunity to review all documentation independently of the broker; that Buyer has no recourse against Seller for any misstatements that may have been made by the broker; and that Buyer is solely responsible for any fees due to the broker arising out of this transaction.

4.3    Buyer's Post-Closing Covenants.

(a)    Reports to Taxing Authorities.  Buyer agrees to submit all Internal Revenue Service Forms and Information Returns with respect to the Majestic Parties, and any applicable State-required returns and forms, to the extent required by applicable law, for the full year in which the closing of this Agreement occurs and thereafter; provided, however, that Seller shall not be prohibited from submitting such Internal Revenue Service Forms and Information Returns with respect to the Majestic Parties, and any applicable State-required returns and forms as Seller deems appropriate.

(b)    Reimbursement for Use of Seller's Agents.  In the event of litigation with respect to any of the Loan Documents in which Seller, or any of Seller's employees, agents or attorneys, are requested or required, by subpoena, court order, or otherwise, to perform any acts, including, but not limited to, testifying in litigation, preparing responses to subpoenas or other legal process or pleadings, and/or performing any review of public or private records such as tracing funds, whether said litigation is commenced by Buyer, any successor holder or owner of any of the Loan Documents, any Majestic Party, or any other party, Buyer shall indemnify and promptly reimburse Seller for all costs and expenses incurred in connection therewith; provided, however, that the foregoing shall not extend to attorneys' fees, costs or expenses incurred by Seller in connection with any dispute arising out of or relating to this Agreement.

6

4.4    Survival.  All representations and warranties shall be true and correct as of the Closing Date, and shall survive the execution, delivery and performance of this Agreement.

## ARTICLE V
### COSTS AND EXPENSES

Except as may be otherwise expressly provided herein, Seller and Buyer shall each bear its own transaction costs.

## ARTICLE VI
### BUYER'S INDEMNIFICATION OF SELLER

6.1    Buyer's Indemnification of Seller.  Buyer and Buyer's successors and assigns hereby jointly and severally indemnify, save and keep Seller, and any parent, subsidiary, affiliate, and agent of Seller, and their respective successors and assigns, harmless against any and all liabilities, claims, actions or causes of action, assessments, losses, fines, penalties, costs, damages and expenses, including attorneys' fees, sustained or incurred by Seller, its parent, subsidiaries, affiliates, or agents or their respective successors and assigns, as a result of, or arising out of, or by virtue of:

(a)    the inaccuracy of any representation or warranty made by Buyer to Seller herein; or

(b)    a breach by Buyer of any of the covenants of this Agreement to be performed by Buyer; or

(c)    any claim relating in any way, directly or indirectly, to the Loan Documents, or any Majestic Party, arising from facts occurring on or after the Closing Date, excluding, however, any claim arising solely as the result of any actual, proven breach of contract, or the actual, proven tortious or unlawful acts or omissions of Seller in regard to the Loan Documents, or the Majestic Parties.

Seller may defend any such claim or cause of action brought or asserted against Seller arising out of any of the foregoing set forth in subsections (a) – (c) of this Section at the expense of Buyer, with counsel designated by Seller and to the exclusion of Buyer.  Alternatively, Seller may call upon Buyer to defend any such action at Buyer's sole cost and expense.  Seller may, in Seller's sole and exclusive discretion, adjust, settle, or compromise any such claim or cause of action made upon or brought against Seller, and Buyer shall indemnify Seller for any such amounts adjusted, settled or compromised, as well as all costs and expenses, including attorneys' fees, incurred in connection therewith.  Buyer acknowledges and agrees that Buyer's liability and obligations hereunder are unconditional, unlimited and shall continue in full force and effect at all times hereafter, including, without limitation, following any subsequent assignment by Buyer of the Loan Documents, or any of them, unless specifically terminated in writing by a duly authorized officer of Seller.

6.2    Seller's Indemnification of Buyer.  Seller and Seller's successors and assigns hereby jointly and severally indemnify, save and keep Buyer, and any parent, subsidiary, affiliate, and agent of Buyer, and their respective successors and assigns, harmless against any and all liabilities, claims, actions or causes of action, assessments, losses, fines, penalties, costs,

7

17387236

damages and expenses, including attorneys' fees, sustained or incurred by Buyer, its parent, subsidiaries, affiliates, or agents or their respective successors and assigns, as a result of, or arising out of, or by virtue of:

       (a)    the inaccuracy of any representation or warranty made by Seller to Buyer herein; or

       (b)    a breach by Seller of any of the covenants of this Agreement to be performed by Seller; or

       (c)    any claim relating in any way, directly or indirectly, to the Loan Documents, or any Majestic Party, arising from facts occurring prior to the Closing Date, arising solely as the result of any actual, proven breach of contract, or the actual, proven tortious or unlawful acts or omissions of Seller in regard to the Loan Documents, or the Majestic Parties.

Buyer may defend any such claim or cause of action brought or asserted against Buyer arising out of any of the foregoing set forth in subsections (a) – (c) of this Section at the expense of Seller, with counsel designated by Buyer and to the exclusion of Seller. Alternatively, Buyer may call upon Seller to defend any such action at Seller's sole cost and expense. Buyer may, in Buyer's sole and exclusive discretion, adjust, settle, or compromise any such claim or cause of action made upon or brought against Buyer, and Seller shall indemnify Buyer for any such amounts adjusted, settled or compromised, as well as all costs and expenses, including attorneys' fees, incurred in connection therewith. Seller acknowledges and agrees that Seller's liability and obligations hereunder are unconditional, unlimited and shall continue in full force and effect at all times hereafter, including, without limitation, following any subsequent assignment by Buyer of the Loan Documents, or any of them, unless specifically terminated in writing by a duly authorized officer of Buyer.

*{The remainder of this page is blank.}*

8

## ARTICLE VII
## MISCELLANEOUS

7.1    Notices.  All communications between the Parties hereto in respect of, or notices or other information sent under, this Agreement shall be in writing, hand delivered or sent by overnight courier, electronic transmission or telecopier, addressed to the relevant Party at its address, electronic mail or facsimile number as specified below (or at such other address, electronic mail or facsimile number as such Party may subsequently request in writing):

If to Seller:

CitiCapital Commercial Corporation
*Attention: Michael D. Finn, First Vice President*
3950 Regent Boulevard
Irving, Texas 75602
Telephone: (469) 220-3572
Facsimile: (469) 220-3571
Electronic Mail Address: michael.finn@citigroup.com

with a copy to:

Mayer, Brown, Rowe & Maw LLP
*Attention:  Brian Trust and Jeffrey G. Tougas*
1675 Broadway
New York, New York 10019-5820
Telephone:  (212) 506-2557
Facsimile:  (212) 849-5557
Electronic Mail Address: jgtougas@mayerbrownrowe.com

If to Buyer:

New Stream Commercial Finance, LLC
*Attention: James J. McKay*
38C Grove Street, 2nd Floor
Ridgefield, Connecticut 06877, USA

All such communications and notices shall be effective upon receipt.

7.2    Further Transfers.  This Agreement shall be binding upon, and inure to the benefit of, the Parties hereto and their respective successors and permitted assigns.  Buyer shall be permitted to assign, pledge, encumber or otherwise transfer its rights hereunder with respect to the Loan Documents so long as Buyer remains fully liable hereunder to Seller and Buyer agrees to remain so liable.

9

17387236

7.3    Entire Agreement.  (a) This Agreement constitutes the sole, final and complete expression, understanding and agreement of the Parties with respect to the transaction contemplated hereby and, other than the Confidentiality Agreement, supersedes any and all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, representations and warranties, written or oral, in respect thereof, all of which have become merged and finally integrated into this Agreement.  (b) No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties hereto, and no waiver of any provision of this Agreement, nor consent to any departure by any Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.  (c) No failure on the part of a Party to exercise, and no delay in exercising, any right or remedy under this Agreement shall operate as a waiver by such Party, nor shall any single or partial exercise of any right or remedy under this Agreement preclude any other or further exercise thereof or the exercise of any other right or remedy. The rights and remedies of each Party provided herein (i) are cumulative and are in addition to, and are not exclusive of, any rights or remedies provided by law (except as otherwise expressly set forth in this Agreement) and (ii) are not conditional or contingent on any attempt by such Party to exercise any of its rights or remedies under any other related document or against the other Party or any other Person.

7.4    No Third-Party Beneficiaries.  No person, organization or association other than Seller and Buyer shall have any rights or claims under this Agreement.  This Agreement shall confer no rights upon any Majestic Party.

7.5    Confidentiality.

(a)    Each Party agrees that, without the prior written consent of the other Party, it shall not disclose the contents of this Agreement (including the Purchase Price) to any Person, except that any Party may make any such disclosure (i) as required to implement or enforce this Agreement, (ii) if required to do so by any law, court, regulation, subpoena or other legal process, (iii) to any governmental authority or self-regulatory entity having or asserting jurisdiction over it, (iv) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may result in it incurring a liability to any other Person or sanctions that may be imposed by any governmental authority, (v) to its affiliates, professional advisors and auditors,

(b)    Buyer may disclose the contents of this Agreement (but not the Purchase Price) to any proposed transferee, Buyer, participant, or other Person proposing to enter into contractual relations with Buyer in respect of the Loan Documents after the date hereof.

(c)    Buyer agrees to comply with the requirements of the Loan Documents regarding confidentiality.

7.6    Payments — Seller's Wire Instructions.  All payments to be made by Buyer to Seller hereunder shall be made without setoff, deduction or counterclaim, in immediately available funds, on the date such payments are due, by wire transfer to the following account:

10

| Bank: | Citibank, N.A. |
|---|---|
| ABA Routing #: | 021 000 089 |
| For Credit to: | CitiCapital Commercial Corporation |
| Acct. #: | 30465247 |
| Reference: | Majestic |

7.7    Further Assurances. Each Party agrees to (i) execute and deliver, or cause to be executed and delivered, to the other all such other and further agreements, documents and instruments and (ii) take or cause to be taken all such other and further actions as the other Party may reasonably request to effect the assignment of the Loan Documents in accordance with the terms of this Agreement; provided that all such documents to be executed and actions to be taken by Seller, shall be without recourse, representation or warranty of any kind, except as expressly provided in this Agreement.

7.8    Counterparts. This Agreement may be executed in any number of counterparts, which together shall constitute one instrument.   Delivery of an executed counterpart of a signature page of this Agreement by telecopy shall be effective as delivery of a manually-executed counterpart of this Agreement.

7.9    Parties Relationship.  The relationship between the Parties shall be that of seller and buyer. Neither is a trustee or agent for the other, nor does either have any fiduciary obligations to the other. This Agreement shall not be construed to create a partnership or joint venture between the Parties.  In no event shall Seller have any duties to Buyer or otherwise with respect to any Loan Document, or otherwise, except as expressly provided herein.

7.10    Severability. The illegality, invalidity or unenforceability of any provision of this Agreement under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction nor the legality, validity or enforceability of any other provision.

7.11    Governing Law.   This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York (including for such purposes Section 5-1401 and 5-1402 of the General Obligations Law of the State of New York).

7.12    Submission to Jurisdiction.   Seller and Buyer each hereby submit to the nonexclusive jurisdiction of the United States District Court for the Southern District of New York and of any New York State court sitting in the Borough of Manhattan, New York City for purposes of all legal proceedings arising out of, or relating to, this Agreement or the transactions contemplated hereby. Seller and Buyer each irrevocably waive, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum, and each agrees that any service of process or

11

other legal summons in connection with any such action or proceeding may be effected by mailing a copy thereof by certified or registered mail, or any substantially similar form of mail, addressed to the intended recipient as provided for notices herein.

7.13   Jury Trial Waiver.   THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT THE PARTIES MAY HAVE TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION, OR IN ANY LEGAL PROCEEDING, DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS CONTAINED IN THIS SECTION.

7.14   Enforcement Costs.  In the event of any dispute relating to the collection of any amounts required to be paid hereunder or to otherwise enforce the terms hereof, the prevailing Party shall be entitled to receive from the other Party any and all court costs and other out-of-pocket costs and expenses (including attorneys' fees and disbursements) incurred by the prevailing Party in connection therewith.

[SIGNATURE PAGES FOLLOW]

12

17387236

IN WITNESS WHEREOF, this Agreement has been duly executed as of the date first written above.

SELLER:

CITICAPITAL COMMERCIAL CORPORATION

By: _____

Michael D. Finn
Its First Vice President
(Duly Authorized)