UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

NEW STREAM COMMERCIAL FINANCE, LLC,          **ECF CASE**

       Plaintiff,          Civ.No.08 Civ.3171 (AKH)
   -against-          (In Admiralty)

STAR OF AMERICA, O.N. 973452,her
engines, tackle, gear and
appurtenances,etc.,*in rem;*          **VERIFIED STATEMENT OF**
MAJESTIC STAR, O.N.1100715, her          **CLAIM**
Engines, tackle, gear and
Appurtenances, etc., *in rem;*
Majestic Voyages, Inc., *in
personam;* and Majestic Star, Inc.,
*in personam,*

      Defendants.

- - - - - - - - - - - - - - - - - -X

State of New York )
County of New York)

Celeste Kaptur, being duly sworn, deposes and says:

  1. I am District Counsel for the New York District Office of
the United States Small Business Administration (SBA), an agency of
the United States of America, with a district office located at 26
Federal Plaza, Room 3100, New York, New York 10278, and have the
authority to file this Verified Statement of Claim on behalf of the
SBA.

  2. The above named Defendants were at the time and before the
filing of the Complaint herein and still are justly and truly indebted
to the Claimant SBA in the sum of $1,386,877.20 as of April 16, 2008
with interest continuing to accrue as set forth below.

3.   The consideration for this debt was three direct loans made by Claimant SBA in the principal sums of $444,200.00, SBA Loan No: 4954654001 ("Loan No. 1"), $287,300.00, SBA Loan No: 4955074006 ("Loan No. 2") and $642,700.00, SBA Loan No: 4955114005 ("Loan No. 3) as set forth in more particulars below.

4.   Loan No. 1 is evidenced by a Promissory Note ("Note No. 1") dated October 2, 2001 in the principal amount of $444,200.00 by Strategic Communications Group, Inc., through its president, Spiros E. Kopelakis, and its secretary, Shirley B. Dreifus. A copy of Note No. 1 is annexed as Exhibit 1.

4a.   As collateral security for Note No. 1, Defendant Majestic Star, Inc. executed a Guarantee and Mortgage in the amount of $444,200.00 in favor of SBA whereby it granted SBA a Mortgage on the WHOLE OF THE VESSEL, Defendant "Star of America" O.N. 973452, filed October 26, 2001 in Book 01-118 at Page 690 in the National Vessel Document Center, USCG. Copies of the Guarantee and Mortgage are annexed as Exhibit 1A.

4b.   As additional collateral security for Note No. 1, Defendant Majestic Voyages, Inc. executed a Guarantee and Mortgage in the amount of $444,200.00 in favor of SBA whereby it granted SBA a Mortgage on the WHOLE OF THE VESSEL, Defendant "Majestic Star" O.N. 1100715, filed October 26, 2001 in Book 01-118 at Page 693 in the National Vessel Document Center, USCG. Copies of the Guarantee and Mortgage are annexed as Exhibit 1B.

4c.   The amount due and owing Loan No. 1 is, as of April 16, 2008, in the principal amount of $418,285.40, plus interest accrued in the amount of $1054.60 for a total amount due as of April 16, 2008 of

$419,340.00, with interest continuing to accrue at the daily rate of $45.84 until paid.

5.    Loan No. 2 is evidenced by a Promissory Note ("Note No. 2") dated October 2, 2001 in the principal amount of $145,00.00 by Defendant Majestic Star, Inc., through its president, Spiros E. Kopelakis, and its secretary, Shirley B. Dreifus. Note No. 2 was amended by Modification of Note ("Note 2 Modification") dated February 12, 2003 to increase the loan amount to $287,300.00 and was executed Majestic Star, Inc. through its president, Spiros E. Kopelakis, and its secretary, Shirley B. Dreifus. Copies of this Note 2 and Note 2 Modification are annexed as Exhibit 2.

5a.    As collateral security for Note 2 and Note 2 Modification Defendant Majestic Star, Inc. executed a Mortgage (Mortgage 2a) in the amount of $145,000.00 in favor of SBA whereby it granted SBA a Mortgage on the WHOLE OF THE VESSEL, Defendant "Star of America" O.N. 973452,filed October 26, 2001 in Book 01-118 at Page 691 in the National Vessel Document Center, USCG, which mortgage was increased to $287,300.00 by Modification of Preferred Mortgage ("Mortgage 2a Modification")filed on February 26, 2003 at the National Vessel Documentation Center. A copy of Mortgage 2a and Mortgage 2a Modification is annexed as Exhibit 2A.

5b.    As additional collateral security for Note 2 and Note 2 Modification, Defendant Majestic Voyages, Inc. executed Guarantees and a Mortgage ("Mortgage 2b") in the amount of $145,000.00 in favor of SBA whereby it granted SBA a mortgage on the WHOLE OF THE VESSEL, Defendant "Majestic Star" O.N. 1100715, filed October 26, 2001 in Book 01-118 at Page 694 in the National Vessel Document Center, USCG, which mortgage was increased to $287,300.00 by Modification of Preferred

Mortgage ("Mortgage 2b Modification), filed on February 26, 2003 in the National Vessel Document Center. Copies of the Guarantees, Mortgage 2b and Mortgage 2b Modification are annexed as Exhibit 2B.

     5c.    The amount due and owing on Loan No. 2 is, as of April 16, 2008, in the principal amount of $283,181.19, plus interest accrued in the amount of $17,535.97 for a total amount due as of April 16, 2008 of $300,717.16, with interest continuing to accrue at the daily rate of $31.03 until paid.

     6.    Loan No. 3 is evidenced by a Promissory Note ("Note 3") dated October 2, 2001 in the principal amount of $401,00.00 by Defendant Majestic Voyages, Inc., through its president, Spiros E. Kopelakis, and its secretary, Shirley B. Dreifus. Note 3 was amended by Modification of Note ("Note 3 Modification") dated February 12, 2003 to increase the loan amount to $642,700.00 and was executed by Majestic Voyages, Inc. through its president, Spiros E. Kopelakis, and its secretary, Shirley B. Dreifus. Copies of Note 3 and Note 3 Modification are annexed as Exhibit 3.

     6a.    As collateral security for the Note 3 and Note 3 Modification, Defendant Majestic Star, Inc. executed a Guarantee and Mortgage ("Mortgage 3a") in the amount of $401,000.00 in favor of SBA whereby it granted SBA a mortgage on the WHOLE OF THE VESSEL, Defendant "Star of America" O.N. 973452, filed October 26, 2001 in Book 01-118 at Page 692 in the National Vessel Document Center, USCG, which mortgage was increased to $642,700.00 by Modification of Preferred Mortgage ("Mortgage 3a Modification), filed February 26, 2003 in the National Vessel Documentation  Center. Copies of the Guarantee, Mortgage 3a and Mortgage 3 Modification are annexed as Exhibit 3A.

6b.    As additional collateral security for Note 3 and Note 3 Modification, Defendant Majestic Voyages, Inc. executed a Mortgage ("Mortgage 3b") in the amount of $401,000.00 in favor of SBA whereby it granted SBA a mortgage on the WHOLE OF THE VESSEL, Defendant "Majestic Star" O.N. 1100715, filed October 26, 2001 in Book 01-118 at Page 695 in the National Vessel Document Center, USCG, which mortgage was increased to $642,700.00 by Modification of Preferred Mortgage ("Mortgage 3b Modification") filed February 26, 2003 in the National Vessel Documentation Center. Copies of Mortgage 3b and Mortgage 3b Modification are annexed as Exhibit 3B.

6c.    The amount due and owing on Loan 3 is, as of April 16, 2008, in the principal amount of $630,150.56, plus interest accrued in the amount of $36,669.50 for a total amount due as of April 16, 2008 of $666,820.06, with interest continuing to accrue at the daily rate of $69.06 until paid.

Celeste Kaptur
District Counsel
U.S. Small Business Administration
New York District Office

Sworn to before this
_23_ day of April, 2008

NOTARY PUBLIC

WILLIAM YOUNG
Notary Public, State of New York
No. 02YO4941350
Qualified in Westchester County
Commission Expires August 8, 20 05

To: Clerk of the Court
U.S. District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Joseph G. Grasso
Thatcher Proffitt & Wood LLP
Two World Financial Center
New York, NY 10281

Christopher Marshall Desiderio
Nixon Peabody LLP (NYC)
437 Madison Avenue
New York, NY 10022

D E C L A R A T I O N

William Young hereby declares and states as follows:

That on the 22nd day of April, 2008, I caused the following to be mailed from 271 Pierrepont Plaza East, Brooklyn, New York, by USPS:

Verified Statement of Claim

Exhibits  1, 1A, 1B, 2, 2A, 2B, 3, 3A and 3B.

in the action entitled contained in a securely enclosed postpaid wrapper directed to the persons at the places and addresses as follows:

Clerk of the Court
U.S. District Court
Southern District of New York
New York, NY 10007

Joseph Grasso
Thatcher Proffitt & Wood LLP
Two World Financial Center
New York, NY 10281

Christopher Marshall Desiderio
Nixon Peabody LLP (NYC)
437 Madison Avenue
New York, NY 10022

The undersigned affirms under penalty of perjury that the foregoing is true and correct.

Dated:     Brooklyn, New York
           April 22, 2008

William Young



| U.S. Small Business Adminstration | Date: **October 2, 2001** |
|---|---|
| **NOTE** | Loan Amount: **$444,200.00** |
| (SECURED DISASTER LOANS) | Annual Interest Rate: **4.000%** |

Control # 9M49-00024                  Loan # EIDL 49546540-01

1. **PROMISE TO PAY:** In return for a loan, Borrower promises to pay to the order of SBA the amount of <u>Four Hundred Forty-Four Thousand Two Hundred and no/100</u> Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

2. **DEFINITIONS:** A) "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note. B) "Guarantor" means each person or entity that signs a guarantee of payment of this Note. C) "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

3. **PAYMENT TERMS:** Borrower must make all payments at the place SBA designates. Borrower may prepay this Note in part or in full at any time, without notice or penalty. Borrower must pay principal and interest payments of $<u>2,235.00</u> every <u>month</u> beginning <u>Twelve (12)</u> months from the date of the Note. SBA will apply each installment payment first to pay interest accrued to the day SBA receives the payment and will then apply any remaining balance to reduce principal. All remaining principal and accrued interest is due and payable <u>Thirty (30) Years</u> from the date of the Note.

4. **DEFAULT:** Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower: A) Fails to comply with any provision of this Note, the Loan Authorization and Agreement, or other Loan Documents; B) Defaults on any other SBA loan; C) Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; D) Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; E) Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; F) Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay this Note; G) Fails to pay any taxes when due; H) Becomes the subject of a proceeding under any bankruptcy or insolvency law; I) Has a receiver or liquidator appointed for any part of their business or property; J) Makes an assignment for the benefit of creditors; K) Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay this Note; L) Dies; M) Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or, N) Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay this Note.

5. **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: A) Require immediate payment of all amounts owing under this Note; B) Have recourse to collect all amounts owing from any Borrower or Guarantor; C) File suit and obtain judgment; D) Take possession of any Collateral; or, E) Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: A) Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; B) Collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; C) Release anyone obligated to pay this Note; D) Compromise, release, renew, extend or substitute any of the Collateral; and E) Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. **WHEN FEDERAL LAW APPLIES:** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.



SBA FORM 147 9 (5-00) Previous editions obsolete                                      Page 1



GOVERNMENT EXHIBIT

8. **GENERAL PROVISIONS:** A) All individuals and entities signing this Note are jointly and severally liable. B) Borrower waives all suretyship defenses. C) Borrower must sign all documents required at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral. D) SBA may exercise any of its rights separately or together, as many times and in any order it chooses. SBA may delay or forgo enforcing any of its rights without giving up any of them. E) Borrower may not use an oral statement of SBA to contradict or alter the written terms of this Note. F) If any part of this Note is unenforceable, all other parts remain in effect. G) To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that SBA did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale. H) SBA may sell or otherwise transfer this Note.

9. **MISUSE OF LOAN FUNDS:** Anyone who wrongfully misapplies any proceeds of the loan will be civilly liable to SBA for one and one-half times the proceeds disbursed, in addition to other remedies allowed by law.

10. **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

Corporate Seal

Dated this 18 day of October, 2001.

Corporate Execution

Strategic Communications Group, Inc.

By: _____
Farhan Ali, President

By: _____
Farhan Ali, Secretary



LEGAL DEPT.
US SBA OGC
2001 OCT 20 PM 3: 37
RECEIVED

SBA FORM 147 B (5-00) Previous editions obsolete    Page 2

MAIL ANY NOTICE OF DEFAULT TO:
U.S. SMALL BUSINESS ADMINISTRATION
2120 Riverfront Drive
Little Rock, Arkansas; 72202

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED / FILED

26 OCT '01         -10 : 00 AM

RECORDED: BOOK 01-118 PAGE 690

DOCUMENT OFFIC: L. Fittry

WHEN RECORDED MAIL TO:
U.S. SMALL BUSINESS ADMINISTRATION
360 Rainbow Blvd. South
Niagara Falls, NY  14303-1192
(716)282-4612

Strategic Communications Group, Inc.
# 9M49-00024 Loan No. EIDL 49546540-01

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## PREFERRED MORTGAGE

Amount of Mortgage: $444,200.00

Maturity Date: October 2, 2031

NATIONAL VESSEL DOCUMENTATION CENTER
U. S. COAST GUARD

Majestic Star, Inc.
Surfside 3 Marina Chelsea Piers, Pier 59, New York, New York 10011
(Mortgagor) 100%

I HEREBY CERTIFY THIS TO BE A TRUE COPY
OF THE RECORDS OF THIS OFFICE.

Jana L. Fittry OCT 3 1 2001

DOCUMENTATION OFFICER

U.S. Small Business Administration
(Mortgagee)

ON

DATE THE WHOLE OF THE VESSEL Star of America

THIS PREFERRED MORTGAGE made and given this 2nd day of October 2001, by Majestic Star, Inc. (hereinafter designated and referred to as "Mortgagor").

### WITNESSETH:

THAT. WHEREAS the Mortgagor is justly indebted to the Mortgagee in the sum of Four Hundred Forty-Four Thousand Two Hundred and no/100 dollars ($444,200.00), as evidenced by a certain Promissory Note dated October 2, 2001, the interest thereon at the rate of 4.000 per centum per annum, payable as follows: *signed by Strategic Communications Group, Inc. and a guarantee of the same date signed by Mortgagor.

Installment payments, including principal and interest, of Two Thousand Two Hundred Thirty-Five and no/100 ($2,235.00) Dollars monthly, will begin Twelve (12) months from the date of the promissory Note. Balance of principal and interest will be payable Thirty (30) Years from the date of the promissory Note.

WHEREAS, the Mortgagor is the sole owner of the 1991, 103.4 Hull Depth 4 Breadth 24, lenght 103.4 Vessel Called "Star of America" Official No. 9734525; Gross Tons 67; Net Tons 57; Home Port New York, New York; Place Issued National Vessel Doc Center; Issued March 13, 1998;

NOW, THEREFORE, The Mortgagor, for the purpose of securing the payment of said sum so owed to the Mortgagee, and the performance and observance of all the agreements, covenants and conditions herein contained, has granted, bargained, sold and mortgaged, and by these presents does grant, bargain, sell and mortgage unto the Mortgagee, the whole of said vessel, together with all her engines, boilers, machinery, masts, bowsprits, sails, boats, anchors, cables, chains, rigging, tackle, tools, pumps, apparel and furniture, equipment and supplies and all other appurtenances thereto appertaining and belonging, and also any and all additions, improvements and replacements hereinafter made in to said vessel, or any part thereof, or in or to her equipment and appurtenances aforesaid.

TO HAVE AND TO HOLD said vessel and all appurtenances thereunto belonging, including all such additions, improvements and replacements unto the Mortgagee, its successors and assigns, to the sole and only proper use, benefit, and behalf of the Mortgagee, its successors and assigns, forever:

PROVIDED ALWAYS, and the conditions of these presents are such that if the Mortgagor shall pay or cause to be paid to the Mortgagee, its successors and assigns, the debt aforesaid and interest thereon, in accordance with the terms of this Mortgage and with the terms of said Note executed and given by the Mortgagor for valuable consideration to the Mortgagor, and if the Mortgagor, shall duly perform all the agreements conditions hereafter set forth, then these presents shall be void

GOVERNMENT
EXHIBIT
1A

and of no effect; otherwise, the same shall be, continue and remain in full force and effect. The Mortgagor hereby agrees to pay or cause to be paid the debt aforesaid according to the terms and conditions of said Note and of this Mortgage and to fulfill, perform and observe each and every one of the covenants, agreements and conditions herein contained.

The maturity date of this Mortgage shall be as of October 2, 2031

## ARTICLE 1
### PARTICULAR COVENANTS OF THE MORTGAGE

The Mortgagor covenants and agrees as in this article set forth:

SECTION 1.    At his own expense, so long as the indebtedness evidenced by said Note remains in any part outstanding, the Mortgagor will keep the vessel and its appurtenances insured in an amount equal to the full commercial value of and the same, but in any case for not less than the amount remaining unpaid on said indebtedness, with such hull insurance as the Mortgagee may require and otherwise with coverage satisfactory to the Mortgagee. The policy valuation in the hull policies shall not exceed the aggregate amount insured by hull policies. The hull insurance shall be placed under such form of policy as the Mortgagee may approve, insuring against the usual risks covered by such indebtedness, with such hull insurance as the Mortgagee may require and policies including four-fourths running down clause and Inchmaree clause. The Mortgagor will also at his own expense, if and when so required by the Mortgagee, keep the vessel insured for its full commercial value but in any case for not less than the amount remaining from time to time unpaid on the said indebtedness, against war risks and the risks of mines, torpedoes, bombs and aircraft, and covering damage to or destruction of said vessel caused by sabotage, malicious mischief, strikers, locked out workmen or persons taking part in labor disturbances or riots or civil commotions. All said insurance shall be placed with responsible underwriters and through responsible brokers all in good standing and satisfactory to the Mortgagee. All of said shall run for the account of whom it may concern, or in such other form fully covering the Mortgagee as may be satisfactory to the Mortgagee, any amount recovered or recoverable thereunder to be applied by the Mortgagee as follows:--

In the event of partial loss, if the Mortgagor is not in default under this Mortgage, the Mortgagee shall consent that the underwriters pay direct for repairs, salvage or other charges covered by insurance and/or reimburse the Mortgagor therefore, on evidence by certificate or otherwise satisfactory to the Mortgagee that the same have been paid by the Mortgagor, but if the Mortgagor is in default under this Mortgage, the Mortgagee shall be entitled to receive the proceeds of any such insurance and may apply such proceeds in the manner provided in Section 5 of Article II hereof.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.

The Mortgagor will also, at his own expense, keep the vessel fully covered by protection and indemnity insurance in a so-called protection and indemnity association or club in good standing and satisfactory to the Mortgagee or by clauses of like effect in a policy or policies issued by marine insurance companies and through brokers in good standing and satisfactory to the Mortgagee, such protection and indemnity also to protect the Mortgagee against any liability which the Mortgagor may incur.

All policies and/or binders and/or cover notes shall be delivered to the Mortgagee, and proper renewals of any expiring insurance shall be so delivered, not less than ten (10) days prior to the expiration of any expiring insurance, and the Mortgagee shall be furnished with evidence satisfactory to it of the maintenance as herein provided of any protection and indemnity insurance carried by any association or club.

The Mortgagor will cause said vessel to be continuously documented under the laws of the United States and maintained as a vessel of the United States.

Mortgagor shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof, nor remove the vessel from the limits of the territorial waters of the United States without first obtaining written permission of Mortgagee. Mortgagor shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel and condition of vessel is to be maintained in same condition as when Mortgaged with reasonable wear tear excepted.

SECTION 2.    Mortgagor is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Mortgagor shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the good faith affidavit filed herewith and of said note has been duly taken. If a corporation, Mortgagor is duly organized and is and shall continue in good standing under the laws of the State of New York and authorized to do business and in good standing in any other State wherein the nature of Mortgagor's activities requires it to be so authorized.

SECTION 3.    Mortgagor lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee

Strategic Communications Group, Inc.
9M49-00024 / EIDL 49546540-01

against all persons whomsoever. Mortgagor shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Mortgagor against Mortgage and/or assignee under any past or future transaction.

SECTION 4. The Mortgagor will not do any act, nor voluntarily suffer nor permit any act to be done, whereby any insurance is or may be suspended, impaired for defeated, and will not suffer or permit the vessel to engage in any voyage or to carry any cargo not permitted by the policies of insurance in effect, without first covering the vessel to the amount herein provided for by insurance satisfactory to the Mortgagee for such voyage or the carriage of such cargo.

SECTION 5. Neither the Mortgagor nor the Master of the vessel shall have any right, power or authority to create, incur or permit to be imposed, and the Mortgagor agrees that there shall not be created, incurred or permitted to be imposed upon the vessel, any lien whatsoever except for crew's wages and salvage.

The Mortgagor agrees that there shall at all times be carried aboard the vessel with the ship's documents, a properly certified copy of this Mortgage, and that he will cause the same and the documents of the vessel to be exhibited by the Master to any person having business with the vessel which might give rise to a maritime lien upon the vessel or to the sale, conveyance or Mortgage thereof. The Mortgagor agrees to notify in writing in advance any person furnishing supplies or other necessaries to the vessel that neither the Mortgagor nor the Master have any right to create, incur or permit to be imposed upon the vessel any lien whatsoever except for crew's wages and salvage.

The Mortgagor further agrees to place and keep prominently in the pilot house and engine room of the vessel notices reading as follows:

"This vessel is covered by a first preferred Mortgage to the U.S. SMALL BUSINESS ADMINISTRATION, under authority of the SHIP MORTGAGE ACT, 1920, as amended. Under the terms of said Mortgage, neither the owner nor the Master of the vessel have any right, power or authority to create, incur or permit to be imposed upon the vessel any liens whatsoever, except for crew's wages or salvage."

If a libel should be filed against the vessel or if the vessel is otherwise levied against or taken into custody by virtue of any legal proceedings in any court, the Mortgagor will, within fifteen (15) days thereafter, cause the said vessel to be released and the lien to be discharged.

SECTION 6. At all times, at his own expense, the Mortgagor will exercise due diligence to maintain and preserve the vessel in as good condition, working order and repair as at the time of the execution of this Mortgage, ordinary wear and tear and depreciation, with the vessel kept in proper repair, excepted, and will keep the vessel in such condition as will enable her to pass such inspection as may be required by marine underwriters as a condition to their writing such insurance and in such amounts as is required under this Mortgage.

SECTION 7. At all times the Mortgagor will afford the Mortgagee or its authorized representatives full and complete access to the vessel for the purpose of inspecting the same and her cargoes and ship's papers; and to examine the Mortgagor's related accounts and records; and shall certify quarterly and if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

SECTION 8. The Mortgagor will pay and discharge, when due and payable from time to time, all taxes, assessments and governmental charges, fines or penalties lawfully imposed on the vessel or upon the income and profits thereof.

SECTION 9. The Mortgagee shall have the right but shall be under no obligation to make any payments and to do any acts which under the terms of this Mortgage the Mortgagor is required to make or do, but the making of any such payment or the doing of any such act by the Mortgagee shall not relieve the Mortgagor of any default in that respect or constitute in any respect a waiver of such default. The Mortgagor will reimburse the Mortgagee promptly, with interest at the rate of six per centum (6%) per annum, for any and all payments and expenditures so made or incurred by the Mortgagee at any time in taking possession of the vessel or otherwise protecting its rights hereunder and for any and all damages sustained by the Mortgagee from or by reason of any default or defaults of the Mortgagor, and all such payments, expenditures, advances and expenses shall be and are secured by this Mortgage.

SECTION 10. The Mortgagor will not make any sale or other transfer or Mortgage of the vessel or of any interest therein without the written consent of the Mortgagee first being obtained, and such written consent to any one such sale or transfer shall not be deemed a waiver of this provision in respect to any subsequent proposed sale or transfer of interest; but the Mortgagor may, for uses lawful for American vessels and subject to all the provisions of this Mortgage, charter the vessel to citizens of the United States as defined in the Merchant Marine Act of 1920, subject to this Mortgage.

SECTION 11. The Mortgagor will comply with and satisfy all the provisions of the Ship Mortgage Act, 1920, as amended, and of all acts amendatory thereof or supplementary thereto, compliance with which is necessary to establish and maintain this Mortgage as a first preferred Mortgage under said Act.

Page 3

SECTION 12. The Mortgagor will, at any time upon request, execute such other and further instruments, if any, as may be necessary to vest in the Mortgagee a first preferred Mortgage lien on said vessel in accordance with the intent of this instrument, and will execute such further assurances and instruments as may be required by the Mortgagee to safeguard the rights of the Mortgagee and carry out the intent of this instrument.

SECTION 13. The Mortgagor covenants and warrants that he has good title to the whole of said vessel and its appurtenances and that the same are free from all liens and encumbrances, and that he will warrant and defend the same against the claims of all and every person or persons whomsoever.

## ARTICLE II
## DEFAULT

SECTION 1. In case one or more of the following events, herein termed "Defaults", shall happen viz:

(a) Default shall be made in the payment of principal and/or interest as above provided; or

(b) The Mortgagor shall sell or Mortgage or attempt to sell or Mortgage the vessel, or any part thereof or transfer the flag of the vessel without the written consent of the Mortgagee; or

(c) The vessel shall be libeled or levied upon or taken by virtue of any attachment or execution against the Mortgagor or otherwise subjected to lien or claim and not released within fifteen (15) days as herein provided, or the Mortgagor shall remove or attempt to remove the vessel beyond the limits of the United States save on voyage with the intention of returning to the United States; or

(d) The Mortgagor shall make an assignment for the benefit of his creditors, or a receiver or receivers of his property or of said vessel shall be appointed by any court, or a petition for adjudication as bankrupt shall be filed by or against the Mortgagor, or in the event of the commencement of any proceeding under any bankruptcy or insolvency laws or any laws relating to the relief of debtors, readjustment of indebtedness, reorganization, composition or extension by or against the Mortgagor; or

(e) Default shall be made in the prompt and faithful performance or observance of any of the other covenants, agreements or conditions herein contained and such default shall continue for fifteen (15) days after written notice thereof shall have been given to the Mortgagor by the Mortgagee.

THEN, AND IN EACH AND EVERY CASE, THE MORTGAGEE THEREUPON MAY-

(a) Declare said promissory note to be immediately due and payable, and upon such declaration said note, shall together with any accrued interest thereon, become immediately due and payable.

(b) Recover judgment for any amount due upon said indebtedness and collect the same out of any property of the Mortgagor without its security under this Mortgage being in any way affected or impaired thereby; and/or

(c) Take possession of the vessel wherever the same may be found and hold, lease, charter, operate or otherwise use the vessel as the Mortgagee may deem to its best advantage; and/or

(d) Take possession of the vessel wherever the same may be found; and with or without so taking possession, sell the same at public auction free from any claim by the Mortgagor in law, in equity, in admiralty, or by Statute after first giving proper notice and such sale may be held at such place or places and at such time or times as the Mortgagee may specify; and may be conducted without bringing the vessel to a place of sale, and in such manner generally as the Mortgagee may deem its best advantage, and the Mortgagee may become the purchaser at any such sale; and/or

(e) Foreclose this Mortgage pursuant to the terms and provisions of the Ship Mortgage Act, 1920, as amended; and/or

(f) Proceed, at its option, in any other lawful manner to enforce its rights under this Mortgage.

SECTION 2. When any right to take possession of the vessel shall occur, the Mortgagee may take possession of the same wherever the same may be found, without prior demand and without legal process and for that purpose may enter upon any dock, pier or other premises where the vessel may be, and the Mortgagee may take possession of the vessel upon the high seas or in any port, harbor or other place; but without impairing the said right, the Mortgagor agrees that upon demand he will deliver the vessel at his own cost at such place or places as the Mortgagee shall designate and that the Mortgagee shall have the right to take the vessel at any dock, pier or other premises of the Mortgagor and to keep said vessel there without charge, or to dock the vessel at any other place at the expense of the Mortgagor. Also, that the mailing postage prepaid, of any demand or notice addressed to the Mortgagor

Strategic Communications Group, Inc.
9M49-00024 / EIDL 49546540-01

at his last address known to the Mortgagee, shall be sufficient demand or notice where demand or notice is required under this Mortgage.

The Mortgagor further agrees that in any legal proceedings which may be taken by the Mortgagee for the enforcement of its rights hereunder, the Mortgagee shall be entitled to exercise the right of entry in taking possession, all other rights and powers herein conferred, including appointment of a receiver or receivers of the vessel and of the earnings, income, revenue, rents, issues or profits thereof, with such powers as the court making such appointments shall confer.

SECTION 3.    Each and every power or remedy herein specifically given to the Mortgagee shall be cumulative and shall be in addition to every other power or remedy herein specifically given or now or hereafter existing at law, in equity, in admiralty or by Statute, and each and every power of remedy, whether specifically herein given or otherwise so existing, may be exercised from time to time and as often and in such order as may be deemed expedient by the Mortgagee, and the exercise or the beginning of the exercise of any power or remedy shall not be deemed a waiver of the right to exercise at the same time or thereafter any other power or remedy. No delay nor omission by the Mortgagee in the exercise of any right or power accruing upon any event of default as above defined shall be construed to be a waiver of such default or any acquiescence therein; nor shall the acceptance by the Mortgagee of any security or of any payment after such default or any payment on account of any past default be deemed a waiver of any right to take advantage of any other default or of any past default not completely cured thereby.

SECTION 4.    If at any time after default and prior to the actual sale of the vessel by the Mortgagee, the Mortgagor shall offer to cure completely all defaults and to pay all expenses, advances and damages of the Mortgagee consequent on such default or defaults, together with interest at the highest legal rate, then the Mortgagee may in its discretion, but without any obligation to do so, accept such offer and payment and restore the Mortgagor to his former position.

SECTION 5.    The proceeds of any sale and the net earnings from any management, charter or other use of the vessel by the Mortgagee under any of the powers above specified and the proceeds of any judgement collected by the Mortgagee for any default hereunder, together with the proceeds of any insurance, and of any claims for damages on account of the vessel received by the Mortgagee while exercising any of such powers, shall be applied as follows:

FIRST:    To the payment of all expenses and charges, including the expense of sale, the expense of taking of possession, and any other expenses or advances made or incurred by the Mortgagee in the protection of its rights hereunder including its expenses for legal advice and services; and to the payment of any damages sustained by the Mortgagee from the default or defaults of the Mortgagor with interest as provided herein, and, at the discretion of the Mortgagee, to provide adequate indemnity against liens claiming priority over this Mortgage.

SECOND:    To the payment of the indebtedness secured hereby with interest to the date of such payment.

THIRD:    Any surplus thereafter remaining shall belong and be paid to the Mortgagor, his successors and assigns, or to whomever may be entitled to receive the same, or as a court of competent jurisdiction may direct. Mortgagee shall be entitled to collect any deficiency from Mortgagor.

SECTION 6.    All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Mortgagor on demand with interest at 9% per annum and until so paid shall be a debt due from Mortgagor to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Mortgagor of any obligation or default with respect thereto.

## ARTICLE III
## POSSESSION UNTIL DEFAULT

Until default shall have been made in the due and punctual payment of any installment of the principal of the indebtedness secured hereby, or until there shall have been a default in the conditions, covenants or agreements herein contained, the Mortgagor shall be suffered and permitted to retain possession of the vessel and to manage, operate and use the same and to collect, receive, take, use and enjoy the earnings, income revenue, rents, issues and profits subjected to the terms and conditions of this instrument.

## ARTICLE IV - SUNDRY PROVISIONS

All covenants and agreements of Mortgagee herein contained shall bind Mortgagor, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Mortgagor herein, "his" shall mean "their."

The Vessel covered by this Mortgage is not a towboat, barge, scow, lighter, carfloat, canal boat or tank vessel of less than 25 gross tons, as such words are used in 46 USC 922.

FUTURE ADVANCES, This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Mortgagor has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized.

State of New York
County of _new york_ } ss:

On the _18th_ day of _October_ in the year 2008 before me the undersigned, a Notary Public in and for said state, personally appeared _Spiros E. Kopelakis_

_____

personally known to me or proved to me on the basis of satisfactory evidence to be an individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Elizabeth M Metro_
Notary Public

Majestic Star, Inc.

By: _____
Spiros E. Kopelakis, President

By: _____
Shirley B. Dreifus, Secretary

Elizabeth M. Metro
Registration #4677468
NOTARY PUBLIC, STATE OF NEW YORK
Qualified in Niagara County 2003
My Commission Expires January 31,

AFFIDAVIT, AS TO GOOD FAITH, LIENS, ETC.

STATE OF _____ )
                                    ) ss:
COUNTY OF _____ )

being (severally) duly sworn, depose(s) that he is (they are) the individual
Mortgagor(s) _____
General Partner (s) of _____
The Partnership, (Title) _____
of _____, the corporation, described in and who (which) executed the foregoing Mortgage; and that the said Mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditor of the Mortgagor or any lienor of the Mortgaged vessel(s). There are no liens, encumbrances, charges or Mortgages outstanding against said vessel, other than the lien of the foregoing Mortgage.

If Mortgagor is a corporation, this affidavit is made pursuant to authority of its Board of Directors.

Subscribed and sworn to before me this _____ day of _____, 20_____.

_____
NOTARY PUBLIC



U.S. Small Business Adminstration

# UNCONDITIONAL GUARANTEE

## (DISASTER LOANS)

| SBA Loan # | DLB 49546540-01 |
|---|---|
| Control # | 9M49-00024 |
| Guarantor | Majestic Star, Inc. |
| Borrower | Strategic Communications Group, Inc. |
| Date | October 2, 2001 |
| Note Amount | $444,200.00 |

### 1. GUARANTEE:

Guarantor unconditionally guarantees payment to SBA of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when SBA makes written demand upon Guarantor. SBA is not required to seek payment from any other source before demanding payment from Guarantor.

### 2. NOTE:

The "Note" is the promissory note dated October 2, 2001 in the principal amount of Four Hundred Forty-Four Thousand Two Hundred and no/100 Dollars, from Borrower to SBA. It includes any assumption, renewal, substitution, or replacement of the Note.

### 3. DEFINITIONS:

"Collateral" means property, if any, taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

### 4. SBA'S GENERAL POWERS:

SBA may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not SBA receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;



G. Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against SBA.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after SBA disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after SBA disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) SBA failed to obtain any guarantee;

2) SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) SBA or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) SBA impaired the Collateral;

6) SBA did not dispose of any of the Collateral;

7) SBA did not conduct a commercially reasonable sale;

8) SBA did not obtain the fair market value of the Collateral;

9) SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) SBA made errors or omissions in Loan Documents or administration of the Loan;

12) SBA did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) SBA impaired Guarantor's suretyship rights;

14) SBA modified the Note terms, other than to increase amounts due under the Note. If SBA modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

3364-00012 / DLB 49546540-01
Strategic Communications Group, Inc.

16) SBA has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

## 7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral, if any, pledged by Guarantor to secure this Guarantee. SBA has no duty to preserve or dispose of any Collateral.

## 8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes successors, and SBA includes successors and assigns.

## 9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses SBA incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

C. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

D. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral.

E. FINANCIAL STATEMENTS. Guarantor must give SBA financial statements as SBA requires.

F. SBA'S RIGHTS CUMULATIVE, NOT WAIVED. SBA may exercise any of its rights separately or together, as many times as it chooses. SBA may delay or forgo enforcing any of its rights without losing or impairing any of them.

G. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

H. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

I. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by SBA as to the Loan.

## 10. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

MAIL ANY NOTICE OF DEFAULT TO:
U.S. SMALL BUSINESS ADMINISTRATION
2120 Riverfront Drive
Little Rock, Arkansas, 72202

WHEN RECORDED MAIL TO:
U.S. SMALL BUSINESS ADMINISTRATION
360 Rainbow Blvd. South
Niagara Falls, NY 14303-1192
(716)282-4612

Strategic Communications Group, Inc.
# 9M49-00024 Loan No. EIDL 49546540-01

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED / FILED

26 OCT '01          -10 : 0 0 AM

RECORDED BOOK 0H18 PAGE 693

DOCUMEN...

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## PREFERRED MORTGAGE

Amount of Mortgage: $444,200.00

Maturity Date: October 2, 2031

Majestic Voyages, Inc.
Surfside 3 Marina Chelsea Piers, Pier 59, New York, New York 10011
(Mortgagor) 100%
U.S. Small Business Administration
(Mortgagee)

ON

THE WHOLE OF THE VESSEL Majestic Star

THIS PREFERRED MORTGAGE made and given this 2nd day of October 2001, by Majestic Voyages, Inc. (hereinafter designated and referred to as "Mortgagor").

WITNESSETH:

THAT, WHEREAS the Mortgagor is justly indebted to the Mortgagee in the sum of Four Hundred Forty-Four Thousand Two Hundred and no/100 dollars ($444,200.00), as evidenced by a certain Promissory Note dated October 2, 2001, the interest thereon at the rate of 4.000 per centum per annum, payable as follows: Signed by Strategic Communications Group, Inc and a Guaranty of same date signed by Mortgagor

Installment payments, including principal and interest, of Two Thousand Two Hundred Thirty-Five and no/100 ($2,235.00) Dollars monthly, will begin Twelve (12) months from the date of the promissory Note. Balance of principal and interest will be payable Thirty (30) Years from the date of the promissory Note.

WHEREAS, the Mortgagor is the sole owner of the 2000 98.4 Depth 9.8, Breadth 33, length 94.8 Vessel Called "Majestic Star" Official No. 1100715; Gross Tons 97(587ITC); Net Tons 87(199ITC); Home Port New York, New York; Place Issued National Vessel Doc Center; Issued May 18, 2001;

NOW, THEREFORE, The Mortgagor, for the purpose of securing the payment of said sum so owed to the Mortgagee, and the performance and observance of all the agreements, covenants and conditions herein contained, has granted, bargained, sold and mortgaged, and by these presents does grant, bargain, sell and mortgage unto the Mortgagee, the whole of said vessel, together with all her engines, boilers, machinery, masts, bowsprits, sails, boats, anchors, cables, chains, rigging, tackle, tools, pumps, apparel and furniture, equipment and supplies and all other appurtenances thereto appertaining and belonging, and also any and all additions, improvements and replacements hereinafter made in to said vessel, or any part thereof, or in or to her equipment and appurtenances aforesaid.

TO HAVE AND TO HOLD said vessel and all appurtenances thereunto belonging, including all such additions, improvements and replacements unto the Mortgagee, its successors and assigns, to the sole and only proper use, benefit, and behalf of the Mortgagee, its successors and assigns, forever:

PROVIDED ALWAYS, and the conditions of these presents are such that if the Mortgagor shall pay or cause to be paid to the Mortgagee, its successors and assigns, the debt ... and interest thereon, in accordance with the terms of this Mortgage and with the terms of said Note executed and given b... ...gagee for valuable consideration to the Mortgagor, and if the Mortgagor, shall duly perform all the ag... ...ditions hereafter set forth, then these presents shall be void

GOVERNMENT
EXHIBIT
B

and of no effect; otherwise, the same shall be, continue and remain in full force and effect. The Mortgagor hereby agrees to pay or cause to be paid the debt aforesaid according to the terms and conditions of said Note and of this Mortgage and to fulfill, perform and observe each and every one of the covenants, agreements and conditions herein contained.

The maturity date of this Mortgage shall be as of October 2, 2031

## ARTICLE I
## PARTICULAR COVENANTS OF THE MORTGAGE

The Mortgagor covenants and agrees as in this article set forth:

SECTION 1. At his own expense, so long as the indebtedness evidenced by said Note remains in any part outstanding, the Mortgagor will keep the vessel and its appurtenances insured in an amount equal to the full commercial value of and the same, but in any case for not less than the amount remaining unpaid on said indebtedness, with such hull insurance as the Mortgagee may require and otherwise with coverage satisfactory to the Mortgagee. The policy valuation in the hull policies shall not exceed the aggregate amount insured by hull policies. The hull insurance shall be placed under such form of policy as the Mortgagee may approve, insuring against the usual risks covered by such indebtedness, with such hull insurance as the Mortgagee may require and policies including four-fourths running down clause and Inchmaree clause. The Mortgagor will also at his own expense, if and when so required by the Mortgagee, keep the vessel insured for its full commercial value but in any case for not less than the amount remaining from time to time unpaid on the said indebtedness, against war risks and the risks of mines, torpedoes, bombs and aircraft, and covering damage to or destruction of said vessel caused by sabotage, malicious mischief, strikers, locked out workmen or persons taking part in labor disturbances or riots or civil commotions. All said insurance shall be placed with responsible underwriters and through responsible brokers all in good standing and satisfactory to the Mortgagee. All of said shall run for the account or whom it may concern, or in such other form fully covering the Mortgagee as may be satisfactory to the Mortgagee, any amount recovered or recoverable thereunder to be applied by the Mortgagee as follows:—

In the event of partial loss, if the Mortgagor is not in default under this Mortgage, the Mortgagee shall consent that the underwriters pay direct for repairs, salvage or other charges covered by insurance and/or reimburse the Mortgagor therefore, on evidence by certificate or otherwise satisfactory to the Mortgagee that the same have been paid by the Mortgagor, but if the Mortgagor is in default under this Mortgage, the Mortgagee shall be entitled to receive the proceeds of any such insurance and may apply such proceeds in the manner provided in Section 5 of Article II hereof.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.

The Mortgagor will also, at his own expense, keep the vessel fully covered by protection and indemnity insurance in a so-called protection and indemnity association or club in good standing and satisfactory to the Mortgagee or by clauses of like effect in a policy or policies issued by marine insurance companies and through brokers in good standing and satisfactory to the Mortgagee, such protection and indemnity also to protect the Mortgagee against any liability which the Mortgagor may incur.

All policies and/or binders and/or cover notes shall be delivered to the Mortgagee, and proper renewals of any expiring insurance shall be so delivered, not less than ten (10) days prior to the expiration of any expiring insurance, and the Mortgagee shall be furnished with evidence satisfactory to it of the maintenance as herein provided of any protection and indemnity insurance carried by any association or club.

The Mortgagor will cause said vessel to be continuously documented under the laws of the United States and maintained as a vessel of the United States.

Mortgagor shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department of agency thereof, nor remove the vessel from the limits of the territorial waters of the United States without first obtaining written permission of Mortgagee. Mortgagor shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel and condition of vessel is to be maintained in same condition as when Mortgaged with reasonable wear tear excepted.

SECTION 2. Mortgagor is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Mortgagor shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the good faith affidavit filed herewith and of said note has been duly taken. If a corporation, Mortgagor is duly organized and is and shall continue in good standing under the laws of the State of New York and authorized to do business and in good standing in any other State wherein the nature of Mortgagor's activities requires it to be so authorized.

SECTION 3. Mortgagor lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee

Strategic Communications Group, inc.
9M49-00024 / EIDL 49546540-01

against all persons whomsoever. Mortgagor shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Mortgagor against Mortgage and/or assignee under any past or future transaction.

SECTION 4. The Mortgagor will not do any act, nor voluntarily suffer nor permit any act to be done, whereby any insurance is or may be suspended, impaired for defeated, and will not suffer or permit the vessel to engage in any voyage or to carry any cargo not permitted by the policies of insurance in effect, without first covering the vessel to the amount herein provided for by insurance satisfactory to the Mortgagee for such voyage or the carriage of such cargo.

SECTION 5. Neither the Mortgagor nor the Master of the vessel shall have any right, power or authority to create, incur or permit to be imposed, and the Mortgagor agrees that there shall not be created, incurred or permitted to be imposed upon the vessel, any lien whatsoever except for crew's wages and salvage.

The Mortgagor agrees that there shall at all times be carried aboard the vessel with the ship's documents, a properly certified copy of this Mortgage, and that he will cause the same and the documents of the vessel to be exhibited by the Master to any person having business with the vessel which might give rise to a maritime lien upon the vessel or to the sale, conveyance or Mortgage thereof. The Mortgagor agrees to notify in writing in advance any person furnishing supplies or other necessaries to the vessel that neither the Mortgagor nor the Master have any right to create, incur or permit to be imposed upon the vessel any lien whatsoever except for crew's wages and salvage.

The Mortgagor further agrees to place and keep prominently in the pilot house and engine room of the vessel notices reading as follows:

"This vessel is covered by a first preferred Mortgage to the U.S. SMALL BUSINESS ADMINISTRATION, under authority of the SHIP MORTGAGE ACT, 1920, as amended. Under the terms of said Mortgage, neither the owner nor the Master of the vessel have any right, power or authority to create, incur or permit to be imposed upon the vessel any liens whatsoever, except for crew's wages or salvage."

If a libel should be filed against the vessel or if the vessel is otherwise levied against or taken into custody by virtue of any legal proceedings in any court, the Mortgagor will, within fifteen (15) days thereafter, cause the said vessel to be released and the lien to be discharged.

SECTION 6. At all times, at his own expense, the Mortgagor will exercise due diligence to maintain and preserve the vessel in as good condition, working order and repair as at the time of the execution of this Mortgage, ordinary wear and tear and depreciation, with the vessel kept in proper repair, excepted, and will keep the vessel in such condition as will enable her to pass such inspection as may be required by marine underwriters as a condition to their writing such insurance and in such amounts as is required under this Mortgage.

SECTION 7. At all times the Mortgagor will afford the Mortgagee or its authorized representatives full and complete access to the vessel for the purpose of inspecting the same and her cargoes and ship's papers; and to examine the Mortgagor's related accounts and records; and shall certify quarterly and if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

SECTION 8. The Mortgagor will pay and discharge, when due and payable from time to time, all taxes, assessments and governmental charges, fines or penalties lawfully imposed on the vessel or upon the income and profits thereof.

SECTION 9. The Mortgagee shall have the right but shall be under no obligation to make any payments and to do any acts which under the terms of this Mortgage the Mortgagor is required to make or do, but the making of any such payment or the doing of any such act by the Mortgagee shall not relieve the Mortgagor of any default in that respect or constitute in any respect a waiver of such default. The Mortgagor will reimburse the Mortgagee promptly, with interest at the rate of six per centum (6%) per annum, for any and all payments and expenditures so made or incurred by the Mortgagee at any time in taking possession of the vessel or otherwise protecting its rights hereunder and for any and all damages sustained by the Mortgagee from or by reason of any default or defaults of the Mortgagor, and all such payments, expenditures, advances and expenses shall be and are secured by this Mortgage.

SECTION 10. The Mortgagor will not make any sale or other transfer or Mortgage of the vessel or of any interest therein without the written consent of the Mortgagee first being obtained, and such written consent to any one such sale or transfer shall not be deemed a waiver of this provision in respect to any subsequent proposed sale or transfer of interest; but the Mortgagor may, for uses lawful for American vessels and subject to all the provisions of this Mortgage, charter the vessel to citizens of the United States as defined in the Merchant Marine Act of 1920, subject to this Mortgage.

SECTION 11. The Mortgagor will comply with and satisfy all the provisions of the Ship Mortgage Act, 1920, as amended, and of all acts amendatory thereof or supplementary thereto, compliance with which is necessary to establish and maintain this Mortgage as a first preferred Mortgage under said Act.

SECTION 12. The Mortgagor will, at any time upon request, execute such other and further instruments. if any, as may be necessary to vest in the Mortgagee a first preferred Mortgage lien on said vessel in accordance with the intent of this instrument, and will execute such further assurances and instruments as may be required by the Mortgagee to safeguard the rights of the Mortgagee and carry out the intent of this instrument.

SECTION 13. The Mortgagor covenants and warrants that he has good title to the whole of said vessel and its appurtenances and that the same are free from all liens and encumbrances, and that he will warrant and defend the same against the claims of all and every person or persons whomsoever.

## ARTICLE II
## DEFAULT

SECTION 1. In case one or more of the following events, herein termed "Defaults", shall happen viz:

  (a) Default shall be made in the payment of principal and/or interest as above provided; or

  (b) The Mortgagor shall sell or Mortgage or attempt to sell or Mortgage the vessel, or any part thereof or transfer the flag of the vessel without the written consent of the Mortgagee; or

  (c) The vessel shall be libeled or levied upon or taken by virtue of any attachment or execution against the Mortgagor or otherwise subjected to lien or claim and not released within fifteen (15) days as herein provided, or the Mortgagor shall remove or attempt to remove the vessel beyond the limits of the United States save on voyage with the intention of returning to the United States; or

  (d) The Mortgagor shall make an assignment for the benefit of his creditors. or a receiver or receivers of his property or of said vessel shall be appointed by any court, or a petition for adjudication as bankrupt shall be filed by or against the Mortgagor, or in the event of the commencement of any proceeding under any bankruptcy or insolvency laws or any laws relating to the relief of debtors, readjustment of indebtedness, reorganization, composition or extension by or against the Mortgagor; or

  (e) Default shall be made in the prompt and faithful performance or observance of any of the other covenants, agreements or conditions herein contained and such default shall continue for fifteen (15) days after written notice thereof shall have been given to the Mortgagor by the Mortgagee.

THEN, AND IN EACH AND EVERY CASE, THE MORTGAGEE THEREUPON MAY-

  (a) Declare said promissory note to be immediately due and payable, and upon such declaration said note, shall together with any accrued interest thereon, become immediately due and payable.

  (b) Recover judgment for any amount due upon said indebtedness and collect the same out of any property of the Mortgagor without its security under this Mortgage being in any way affected or impaired thereby; and/or

  (c) Take possession of the vessel, wherever the same may be found and hold, lease, charter, operate or otherwise use the vessel as the Mortgagee may deem to its best advantage; and/or

  (d) Take possession of the vessel wherever the same may be found; and with or without so taking possession, sell the same at public auction free from any claim by the Mortgagor in law, in equity, in admiralty, or by Statute after first giving proper notice and such sale may be held at such place or places and at such time or times as the Mortgagee may specify; and may be conducted without bringing the vessel to a place of sale, and in such manner generally as the Mortgagee may deem its best advantage, and the Mortgagee may become the purchaser at any such sale; and/or

  (e) Foreclose this Mortgage pursuant to the terms and provisions of the Ship Mortgage Act, 1920, as amended; and/or

  (f) Proceed, at its option, in any other lawful manner to enforce its rights under this Mortgage.

SECTION 2. When any right to take possession of the vessel shall occur, the Mortgagee may take possession of the same wherever the same may be found, without prior demand and without legal process and for that purpose may enter upon any dock, pier or other premises where the vessel may be, and the Mortgagee may take possession of the vessel upon the high seas or in any port, harbor or other place; but without impairing the said right, the Mortgagor agrees that upon demand he will deliver the vessel at his own cost at such place or places as the Mortgagee shall designate and that the Mortgagee shall have the right to take the vessel at any dock, pier or other premises of the Mortgagor and to keep said vessel there without charge, or to dock the vessel at any other place at the expense of the Mortgagor. Also, that the mailing postage prepaid, of any demand or notice addressed to the Mortgagor

Strategic Communications Group, Inc.
9M49-00024 / EIDL 49546540-01

at his last address known to the Mortgagee, shall be sufficient demand or notice where demand or notice is required under this Mortgage.

The Mortgagor further agrees that in any legal proceedings which may be taken by the Mortgagee for the enforcement of its rights hereunder, the Mortgagee shall be entitled to exercise the right of entry in taking possession, all other rights and powers herein conferred, including appointment of a receiver or receivers of the vessel and of the earnings, income, revenue, rents, issues or profits thereof, with such powers as the court making such appointments shall confer.

SECTION 3. Each and every power or remedy herein specifically given to the Mortgagee shall be cumulative and shall be in addition to every other power or remedy herein specifically given or now or hereafter existing at law, in equity, in admiralty or by Statute, and each and every power of remedy, whether specifically herein given or otherwise so existing, may be exercised from time to time and as often and in such order as may be deemed expedient by the Mortgagee, and the exercise or the beginning of the exercise of any power or remedy shall not be deemed a waiver of the right to exercise at the same time or thereafter any other power or remedy. No delay nor omission by the Mortgagee in the exercise of any right or power accruing upon any event of default as above defined shall be construed to be a waiver of such default or any acquiescence therein; nor shall the acceptance by the Mortgagee of any security or of any payment after such default or any payment on account of any past default be deemed a waiver of any right to take advantage of any other default or of any past default not completely cured thereby.

SECTION 4. If at any time after default and prior to the actual sale of the vessel by the Mortgagee, the Mortgagor shall offer to cure completely all defaults and to pay all expenses, advances and damages of the Mortgagee consequent on such default or defaults, together with interest at the highest legal rate, then the Mortgagee may in its discretion, but without any obligation to do so, accept such offer and payment and restore the Mortgagor to his former position.

SECTION 5. The proceeds of any sale and the net earnings from any management, charter or other use of the vessel by the Mortgagee under any of the powers above specified and the proceeds of any judgement collected by the Mortgagee for any default hereunder, together with the proceeds of any insurance, and of any claims for damages on account of the vessel received by the Mortgagee while exercising any of such powers, shall be applied as follows:

FIRST: To the payment of all expenses and charges, including the expense of sale, the expense of taking of possession, and any other expenses or advances made or incurred by the Mortgagee in the protection of its rights hereunder including its expenses for legal advice and services; and to the payment of any damages sustained by the Mortgagee from the default or defaults of the Mortgagor with interest as provided herein, and, at the discretion of the Mortgagee, to provide adequate indemnity against liens claiming priority over this Mortgage.

SECOND: To the payment of the indebtedness secured hereby with interest to the date of such payment.

THIRD: Any surplus thereafter remaining shall belong and be paid to the Mortgagor, his successors and assigns, or to whomever may be entitled to receive the same, or as a court of competent jurisdiction may direct. Mortgagee shall be entitled to collect any deficiency from Mortgagor.

SECTION 6. All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Mortgagor on demand with interest at 9% per annum and until so paid shall be a debt due from Mortgagor to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Mortgagor of any obligation or default with respect thereto.

### ARTICLE III
### POSSESSION UNTIL DEFAULT

Until default shall have been made in the due and punctual payment of any installment of the principal of the indebtedness secured hereby, or until there shall have been a default in the conditions, covenants or agreements herein contained, the Mortgagor shall be suffered and permitted to retain possession of the vessel and to manage, operate and use the same and to collect, receive, take, use and enjoy the earnings, income revenue, rents, issues and profits subjected to the terms and conditions of this instrument.

### ARTICLE IV - SUNDRY PROVISIONS

All covenants and agreements of Mortgagee herein contained shall bind Mortgagor, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Mortgagor herein, "his" shall mean "their."

The Vessel covered by this Mortgage is not a towboat, barge, scow, lighter, carfloat, canal boat or tank vessel of less than 25 gross tons, as such words are used in 46 USC 922.

FUTURE ADVANCES, This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Mortgagor has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized.

State of New York  
County of _New York_  ) ss:

Majestic Voyages, Inc.

By: _____  
Spiros E. Kopelakis, President

By: _____  
Shirley B. Dreifus, Secretary

On the _18th_ day of _October_ in the year _2001_ before me the undersigned, a Notary Public in and for said state, personally appeared _Spiros E. Kopelakis_ _Shirley B. Dreifus_ personally known to me or proved to me on the basis of satisfactory evidence to be an individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____  
Notary Public

Elizabeth M. Metro  
Registration #4677468  
NOTARY PUBLIC, STATE OF NEW YORK  
Qualified in Niagara County  
My Commission Expires January 31, 2003

AFFIDAVIT, AS TO GOOD FAITH, LIENS, ETC.

STATE OF _____  ) ss:  
COUNTY OF _____  )

being (severally) duly sworn, depose(s) that he is (they are) the individual Mortgagor(s) _____  
General Partner (s) of _____  
The Partnership, (Title) _____  
of _____ , the corporation, described in and who (which) executed the foregoing Mortgage; and that the said Mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditor of the Mortgagor or any lienor of the Mortgaged vessel(s). There are no liens, encumbrances, charges or Mortgages outstanding against said vessel, other than the lien of the foregoing Mortgage.

If Mortgagor is a corporation, this affidavit is made pursuant to authority of its Board of Directors.

Subscribed and sworn to before me this _____ day of _____ , 20_____ .

_____  
NOTARY PUBLIC



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

## (DISASTER LOANS)

| | |
|---|---|
| SBA Loan # | DLB 49546540-01 |
| Control # | 9M49-00024 |
| Guarantor | Majestic Voyages, Inc. |
| Borrower | Strategic Communications Group, Inc. |
| Date | October 2, 2001 |
| Note Amount | $444,200.00 |

### 1. GUARANTEE:

Guarantor unconditionally guarantees payment to SBA of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when SBA makes written demand upon Guarantor. SBA is not required to seek payment from any other source before demanding payment from Guarantor.

### 2. NOTE:

The "Note" is the promissory note dated October 2, 2001 in the principal amount of Four Hundred Forty-Four Thousand Two Hundred and no/100 Dollars, from Borrower to SBA. It includes any assumption, renewal, substitution, or replacement of the Note.

### 3. DEFINITIONS:

"Collateral" means property, if any, taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

### 4. SBA'S GENERAL POWERS:

SBA may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.  Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.  Release any Borrower or any guarantor of the Note;

D.  Compromise or settle with the Borrower or any guarantor of the Note;

E.  Substitute or release any of the Collateral, whether or not SBA receives anything in return;

F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against SBA.

## 5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

## 6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after SBA disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after SBA disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) SBA failed to obtain any guarantee;

2) SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) SBA or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) SBA impaired the Collateral;

6) SBA did not dispose of any of the Collateral;

7) SBA did not conduct a commercially reasonable sale;

8) SBA did not obtain the fair market value of the Collateral;

9) SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) SBA made errors or omissions in Loan Documents or administration of the Loan;

12) SBA did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) SBA impaired Guarantor's suretyship rights;

14) SBA modified the Note terms, other than to increase amounts due under the Note. If SBA modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

3364-00012 / DLB 49546540-01
Strategic Communications Group, Inc.

16) SBA has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. **DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral, if any, pledged by Guarantor to secure this Guarantee. SBA has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes successors, and SBA includes successors and assigns.

9. **GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses SBA incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

C. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

D. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral.

E. FINANCIAL STATEMENTS. Guarantor must give SBA financial statements as SBA requires.

F. SBA'S RIGHTS CUMULATIVE, NOT WAIVED. SBA may exercise any of its rights separately or together, as many times as it chooses. SBA may delay or forgo enforcing any of its rights without losing or impairing any of them.

G. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

H. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

I. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by SBA as to the Loan.

10. **GUARANTOR ACKNOWLEDGMENT OF TERMS.**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.



| U.S. Small Business Adminstration | Date: **February 12, 2003** |
| --- | --- |
| **SECOND MODIFICATION OF NOTE** <br> (DISASTER LOANS) | Current Loan Amount: **$287,300.00** |
| | Current Annual Interest Rate: **4.000%** |

**Control # 3364-00014**                                **Loan # DLB 49550740-06**

1.  **NOTE:** The "Note" is the SBA note signed by Borrower, dated **October 2, 2001** in the amount of **One Hundred Forty-Five Thousand and no/100** Dollars, payable to SBA, including any modifications.

2.  **CURRENT PAYMENT TERMS:** Including terms modified by this agreement, the current payment terms of the Note are: The loan amount is **$287,300.00** Dollars. The interest rate is **4.000%** per year. Payments of **$1,429.00** are due every **month** beginning **November 2, 2003**. All remaining principal and accrued interest is due and payable on **October 2, 2031**. In addition to installment payments established herein, Borrower will make a supplemental monthly payment equal to **10%** of Borrower's net earnings as computed before depreciation and after officer's compensation, taxes, and principal payments against this Loan. Borrower will make each supplemental monthly payment no later than 120 days following the close of Borrower's fiscal year ending **December 31**. The determination of net earnings will be made by reviewing either audited financial statements, or, if there are no audited financial statements, federal tax returns.

3.  **TERMS HISTORY:** For ease of reference only, original and modified Note terms are:

| | Original Note | First Modification | This Modification |
| --- | --- | --- | --- |
| Date | October  2, 2001 | October 10, 2002 | February 12, 2003 |
| Note Amount | $145,000.00 | $145,000.00 | $287,300.00 |
| Interest Rate | 4.000% | 4.000% | 4.000% |
| Payments | $730.00, monthly | $737.00, monthly | $1,429.00, monthly, and 10% of net earnings, monthly |
| Maturity Date | October  2, 2031 | October  2, 2031 | October  2, 2031 |

4.  **EFFECT OF THIS MODIFICATION:** All terms of the Note remain unchanged by this agreement except terms that are expressly modified. This Modification of Note becomes a part of the original Note and has the same effect as if its terms were in the original Note when it was signed.

5.  **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

Corporate Seal

Dated this ___ day of ___, 20 03

Corporate Execution

Majestic Star, Inc.

By _____
Spiros E. Kostakis, President

By _____
Shirley B. Dreifus, Secretary

GOVERNMENT
EXHIBIT
2

SBA FORM 2133 (5-00)                                                                                          Page 1



| | | |
|---|---|---|
| | U.S. Small Business Adminstration | Date: **October 2, 2001** |
| | **NOTE** | Loan Amount: **$145,000.00** |
| | (SECURED DISASTER LOANS) | Annual Interest Rate: **4.000%** |

Control # 3364-00014      Loan # DLB 49550740-06

1. **PROMISE TO PAY:** In return for a loan, Borrower promises to pay to the order of SBA the amount of <u>One Hundred Forty-Five Thousand and no/100</u> Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

2. **DEFINITIONS:** A) "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note. B) "Guarantor" means each person or entity that signs a guarantee of payment of this Note. C) "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

3. **PAYMENT TERMS:** Borrower must make all payments at the place SBA designates. Borrower may prepay this Note in part or in full at any time, without notice or penalty. Borrower must pay principal and interest payments of $730.00 every **month** beginning **Twelve (12)** months from the date of the Note. SBA will apply each installment payment first to pay interest accrued to the day SBA receives the payment and will then apply any remaining balance to reduce principal. All remaining principal and accrued interest is due and payable **Thirty (30) Years** from the date of the Note.

4. **DEFAULT:** Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower: A) Fails to comply with any provision of this Note, the Loan Authorization and Agreement, or other Loan Documents; B) Defaults on any other SBA loan; C) Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; D) Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; E) Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; F) Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay this Note; G) Fails to pay any taxes when due; H) Becomes the subject of a proceeding under any bankruptcy or insolvency law; I) Has a receiver or liquidator appointed for any part of their business or property; J) Makes an assignment for the benefit of creditors; K) Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay this Note; L) Dies; M) Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or, N) Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay this Note.

5. **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: A) Require immediate payment of all amounts owing under this Note; B) Have recourse to collect all amounts owing from any Borrower or Guarantor; C) File suit and obtain judgment; D) Take possession of any Collateral; or, E) Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: A) Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; B) Collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; C) Release anyone obligated to pay this Note; D) Compromise, release, renew, extend or substitute any of the Collateral; and E) Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. **WHEN FEDERAL LAW APPLIES:** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

MAIL ANY NOTICE OF DEFAULT TO:
U.S. SMALL BUSINESS ADMINISTRATION
2120 Riverfront Drive Suite 100
Little Rock, Arkansas, 72202

WHEN RECORDED MAIL TO:
U.S. SMALL BUSINESS ADMINISTRATION
360 Rainbow Blvd. South
Niagara Falls, NY  14303-1192
(716)282-4612

Majestic Star, Inc.
# 3364-00014 Loan No. DLB 49550740-06

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED / FILED

26 OCT '01          -10 : 0.0 AM

RECORDED BOOK 01-118  PAGE 691

DOCUMENTATION OFFICER  *Zena L. Fithry*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## PREFERRED MORTGAGE

Amount of Mortgage: $145,000.00                                    Maturity Date: October  2, 2031

Majestic Star, Inc.
C/O Surfside 3 Marina, Chelsea Piers, Pier 59, New York, New York  10011
(Mortgagor) 100%
U.S. Small Business Administration
(Mortgagee)

ON

THE WHOLE OF THE VESSEL Star of America

THIS PREFERRED MORTGAGE made and given this 2nd day of October 2001, by Majestic Star, Inc. (hereinafter designated and referred to as "Mortgagor").

### WITNESSETH:

THAT, WHEREAS the Mortgagor is justly indebted to the Mortgagee in the sum of One Hundred Forty-Five Thousand and no/100 dollars ($145,000.00), as evidenced by a certain Promissory Note dated October  2, 2001, the interest thereon at the rate of 4.000 per centum per annum, payable as follows: * signed by Majestic Star, Inc. and a Guaranty of the same date signed by Mortgagor
Installment payments, including principal and interest, of Seven Hundred Thirty and no/100 ($730.00) Dollars monthly, will begin Twelve (12) months from the date of the promissory Note. Balance of principal and interest will be payable Thirty (30) Years from the date of the promissory Note.

WHEREAS, the Mortgagor is the sole owner of the 1991 103.4' length, 24' breadth, 4' depth, aluminum hull material Vessel Called "Star of America" Official No. 973452; Gross Tons 67; Net Tons 57; Home Port Surfside 3 Marina Chelsea Piers, Pier 59, New York, New York; Place Issued National Vessel Doc Center; Issued March 13, 1998;

NOW, THEREFORE, The Mortgagor, for the purpose of securing the payment of said sum so owed to the Mortgagee, and the performance and observance of all the agreements, covenants and conditions herein contained, has granted, bargained, sold and mortgaged, and by these presents does grant, bargain, sell and mortgage unto the Mortgagee, the whole of said vessel, together with all her engines, boilers, machinery, masts, bowsprits, sails, boats, anchors, cables, chains, rigging, tackle, tools, pumps, apparel and furniture, equipment and supplies and all other appurtenances thereto appertaining and belonging, and also any and all additions, improvements and replacements hereinafter made in to said vessel, or any part thereof, or in or to her equipment and appurtenances aforesaid.

TO HAVE AND TO HOLD said vessel and all appurtenances thereunto belonging, including all such additions, improvements and replacements unto the Mortgagee, its successors and assigns, to the sole and only proper use, benefit, and behalf of the Mortgagee, its successors and assigns, forever.

PROVIDED ALWAYS, and the conditions of these presents are such that if the Mortgagor shall pay or cause to be paid to the Mortgagee, its successors and assigns, the debt aforesaid and interest t[...] the terms of this Mortgage and with the terms of said Note executed and given by the Mortgagor to the M[...] sideration to the Mortgagor, and if the Mortgagor, shall duly perform all the agreements, covenants and [...] th, then these presents shall be void

GOVERNMENT
EXHIBIT
2A

Page 1

Majestic Star, Inc.
3364-00014 / DLB 49550740-06

against all persons whomsoever. Mortgagor shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Mortgagor against Mortgagee and/or assignee under any past or future transaction.

SECTION 4.    The Mortgagor will not do any act, nor voluntarily suffer nor permit any act to be done, whereby any insurance is or may be suspended, impaired for defeated, and will not suffer or permit the vessel to engage in any voyage or to carry any cargo not permitted by the policies of insurance in effect, without first covering the vessel to the amount herein provided for by insurance satisfactory to the Mortgagee for such voyage or the carriage of such cargo.

SECTION 5.    Neither the Mortgagor nor the Master of the vessel shall have any right, power or authority to create, incur or permit to be imposed, and the Mortgagor agrees that there shall not be created, incurred or permitted to be imposed upon the vessel, any lien whatsoever except for crew's wages and salvage.

The Mortgagor agrees that there shall at all times be carried aboard the vessel with the ship's documents, a properly certified copy of this Mortgage, and that he will cause the same and the documents of the vessel to be exhibited by the Master to any person having business with the vessel which might give rise to a maritime lien upon the vessel or to the sale, conveyance or Mortgage thereof. The Mortgagor agrees to notify in writing in advance any person furnishing supplies or other necessaries to the vessel that neither the Mortgagor nor the Master have any right to create, incur or permit to be imposed upon the vessel any lien whatsoever except for crew's wages and salvage.

The Mortgagor further agrees to place and keep prominently in the pilot house and engine room of the vessel notices reading as follows:

"This vessel is covered by a first preferred Mortgage to the U.S. SMALL BUSINESS ADMINISTRATION, under authority of the SHIP MORTGAGE ACT, 1920, as amended. Under the terms of said Mortgage, neither the owner nor the Master of the vessel have any right, power or authority to create, incur or permit to be imposed upon the vessel any liens whatsoever, except for crew's wages or salvage."

If a libel should be filed against the vessel or if the vessel is otherwise levied against or taken into custody by virtue of any legal proceedings in any court, the Mortgagor will, within fifteen (15) days thereafter, cause the said vessel to be released and the lien to be discharged.

SECTION 6.    At all times, at his own expense, the Mortgagor will exercise due diligence to maintain and preserve the vessel in as good condition, working order and repair as at the time of the execution of this Mortgage, ordinary wear and tear and depreciation, with the vessel kept in proper repair, excepted, and will keep the vessel in such condition as will enable her to pass such inspection as may be required by marine underwriters as a condition to their writing such insurance and in such amounts as is required under this Mortgage.

SECTION 7.    At all times the Mortgagor will afford the Mortgagee or its authorized representatives full and complete access to the vessel for the purpose of inspecting the same and her cargoes and ship's papers; and to examine the Mortgagor's related accounts and records; and shall certify quarterly and if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

SECTION 8.    The Mortgagor will pay and discharge, when due and payable from time to time, all taxes, assessments and governmental charges, fines or penalties lawfully imposed on the vessel or upon the income and profits thereof.

SECTION 9.    The Mortgagee shall have the right but shall be under no obligation to make any payments and to do any acts which under the terms of this Mortgage the Mortgagor is required to make or do, but the making of any such payment or the doing of any such act by the Mortgagee shall not relieve the Mortgagor of any default in that respect or constitute in any respect a waiver of such default. The Mortgagor will reimburse the Mortgagee promptly, with interest at the rate of six per centum (6%) per annum, for any and all payments and expenditures so made or incurred by the Mortgagee at any time in taking possession of the vessel or otherwise protecting its rights hereunder and for any and all damages sustained by the Mortgagee from or by reason of any default or defaults of the Mortgagor, and all such payments, expenditures, advances and expenses shall be and are secured by this Mortgage.

SECTION 10.    The Mortgagor will not make any sale or other transfer or Mortgage of the vessel or of any interest therein without the written consent of the Mortgagee first being obtained, and such written consent to any one such sale or transfer shall not be deemed a waiver of this provision in respect to any subsequent proposed sale or transfer of interest; but the Mortgagor may, for uses lawful for American vessels and subject to all the provisions of this Mortgage, charter the vessel to citizens of the United States as defined in the Merchant Marine Act of 1920, subject to this Mortgage.

SECTION 11.    The Mortgagor will comply with and satisfy all the provisions of the Ship Mortgage Act, 1920, as amended, and of all acts amendatory thereof or supplementary thereto, compliance with which is necessary to establish and maintain this Mortgage as a first preferred Mortgage under said Act.

SECTION 12.    The Mortgagor will, at any time upon request, execute such other and further instruments, if any, as may be necessary to vest in the Mortgagee a first preferred Mortgage lien on said vessel in accordance with the intent of this instrument, and will execute such further assurances and instruments as may be required by the Mortgagee to safeguard the rights of the Mortgagee and carry out the intent of this instrument.

SECTION 13.    The Mortgagor covenants and warrants that he has good title to the whole of said vessel and its appurtenances and that the same are free from all liens and encumbrances, and that he will warrant and defend the same against the claims of all and every person or persons whomsoever.

## ARTICLE II
## DEFAULT

SECTION 1.    In case one or more of the following events, herein termed "Defaults", shall happen viz:

(a)    Default shall be made in the payment of principal and/or interest as above provided; or

(b)    The Mortgagor shall sell or Mortgage or attempt to sell or Mortgage the vessel, or any part thereof or transfer the flag of the vessel without the written consent of the Mortgagee; or

(c)    The vessel shall be libeled or levied upon or taken by virtue of any attachment or execution against the Mortgagor or otherwise subjected to lien or claim and not released within fifteen (15) days as herein provided, or the Mortgagor shall remove or attempt to remove the vessel beyond the limits of the United States save on voyage with the intention of returning to the United States; or

(d)    The Mortgagor shall make an assignment for the benefit of his creditors, or a receiver or receivers of his property or of said vessel shall be appointed by any court, or a petition for adjudication as bankrupt shall be filed by or against the Mortgagor, or in the event of the commencement of any proceeding under any bankruptcy or insolvency laws or any laws relating to the relief of debtors, readjustment of indebtedness, reorganization, composition or extension by or against the Mortgagor; or

(e)    Default shall be made in the prompt and faithful performance or observance of any of the other covenants, agreements or conditions herein contained and such default shall continue for fifteen (15) days after written notice thereof shall have been given to the Mortgagor by the Mortgagee.

THEN, AND IN EACH AND EVERY CASE, THE MORTGAGEE THEREUPON MAY-

(a)    Declare said promissory note to be immediately due and payable, and upon such declaration said note, shall together with any accrued interest thereon, become immediately due and payable.

(b)    Recover judgment for any amount due upon said indebtedness and collect the same out of any property of the Mortgagor without its security under this Mortgage being in any way affected or impaired thereby; and/or

(c)    Take possession of the vessel wherever the same may be found and hold, lease, charter, operate or otherwise use the vessel as the Mortgagee may deem to its best advantage; and/or

(d)    Take possession of the vessel wherever the same may be found; and with or without so taking possession, sell the same at public auction free from any claim by the Mortgagor in law, in equity, in admiralty, or by Statute after first giving proper notice and such sale may be held at such place or places and at such time or times as the Mortgagee may specify; and may be conducted without bringing the vessel to a place of sale, and in such manner generally as the Mortgagee may deem its best advantage, and the Mortgagee may become the purchaser at any such sale; and/or

(e)    Foreclose this Mortgage pursuant to the terms and provisions of the Ship Mortgage Act, 1920, as amended; and/or

(f)    Proceed, at its option, in any other lawful manner to enforce its rights under this Mortgage.

SECTION 2.    When any right to take possession of the vessel shall occur, the Mortgagee may take possession of the same wherever the same may be found, without prior demand and without legal process and for that purpose may enter upon any dock, pier or other premises where the vessel may be, and the Mortgagee may take possession of the vessel upon the high seas or in any port, harbor or other place; but without impairing the said right, the Mortgagor agrees that upon demand he will deliver the vessel at his own cost at such place or places as the Mortgagee shall designate and that the Mortgagee shall have the right to take the vessel at any dock, pier or other premises of the Mortgagor and to keep said vessel there without charge, or to dock the vessel at any other place at the expense of the Mortgagor. Also, that the mailing postage prepaid, of any demand or notice addressed to the Mortgagor

Majestic Star, Inc.
3364-00014 / DLB 49550740-06

at his last address known to the Mortgagee, shall be sufficient demand or notice where demand or notice is required under this Mortgage.

The Mortgagor further agrees that in any legal proceedings which may be taken by the Mortgagee for the enforcement of its rights hereunder, the Mortgagee shall be entitled to exercise the right of entry in taking possession, all other rights and powers herein conferred, including appointment of a receiver or receivers of the vessel and of the earnings, income, revenue, rents, issues or profits thereof, with such powers as the court making such appointments shall confer.

SECTION 3.    Each and every power or remedy herein specifically given to the Mortgagee shall be cumulative and shall be in addition to every other power or remedy herein specifically given or now or hereafter existing at law, in equity, in admiralty or by Statute, and each and every power of remedy, whether specifically herein given or otherwise so existing, may be exercised from time to time and as often and in such order as may be deemed expedient by the Mortgagee, and the exercise or the beginning of the exercise of any power or remedy shall not be deemed a waiver of the right to exercise at the same time or thereafter any other power or remedy. No delay nor omission by the Mortgagee in the exercise of any right or power accruing upon any event of default as above defined shall be construed to be a waiver of such default or any acquiescence therein; nor shall the acceptance by the Mortgagee of any security or of any payment after such default or any payment on account of any past default be deemed a waiver of any right to take advantage of any other default or of any past default not completely cured thereby.

SECTION 4.    If at any time after default and prior to the actual sale of the vessel by the Mortgagee, the Mortgagor shall offer to cure completely all defaults and to pay all expenses, advances and damages of the Mortgagee consequent on such default or defaults, together with interest at the highest legal rate, then the Mortgagee may in its discretion, but without any obligation to do so, accept such offer and payment and restore the Mortgagor to his former position.

SECTION 5.    The proceeds of any sale and the net earnings from any management, charter or other use of the vessel by the Mortgagee under any of the powers above specified and the proceeds of any judgement collected by the Mortgagee for any default hereunder, together with the proceeds of any insurance, and of any claims for damages on account of the vessel received by the Mortgagee while exercising any of such powers, shall be applied as follows:

FIRST:    To the payment of all expenses and charges, including the expense of sale, the expense of taking of possession, and any other expenses or advances made or incurred by the Mortgagee in the protection of its rights hereunder including its expenses for legal advice and services; and to the payment of any damages sustained by the Mortgagee from the default or defaults of the Mortgagor with interest as provided herein, and, at the discretion of the Mortgagee, to provide adequate indemnity against liens claiming priority over this Mortgage.

SECOND:    To the payment of the indebtedness secured hereby with interest to the date of such payment.

THIRD:    Any surplus thereafter remaining shall belong and be paid to the Mortgagor, his successors and assigns, or to whomever may be entitled to receive the same, or as a court of competent jurisdiction may direct. Mortgagee shall be entitled to collect any deficiency from Mortgagor.

SECTION 6.    All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Mortgagor on demand with interest at 9% per annum and until so paid shall be a debt due from Mortgagor to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Mortgagor of any obligation or default with respect thereto.

### ARTICLE III
### POSSESSION UNTIL DEFAULT

Until default shall have been made in the due and punctual payment of any installment of the principal of the indebtedness secured hereby, or until there shall have been a default in the conditions, covenants or agreements herein contained, the Mortgagor shall be suffered and permitted to retain possession of the vessel and to manage, operate and use the same and to collect, receive, take, use and enjoy the earnings, income revenue, rents, issues and profits subjected to the terms and conditions of this instrument.

### ARTICLE IV - SUNDRY PROVISIONS

All covenants and agreements of Mortgagee herein contained shall bind Mortgagor, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Mortgagor herein, "his" shall mean "their."

The Vessel covered by this Mortgage is not a towboat, barge, scow, lighter, carfloat, canal boat or tank vessel of less than 25 gross tons, as such words are used in 46 USC 922.

FUTURE ADVANCES, This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Mortgagor has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized.

State of New York )
County of New York ) ss:

On the 18th day of October, in the year 200_ before me the undersigned, a Notary Public in and for said state, personally appeared _Spiros E. Kopelakis_ _Shirley B. Dreifus_, personally known to me or proved to me on the basis of satisfactory evidence to be an individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Majestic Star, Inc.

By: _____
Spiros E. Kopelakis, President

By: _____
Shirley B. Dreifus, Secretary

Elizabeth M. Metro
Registration #4677468
NOTARY PUBLIC, STATE OF NEW YORK
Qualified in Niagara County
My Commission Expires January 31, 2003

_____
Notary Public

### AFFIDAVIT, AS TO GOOD FAITH, LIENS, ETC.

STATE OF _____ )
                                                      ) ss:
COUNTY OF _____ )

being (severally) duly sworn, depose(s) that he is (they are) the individual
Mortgagor(s) _____
General Partner (s) of _____
The Partnership, (Title) _____
of _____, the corporation, described in and who (which) executed the foregoing Mortgage; and that the said Mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditor of the Mortgagor or any lienor of the Mortgaged vessel(s). There are no liens, encumbrances, charges or Mortgages outstanding against said vessel, other than the lien of the foregoing Mortgage.

If Mortgagor is a corporation, this affidavit is made pursuant to authority of its Board of Directors.

Subscribed and sworn to before me this _____ day of _____, 20_____.

_____
NOTARY PUBLIC

ADD 70

SBA LOAN NUMBER: 49550740-06

*EXHIBIT 2A*

RECEIVED

2003 MAR -5 PM 3: 14

US SBA DAO 1
LEGAL DEPT.

CONTROL NUMBER: 3364-00014

# MODIFICATION
## OF
## PREFERRED
## MORTGAGE

$287,300.00
Amount of Modified Mortgage

October 2, 2031
Final Maturity Date

Majestic Star, Inc.
(Mortgagor)

SOLE OWNER, 100%

TO

SMALL BUSINESS ADMINISTRATION (Mortgagee)

100%
ON

THE WHOLE OF THE VESSEL "Star of America" O.N. 973452; Gross Tons 67; Net Tons 57; Home Port Surfside 3 Marina Chelsea Piers, Pier 60, New York, New York; Place Issued National Vessel Doc Center; Issued March 13, 1998

FOR THE PURPOSE OF AMENDING THE PREFERRED MORTGAGE ON THE VESSEL Star of America made and given by Mortgagors to Mortgagee on October 2, 2001 received for record by THE UNITED STATES COAST GUARD, NATIONAL VESSEL DOCUMENTATION CENTER on October 26, 2001 at 10:00 am, recorded in Book No. 01-118, Page 691, and in consideration of the premises hereinafter set forth, it is agreed between Mortgagors and Mortgagee that the aforementioned Preferred Mortgage shall be amended and modified in the following particulars:

The principal sum of the Promissory Note said PREFERRED MORTGAGE secures has been increased from $145,000.00 to $287,300.00, and the monthly installment amount has been increased from $737.00 to $1,429.00, pursuant to a Modification of Promissory Note dated February 12, 2003. The final maturity of said Note as modified is October 2, 2031.

Except as hereinabove set forth, the aforementioned Preferred Mortgage shall remain otherwise in full force and effect.

IN WITNESS WHEREOF, Mortgagors have executed this MODIFICATION OF PREFERRED MORTGAGE this 21 day of _____ 2003

COUNTY OF New York )
STATE OF New York )ss

Shirley Dreifus +

I, Rosemary N. Manoni a notary public in and for said county and state, do hereby certify that Spiros E. Kopelakis personally appeared before me this day and acknowledged that they, being informed of the contents of the instrument, signed, delivered and executed the foregoing instrument. Witness my hand and notarial seal this the 21st day of February , 20 03

_____
Notary Public

My Commission Expires: _____

ROSEMARY N. MANONI
Notary Public, State of New York
No. 41-4946063
Qualified in Queens County
Commission Expires 1 27 2007

IN WITNESS WHEREOF, the Mortgagee has executed this MODIFICATION OF PREFERRED MORTGAGE this 15th day of February , 20 03 .

U.S. Small Business Administration

By: _____
James A. Pryor
Attorney/Advisor
Area 1 - Disaster Assistance

STATE OF NEW YORK )
)ss
COUNTY OF NIAGARA )

The undersigned, a Notary Public in and for said County, in the State aforesaid, do hereby certify that James Pryor , personally known to me to be the same person whose name is subscribed in the foregoing instrument as Attorney/Advisor, for the Administrator of the Small Business Administration, appeared before me in person, and acknowledged that he/she, being duly authorized, signed, and delivered said instrument as the free and voluntary act for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal, this 15th day of February , 2003 .

_____
Notary Public

My Commission Expires: _____

GINA R. STREET
Registration # 01ST5037720
Notary Public, State of New York
Qualified in Erie County
My Commission Expires January 3, 2007

Control Number:

MAIL ANY NOTICE OF DEFAULT TO:
U.S. SMALL BUSINESS ADMINISTRATION
2120 Riverfront Drive Suite 100
Little Rock, Arkansas, 72202

**NATIONAL VESSEL** DOCUMENTATION CENTER
USCG
RECEIVED / FILED

WHEN RECORDED MAIL TO:
U.S. SMALL BUSINESS ADMINISTRATION
360 Rainbow Blvd. South
Niagara Falls, NY 14303-1192
(716)282-4612

**26 OCT '01**          -10 : 0 0 AM

RECORDED: BOOK 01-118 PAGE 694

DOCUMENTATION OFFI...

Majestic Star, Inc.
# 3364-00014 Loan No. DLB 49550740-06

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## PREFERRED MORTGAGE

Amount of Mortgage: $145,000.00                                    Maturity Date: October 2, 2031

Majestic Voyages, Inc.
Surfside 3 Marina Chelsea Piers, Pier 59, New York, New York 10011
(Mortgagor) 100%
U.S. Small Business Administration
(Mortgagee)

ON

THE WHOLE OF THE VESSEL Majestic Star

THIS PREFERRED MORTGAGE made and given this 2nd day of October 2001, by Majestic Voyages, Inc. (hereinafter designated and referred to as "Mortgagor").

WITNESSETH:

THAT, WHEREAS the Mortgagor is justly indebted to the Mortgagee in the sum of One Hundred Forty-Five Thousand and no/100 dollars ($145,000.00), as evidenced by a certain Promissory Note dated October 2, 2001, the interest thereon at the rate of 4.000 per centum per annum, payable as follows: * signed by Majestic Star, Inc. and a guarantee of the same date signed by Mortgagor
Installment payments, including principal and interest, of Seven Hundred Thirty and no/100 ($730.00) Dollars monthly, will begin Twelve (12) months from the date of the promissory Note. Balance of principal and interest will be payable Thirty (30) Years from the date of the promissory Note.

WHEREAS, the Mortgagor is the sole owner of the 2000 94.8' length, 33.0' breadth, 9.8' depth, steel hull material Vessel Called "Majestic Star" Official No. 1100715; Gross Tons 97; Net Tons 87; Home Port Surfside 3 Marina Chelsea Piers, Pier 59, New York, New York; Place Issued National Vessel Doc Center; Issued May 18, 2001;

                                    (5871TC)        (1991TC)
NOW, THEREFORE, The Mortgagor, for the purpose of securing the payment of said sum so owed to the Mortgagee, and the performance and observance of all the agreements, covenants and conditions herein contained, has granted, bargained, sold and mortgaged, and by these presents does grant, bargain, sell and mortgage unto the Mortgagee, the whole of said vessel, together with all her engines, boilers, machinery, masts, bowsprits, sails, boats, anchors, cables, chains, rigging, tackle, tools, pumps, apparel and furniture, equipment and supplies and all other appurtenances thereto appertaining and belonging, and also any and all additions, improvements and replacements hereinafter made in to said vessel, or any part thereof, or in or to her equipment and appurtenances aforesaid.

TO HAVE AND TO HOLD said vessel and all appurtenances thereunto belonging, including all such additions, improvements and replacements unto the Mortgagee, its successors and assigns, to the sole and only proper use, benefit, and behalf of the Mortgagee, its successors and assigns, forever:

PROVIDED ALWAYS, and the conditions of these presents are such that if the Mortgagor shall pay or cause to be paid to the Mortgagee, its successors and assigns, the debt aforesaid an[...]ance with the terms of this Mortgage and with the terms of said Note executed and given by the Mortgag[...] **GOVERNMENT EXHIBIT** [...]luable consideration to the Mortgagor, and if the Mortgagor, shall duly perform all the agreements, cove[...]fter set forth, then these presents shall be void

GOVERNMENT EXHIBIT
2B

and of no effect; otherwise, the same shall be, continue and remain in full force and effect. The Mortgagor hereby agrees to pay or cause to be paid the debt aforesaid according to the terms and conditions of said Note and of this Mortgage and to fulfill, perform and observe each and every one of the covenants, agreements and conditions herein contained.

The maturity date of this Mortgage shall be as of October 2, 2031.

## ARTICLE I
## PARTICULAR COVENANTS OF THE MORTGAGE

The Mortgagor covenants and agrees as in this article set forth:

SECTION 1.    At his own expense, so long as the indebtedness evidenced by said Note remains in any part outstanding, the Mortgagor will keep the vessel and its appurtenances insured in an amount equal to the full commercial value of and the same, but in any case for not less than the amount remaining unpaid on said indebtedness, with such hull insurance as the Mortgagee may require and otherwise with coverage satisfactory to the Mortgagee. The policy valuation in the hull policies shall not exceed the aggregate amount insured by hull policies. The hull insurance shall be placed under such form of policy as the Mortgagee may approve, insuring against the usual risks covered by such indebtedness, with such hull insurance as the Mortgagee may require and policies including four-fourths running down clause and Inchmaree clause. The Mortgagor will also at his own expense, if and when so required by the Mortgagee, keep the vessel insured for its full commercial value but in any case for not less than the amount remaining from time to time unpaid on the said indebtedness, against war risks and the risks of mines, torpedoes, bombs and aircraft, and covering damage to or destruction of said vessel caused by sabotage, malicious mischief, strikers, locked out workmen or persons taking part in labor disturbances or riots or civil commotions. All said insurance shall be placed with responsible underwriters and through responsible brokers all in good standing and satisfactory to the Mortgagee. All of said shall run for the account or whom it may concern, or in such other form fully covering the Mortgagee as may be satisfactory to the Mortgagee, any amount recovered or recoverable thereunder to be applied by the Mortgagee as follows:--

In the event of partial loss, if the Mortgagor is not in default under this Mortgage, the Mortgagee shall consent that the underwriters pay direct for repairs, salvage or other charges covered by insurance and/or reimburse the Mortgagor therefore, on evidence by certificate or otherwise satisfactory to the Mortgagee that the same have been paid by the Mortgagor, but if the Mortgagor is in default under this Mortgage, the Mortgagee shall be entitled to receive the proceeds of any such insurance and may apply such proceeds in the manner provided in Section 5 of Article II hereof.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.

The Mortgagor will also, at his own expense, keep the vessel fully covered by protection and indemnity insurance in a so-called protection and indemnity association or club in good standing and satisfactory to the Mortgagee or by clauses of like effect in a policy or policies issued by marine insurance companies and through brokers in good standing and satisfactory to the Mortgagee, such protection and indemnity also to protect the Mortgagee against any liability which the Mortgagor may incur.

All policies and/or binders and/or cover notes shall be delivered to the Mortgagee, and proper renewals of any expiring insurance shall be so delivered, not less than ten (10) days prior to the expiration of any expiring insurance, and the Mortgagee shall be furnished with evidence satisfactory to it of the maintenance as herein provided of any protection and indemnity insurance carried by any association or club.

The Mortgagor will cause said vessel to be continuously documented under the laws of the United States and maintained as a vessel of the United States.

Mortgagor shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department of agency thereof, nor remove the vessel from the limits of the territorial waters of the United States without first obtaining written permission of Mortgagee. Mortgagor shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel and condition of vessel is to be maintained in same condition as when Mortgaged with reasonable wear tear excepted.

SECTION 2.    Mortgagor is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Mortgagor shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the good faith affidavit filed herewith and of said note has been duly taken. If a corporation, Mortgagor is duly organized and is and shall continue in good standing under the laws of the State of New York and authorized to do business and in good standing in any other State wherein the nature of Mortgagor's activities requires it to be so authorized.

SECTION 3.    Mortgagor lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee

Majestic Star, Inc.
3364-00014 / DLB 49550740-06

against all persons whomsoever. Mortgagor shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Mortgagor against Mortgage and/or assignee under any past or future transaction.

SECTION 4.    The Mortgagor will not do any act, nor voluntarily suffer nor permit any act to be done, whereby any insurance is or may be suspended, impaired for defeated, and will not suffer or permit the vessel to engage in any voyage or to carry any cargo not permitted by the policies of insurance in effect, without first covering the vessel to the amount herein provided for by insurance satisfactory to the Mortgagee for such voyage or the carriage of such cargo.

SECTION 5.    Neither the Mortgagor nor the Master of the vessel shall have any right, power or authority to create, incur or permit to be imposed, and the Mortgagor agrees that there shall not be created, incurred or permitted to be imposed upon the vessel, any lien whatsoever except for crew's wages and salvage.

The Mortgagor agrees that there shall at all times be carried aboard the vessel with the ship's documents, a properly certified copy of this Mortgage, and that he will cause the same and the documents of the vessel to be exhibited by the Master to any person having business with the vessel which might give rise to a maritime lien upon the vessel or to the sale, conveyance or Mortgage thereof. The Mortgagor agrees to notify in writing in advance any person furnishing supplies or other necessaries to the vessel that neither the Mortgagor nor the Master have any right to create, incur or permit to be imposed upon the vessel any lien whatsoever except for crew's wages and salvage.

The Mortgagor further agrees to place and keep prominently in the pilot house and engine room of the vessel notices reading as follows:

"This vessel is covered by a first preferred Mortgage to the U.S. SMALL BUSINESS ADMINISTRATION, under authority of the SHIP MORTGAGE ACT, 1920, as amended. Under the terms of said Mortgage, neither the owner nor the Master of the vessel have any right, power or authority to create, incur or permit to be imposed upon the vessel any liens whatsoever, except for crew's wages or salvage."

If a libel should be filed against the vessel or if the vessel is otherwise levied against or taken into custody by virtue of any legal proceedings in any court, the Mortgagor will, within fifteen (15) days thereafter, cause the said vessel to be released and the lien to be discharged.

SECTION 6.    At all times, at his own expense, the Mortgagor will exercise due diligence to maintain and preserve the vessel in as good condition, working order and repair as at the time of the execution of this Mortgage, ordinary wear and tear and depreciation, with the vessel kept in proper repair, excepted, and will keep the vessel in such condition as will enable her to pass such inspection as may be required by marine underwriters as a condition to their writing such insurance and in such amounts as is required under this Mortgage.

SECTION 7.    At all times the Mortgagor will afford the Mortgagee or its authorized representatives full and complete access to the vessel for the purpose of inspecting the same and her cargoes and ship's papers; and to examine the Mortgagor's related accounts and records; and shall certify quarterly and if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

SECTION 8.    The Mortgagor will pay and discharge, when due and payable from time to time, all taxes, assessments and governmental charges, fines or penalties lawfully imposed on the vessel or upon the income and profits thereof.

SECTION 9.    The Mortgagee shall have the right but shall be under no obligation to make any payments and to do any acts which under the terms of this Mortgage the Mortgagor is required to make or do, but the making of any such payment or the doing of any such act by the Mortgagee shall not relieve the Mortgagor of any default in that respect or constitute in any respect a waiver of such default. The Mortgagor will reimburse the Mortgagee promptly, with interest at the rate of six per centum (6%) per annum, for any and all payments and expenditures so made or incurred by the Mortgagee at any time in taking possession of the vessel or otherwise protecting its rights hereunder and for any and all damages sustained by the Mortgagee from or by reason of any default or defaults of the Mortgagor, and all such payments, expenditures, advances and expenses shall be and are secured by this Mortgage.

SECTION 10.    The Mortgagor will not make any sale or other transfer or Mortgage of the vessel or of any interest therein without the written consent of the Mortgagee first being obtained, and such written consent to any one such sale or transfer shall not be deemed a waiver of this provision in respect to any subsequent proposed sale or transfer of interest; but the Mortgagor may, for uses lawful for American vessels and subject to all the provisions of this Mortgage, charter the vessel to citizens of the United States as defined in the Merchant Marine Act of 1920, subject to this Mortgage.

SECTION 11.    The Mortgagor will comply with and satisfy all the provisions of the Ship Mortgage Act, 1920, as amended, and of all acts amendatory thereof or supplementary thereto, compliance with which is necessary to establish and maintain this Mortgage as a first preferred Mortgage under said Act.

SECTION 12.    The Mortgagor will, at any time upon request, execute such other and further instruments, if any, as may be necessary to vest in the Mortgagee a first preferred Mortgage lien on said vessel in accordance with the intent of this instrument, and will execute such further assurances and instruments as may be required by the Mortgagee to safeguard the rights of the Mortgagee and carry out the intent of this instrument.

SECTION 13.    The Mortgagor covenants and warrants that he has good title to the whole of said vessel and its appurtenances and that the same are free from all liens and encumbrances, and that he will warrant and defend the same against the claims of all and every person or persons whomsoever.

## ARTICLE II
## DEFAULT

SECTION 1.    In case one or more of the following events, herein termed "Defaults", shall happen viz:

(a)    Default shall be made in the payment of principal and/or interest as above provided; or

(b)    The Mortgagor shall sell or Mortgage or attempt to sell or Mortgage the vessel, or any part thereof or transfer the flag of the vessel without the written consent of the Mortgagee; or

(c)    The vessel shall be libeled or levied upon or taken by virtue of any attachment or execution against the Mortgagor or otherwise subjected to lien or claim and not released within fifteen (15) days as herein provided, or the Mortgagor shall remove or attempt to remove the vessel beyond the limits of the United States save on voyage with the intention of returning to the United States; or

(d)    The Mortgagor shall make an assignment for the benefit of his creditors, or a receiver or receivers of his property or of said vessel shall be appointed by any court, or a petition for adjudication as bankrupt shall be filed by or against the Mortgagor, or in the event of the commencement of any proceeding under any bankruptcy or insolvency laws or any laws relating to the relief of debtors, readjustment of indebtedness, reorganization, composition or extension by or against the Mortgagor; or

(e)    Default shall be made in the prompt and faithful performance or observance of any of the other covenants, agreements or conditions herein contained and such default shall continue for fifteen (15) days after written notice thereof shall have been given to the Mortgagor by the Mortgagee.

THEN, AND IN EACH AND EVERY CASE, THE MORTGAGEE THEREUPON MAY-

(a)    Declare said promissory note to be immediately due and payable, and upon such declaration said note, shall together with any accrued interest thereon, become immediately due and payable.

(b)    Recover judgment for any amount due upon said indebtedness and collect the same out of any property of the Mortgagor without its security under this Mortgage being in any way affected or impaired thereby; and/or

(c)    Take possession of the vessel wherever the same may be found and hold, lease, charter, operate or otherwise use the vessel as the Mortgagee may deem to its best advantage; and/or

(d)    Take possession of the vessel wherever the same may be found; and with or without so taking possession, sell the same at public auction free from any claim by the Mortgagor in law, in equity, in admiralty, or by Statute after first giving proper notice and such sale may be held at such place or places and at such time or times as the Mortgagee may specify; and may be conducted without bringing the vessel to a place of sale, and in such manner generally as the Mortgagee may deem its best advantage, and the Mortgagee may become the purchaser at any such sale; and/or

(e)    Foreclose this Mortgage pursuant to the terms and provisions of the Ship Mortgage Act, 1920, as amended; and/or

(f)    Proceed, at its option, in any other lawful manner to enforce its rights under this Mortgage.

SECTION 2.    When any right to take possession of the vessel shall occur, the Mortgagee may take possession of the same wherever the same may be found, without prior demand and without legal process and for that purpose may enter upon any dock, pier or other premises where the vessel may be, and the Mortgagee may take possession of the vessel upon the high seas or in any port, harbor or other place; but without impairing the said right, the Mortgagor agrees that upon demand he will deliver the vessel at his own cost at such place or places as the Mortgagee shall designate and that the Mortgagee shall have the right to take the vessel at any dock, pier or other premises of the Mortgagor and to keep said vessel there without charge, or to dock the vessel at any other place at the expense of the Mortgagor. Also, that the mailing postage prepaid, of any demand or notice addressed to the Mortgagor

Majestic Star, Inc.
3364-00014 / DLB 49550740-06

at his last address known to the Mortgagee, shall be sufficient demand or notice where demand or notice is required under this Mortgage.

The Mortgagor further agrees that in any legal proceedings which may be taken by the Mortgagee for the enforcement of its rights hereunder, the Mortgagee shall be entitled to exercise the right of entry in taking possession, all other rights and powers herein conferred, including appointment of a receiver or receivers of the vessel and of the earnings, income, revenue, rents, issues or profits thereof, with such powers as the court making such appointments shall confer.

SECTION 3. Each and every power or remedy herein specifically given to the Mortgagee shall be cumulative and shall be in addition to every other power or remedy herein specifically given or now or hereafter existing at law, in equity, in admiralty or by Statute, and each and every power of remedy, whether specifically herein given or otherwise so existing, may be exercised from time to time and as often and in such order as may be deemed expedient by the Mortgagee, and the exercise or the beginning of the exercise of any power or remedy shall not be deemed a waiver of the right to exercise at the same time or thereafter any other power or remedy. No delay nor omission by the Mortgagee in the exercise of any right or power accruing upon any event of default as above defined shall be construed to be a waiver of such default or any acquiescence therein; nor shall the acceptance by the Mortgagee of any security or of any payment after such default or any payment on account of any past default be deemed a waiver of any right to take advantage of any other default or of any past default not completely cured thereby.

SECTION 4. If at any time after default and prior to the actual sale of the vessel by the Mortgagee, the Mortgagor shall offer to cure completely all defaults and to pay all expenses, advances and damages of the Mortgagee consequent on such default or defaults, together with interest at the highest legal rate, then the Mortgagee may in its discretion, but without any obligation to do so, accept such offer and payment and restore the Mortgagor to his former position.

SECTION 5. The proceeds of any sale and the net earnings from any management, charter or other use of the vessel by the Mortgagee under any of the powers above specified and the proceeds of any judgement collected by the Mortgagee for any default hereunder, together with the proceeds of any insurance, and of any claims for damages on account of the vessel received by the Mortgagee while exercising any of such powers, shall be applied as follows:

FIRST:    To the payment of all expenses and charges, including the expense of sale, the expense of taking of possession, and any other expenses or advances made or incurred by the Mortgagee in the protection of its rights hereunder including its expenses for legal advice and services; and to the payment of any damages sustained by the Mortgagee from the default or defaults of the Mortgagor with interest as provided herein, and, at the discretion of the Mortgagee, to provide adequate indemnity against liens claiming priority over this Mortgage.

SECOND:   To the payment of the indebtedness secured hereby with interest to the date of such payment.

THIRD:    Any surplus thereafter remaining shall belong and be paid to the Mortgagor, his successors and assigns, or to whomever may be entitled to receive the same, or as a court of competent jurisdiction may direct. Mortgagee shall be entitled to collect any deficiency from Mortgagor.

SECTION 6. All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Mortgagor on demand with interest at 9% per annum and until so paid shall be a debt due from Mortgagor to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Mortgagor of any obligation or default with respect thereto.

## ARTICLE III
## POSSESSION UNTIL DEFAULT

Until default shall have been made in the due and punctual payment of any installment of the principal of the indebtedness secured hereby, or until there shall have been a default in the conditions, covenants or agreements herein contained,the Mortgagor shall be suffered and permitted to retain possession of the vessel and to manage, operate and use the same and to collect, receive, take, use and enjoy the earnings, income revenue, rents, issues and profits subjected to the terms and conditions of this instrument.

## ARTICLE IV - SUNDRY PROVISIONS

All covenants and agreements of Mortgagee herein contained shall bind Mortgagor, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Mortgagor herein, "his" shall mean "their."

The Vessel covered by this Mortgage is not a towboat, barge, scow, lighter, carfloat, canal boat or tank vessel of less than 25 gross tons, as such words are used in 46 USC 922.

FUTURE ADVANCES, This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Mortgagor has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized.

State of New York }
County of *New York* } ss:

On the *18th* day of *October* in the year *2001* before me the undersigned, a Notary Public in and for said state, personally appeared *Spiros E. Kopelakis and Shirley B. Dreifus* personally known to me or proved to me on the basis of satisfactory evidence to be an individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Elizabeth M Metro
Registration #4677468
NOTARY PUBLIC, STATE OF NEW YORK
Qualified in Niagara County
My Commission Expires January 31, 2003

Notary Public

Majestic Voyages, Inc.

By: _____
Spiros E. Kopelakis, President

By: _____
Shirley B. Dreifus, Secretary

AFFIDAVIT, AS TO GOOD FAITH, LIENS, ETC.

STATE OF _____ )
                             ) ss:
COUNTY OF _____ )

being (severally) duly sworn, depose(s) that he is (they are) the individual
Mortgagor(s) _____
General Partner (s) of _____
The Partnership, (Title) _____
of _____, the corporation,
described in and who (which) executed the foregoing Mortgage; and that the said Mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditor of the Mortgagor or any lienor of the Mortgaged vessel(s). There are no liens, encumbrances, charges or Mortgages outstanding against said vessel, other than the lien of the foregoing Mortgage.

If Mortgagor is a corporation, this affidavit is made pursuant to authority of its Board of Directors.

Subscribed and sworn to before me this _____ day of _____, 20_____.

_____
NOTARY PUBLIC



U.S. Small Business Adminstration
# UNCONDITIONAL GUARANTEE
# (DISASTER LOANS)

| SBA Loan # | DLB 49550740-06 |
|---|---|
| Control # | 3364-00014 |
| Guarantor | Majestic Voyages, Inc. |
| Borrower | Majestic Star, Inc. |
| Date | February 12, 2003 |
| Note Amount | $287,300.00 |

## 1. GUARANTEE:

Guarantor unconditionally guarantees payment to SBA of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when SBA makes written demand upon Guarantor. SBA is not required to seek payment from any other source before demanding payment from Guarantor.

## 2. NOTE:

The "Note" is the promissory note dated February 12, 2003 in the principal amount of Two Hundred Eighty-Seven Thousand Three Hundred and no/100 Dollars, from Borrower to SBA. It includes any assumption, renewal, substitution, or replacement of the Note.

## 3. DEFINITIONS:

"Collateral" means property, if any, taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

## 4. SBA'S GENERAL POWERS:

SBA may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not SBA receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against SBA.

5. **FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

A. Guarantor waives all rights to:

   1) Require presentment, protest, or demand upon Borrower;
   2) Redeem any Collateral before or after SBA disposes of it;
   3) Have any disposition of Collateral advertised; and
   4) Require a valuation of Collateral before or after SBA disposes of it.

B. Guarantor waives any notice of:

   1) Any default under the Note;
   2) Presentment, dishonor, protest, or demand;
   3) Execution of the Note;
   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5) Any change in the financial condition or business operations of Borrower or any guarantor;
   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

   1) SBA failed to obtain any guarantee;
   2) SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3) SBA or others improperly valued or inspected the Collateral;
   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;
   5) SBA impaired the Collateral;
   6) SBA did not dispose of any of the Collateral;
   7) SBA did not conduct a commercially reasonable sale;
   8) SBA did not obtain the fair market value of the Collateral;
   9) SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
   10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
   11) SBA made errors or omissions in Loan Documents or administration of the Loan;
   12) SBA did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
   13) SBA impaired Guarantor's suretyship rights;
   14) SBA modified the Note terms, other than to increase amounts due under the Note. If SBA modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
   15) Borrower has avoided liability on the Note; or

3364-00013 / DLB 49551140-05
Majestic Voyages, Inc.

    16) SBA has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.  **DUTIES AS TO COLLATERAL:**
    Guarantor will preserve the Collateral, if any, pledged by Guarantor to secure this Guarantee. SBA has no duty to preserve or dispose of any Collateral.

8.  **SUCCESSORS AND ASSIGNS:**
    Under this Guarantee, Guarantor includes successors, and SBA includes successors and assigns.

9.  **GENERAL PROVISIONS:**
    A.  ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses SBA incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.
    B.  SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.
    C.  JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.
    D.  DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral.
    E.  FINANCIAL STATEMENTS. Guarantor must give SBA financial statements as SBA requires.
    F.  SBA'S RIGHTS CUMULATIVE, NOT WAIVED. SBA may exercise any of its rights separately or together, as many times as it chooses. SBA may delay or forgo enforcing any of its rights without losing or impairing any of them.
    G.  ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.
    H.  SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.
    I.  CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by SBA as to the Loan.

10. **GUARANTOR ACKNOWLEDGMENT OF TERMS.**
    Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

11. **GUARANTOR NAME(S) AND SIGNATURE(S):**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Dated this 21st day of February , 20 03.

State of New York )
                                                    ) ss:
County of New York )

Majestic Voyages, Inc.

By: _____
Spiros E. Kopelakis, President

By: _____
Shirley B. Dreifus, Secretary

On the 21st day of February in the year 2003 , before me the undersigned, a Notary Public in and for said state, personally appeared Spiros E. Kopelakis, and Shirley B. Dreifus personally known to me or proved to me on the basis of satisfactory evidence to be an individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Rosemary N. Manoni
Notary Public

ROSEMARY N. MANONI
Notary Public, State of New York
No. 41-4946063
Qualified in Queens County
Commission Expires 1/2-2007



U.S. Small Business Adminstration

# UNCONDITIONAL GUARANTEE

# (DISASTER LOANS)

| SBA Loan # | DLB 49550740-06 |
|---|---|
| Control # | 3364-00014 |
| Guarantor | Majestic Voyages, Inc. |
| Borrower | Majestic Star, Inc. |
| Date | October 2, 2001 |
| Note Amount | $145,000.00 |

### 1.  GUARANTEE:

Guarantor unconditionally guarantees payment to SBA of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when SBA makes written demand upon Guarantor. SBA is not required to seek payment from any other source before demanding payment from Guarantor.

### 2.  NOTE:

The "Note" is the promissory note dated <u>October  2, 2001</u> in the principal amount of <u>One Hundred Forty-Five Thousand and no/100</u> Dollars, from Borrower to SBA. It includes any assumption, renewal, substitution, or replacement of the Note.

### 3.  DEFINITIONS:

"Collateral" means property, if any,  taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

### 4.  SBA'S GENERAL POWERS:

SBA may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.  Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.  Release any Borrower or any guarantor of the Note;

D.  Compromise or settle with the Borrower or any guarantor of the Note;

E.  Substitute or release any of the Collateral, whether or not SBA receives anything in return;

F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.  Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

G. Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against SBA.

## 5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

## 6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:
   1) Require presentment, protest, or demand upon Borrower;
   2) Redeem any Collateral before or after SBA disposes of it;
   3) Have any disposition of Collateral advertised; and
   4) Require a valuation of Collateral before or after SBA disposes of it.

B. Guarantor waives any notice of:
   1) Any default under the Note;
   2) Presentment, dishonor, protest, or demand;
   3) Execution of the Note;
   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5) Any change in the financial condition or business operations of Borrower or any guarantor;
   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:
   1) SBA failed to obtain any guarantee;
   2) SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3) SBA or others improperly valued or inspected the Collateral;
   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;
   5) SBA impaired the Collateral;
   6) SBA did not dispose of any of the Collateral;
   7) SBA did not conduct a commercially reasonable sale;
   8) SBA did not obtain the fair market value of the Collateral;
   9) SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
   10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
   11) SBA made errors or omissions in Loan Documents or administration of the Loan;
   12) SBA did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
   13) SBA impaired Guarantor's suretyship rights;
   14) SBA modified the Note terms, other than to increase amounts due under the Note. If SBA modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
   15) Borrower has avoided liability on the Note; or

3364-00013 / DLB 49551140-05
Majestic Voyages, Inc.

    16) SBA has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

## 7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral, if any, pledged by Guarantor to secure this Guarantee. SBA has no duty to preserve or dispose of any Collateral.

## 8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes successors, and SBA includes successors and assigns.

## 9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses SBA incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

C. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

D. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral.

E. FINANCIAL STATEMENTS. Guarantor must give SBA financial statements as SBA requires.

F. SBA'S RIGHTS CUMULATIVE, NOT WAIVED. SBA may exercise any of its rights separately or together, as many times as it chooses. SBA may delay or forgo enforcing any of its rights without losing or impairing any of them.

G. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

H. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

I. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by SBA as to the Loan.

## 10. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

## 11. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Dated this _18_ day of _October_ , 20_01_.

State of New York    )
                     ) ss:
County of            )

On the _____ day of _____ in the year
_____ before me the undersigned, a Notary Public in and for
said state, personally appeared

_____ ,

personally known to me or proved to me on the basis of
satisfactory evidence to be an individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledge to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

_____
Notary Public

Majestic Voyages, Inc.

By: _____
Spiros E. Kopelakis, President

By: _____
Shirley B. Dreifus, Secretary

SBA LOAN NUMBER: 49550740-06

CONTROL NUMBER: 3364-00014

# MODIFICATION
# OF
# PREFERRED
# MORTGAGE

$287,300.00                                                    October 2, 2031
Amount of Modified Mortgage                                    Final Maturity Date

Majestic Voyages, Inc.
(Mortgagor)

SOLE OWNER, 100%

TO
SMALL BUSINESS ADMINISTRATION (Mortgagee)

100%
ON

THE WHOLE OF THE VESSEL "Majestic Star" O.N. 1100715; Gross Tons 97; Net Tons 87; Home Port Surfside 3 Marina Chelsea Piers, Pier 60, New York, New York 10011; Place Issued National Vessel Doc Center; Issued May 18, 2001

FOR THE PURPOSE OF AMENDING THE PREFERRED MORTGAGE ON THE VESSEL Majestic Star made and given by Mortgagors to Mortgagee on February 13, 2003, received for record by THE UNITED STATES COAST GUARD, NATIONAL VESSEL DOCUMENTATION CENTER on October 26, 2001 at 10:00 am, recorded in Book No. 01-118, Page 694, and in consideration of the premises hereinafter set forth, it is agreed between Mortgagors and Mortgagee that the aforementioned Preferred Mortgage shall be amended and modified in the following particulars:

The principal sum of the Promissory Note said PREFERRED MORTGAGE secures has been increased from $145,000.00 to $287,300.00, and the monthly installment amount has been increased from $737.00 to $1,429.00, pursuant to a Modification of Promissory Note dated February 13, 2003. The final maturity of said Note as modified is October 2, 2031.

Except as hereinabove set forth, the aforementioned Preferred Mortgage shall remain otherwise in full force and effect.

IN WITNESS WHEREOF, Mortgagors have executed this MODIFICATION OF PREFERRED MORTGAGE this 21 _____ day of Feb _____ 20 03

COUNTY OF New York )

STATE OF New York )ss

Shieley B. Dreifus

I, Rosemary N. Manoni , a notary public in and for said county and state, do hereby certify that Spiros E. Koupelakos personally appeared before me this day and acknowledged that they, being informed of the contents of the instrument, signed, delivered and executed the foregoing instrument. Witness my hand and notarial seal this the 25th day of February , 20 03

_____
Notary Public

My Commission Expires:_____

ROSEMARY N. MANONI
Notary Public, State of New York
No. 41-4946063
Qualified in Queens County
Commission Expires 1/27/2007

IN WITNESS WHEREOF, the Mortgagee has executed this MODIFICATION OF PREFERRED MORTGAGE this 15th day of February 20 03 .

U.S. Small Business Administration

By: _____
James A. Pryor
Attorney/Advisor
Area 1 - Disaster Assistance

STATE OF NEW YORK )
                    )ss
COUNTY OF NIAGARA )

The undersigned, a Notary Public in and for said County, in the State aforesaid, do hereby certify that James Pryor , personally known to me to be the same person whose name is subscribed in the foregoing instrument as Attorney/Advisor, for the Administrator of the Small Business Administration, appeared before me in person, and acknowledged that he/she, being duly authorized, signed, and delivered said instrument as the free and voluntary act for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal, this 15th day of February , 2003 .

_____
Notary Public

My Commission Expires: _____

Control Number:

GINA R. STREET
Registration # 01ST5037720
Notary Public, State of New York
Qualified in Erie County
My Commission Expires January 3, 2007



U.S. Small Business Adminstration

**FIRST MODIFICATION OF NOTE**

(DISASTER LOANS)

**Date: February 13, 2003**

**Current Loan Amount: $642,700.00**

**Current Annual Interest Rate: 4.000%**

Control # 3364-00013                      Loan # DLB 49551140-05

1.  **NOTE:** The "Note" is the SBA note signed by Borrower, dated **October 2, 2001** in the amount of **Four Hundred One Thousand Two Hundred and no/100** Dollars, payable to SBA, including any modifications.

2.  **CURRENT PAYMENT TERMS:** Including terms modified by this agreement, the current payment terms of the Note are: The loan amount is **$642,700.00** Dollars. The interest rate is **4.000%** per year. Payments of **$3,271.00** are due every **month** beginning **November 2, 2003**. All remaining principal and accrued interest is due and payable on **October 2, 2031**. In addition to installment payments established herein, Borrower will make a supplemental monthly payment equal to **10%** of Borrower's net earnings as computed before depreciation and after officer's compensation, taxes, and principal payments against this Loan. Borrower will make each supplemental monthly payment no later than 120 days following the close of Borrower's fiscal year ending **December 31**. The determination of net earnings will be made by reviewing either audited financial statements, or, if there are no audited financial statements, federal tax returns.

3.  **TERMS HISTORY:** For ease of reference only, original and modified Note terms are:

| | Original Note | This Modification |
|---|---|---|
| Date | October 2, 2001 | February 13, 2003 |
| Note Amount | $401,200.00 | $642,700.00 |
| Interest Rate | 4.000% | 4.000% |
| Payments | $2,019.00, monthly | $3,271.00, monthly, and 10% of net earnings, monthly |
| Maturity Date | October 2, 2031 | October 2, 2031 |

4.  **EFFECT OF THIS MODIFICATION:** All terms of the Note remain unchanged by this agreement except terms that are expressly modified. This Modification of Note becomes a part of the original Note and has the same effect as if its terms were in the original Note when it was signed.

5.  **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

Corporate Seal

Dated this 28 day of Feb , 19 03

Corporate Execution

Majestic Voyages, Inc.

By: _____
Spiros E. Kopelakis, President

_____
rley B. Dreifus, Secretary

GOVERNMENT
EXHIBIT
3

SBA FORM 2139 (3-00)



| U.S. Small Business Adminstration | Date: **October  2, 2001** |
| **NOTE** | Loan Amount: **$401,200.00** |
| (SECURED DISASTER LOANS) | Annual Interest Rate: **4.000%** |

Control # 3364-00013                              Loan # DLB 49551140-05

1. **PROMISE TO PAY:** In return for a loan, Borrower promises to pay to the order of SBA the amount of **Four Hundred One Thousand Two Hundred and no/100** Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

2. **DEFINITIONS:** A) "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note. B) "Guarantor" means each person or entity that signs a guarantee of payment of this Note. C) "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

3. **PAYMENT TERMS:** Borrower must make all payments at the place SBA designates. Borrower may prepay this Note in part or in full at any time, without notice or penalty. Borrower must pay principal and interest payments of **$2,019.00** every **month** beginning **Twelve (12)** months from the date of the Note. SBA will apply each installment payment first to pay interest accrued to the day SBA receives the payment and will then apply any remaining balance to reduce principal. All remaining principal and accrued interest is due and payable **Thirty (30) Years** from the date of the Note.

4. **DEFAULT:** Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower: A) Fails to comply with any provision of this Note, the Loan Authorization and Agreement, or other Loan Documents; B) Defaults on any other SBA loan; C) Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; D) Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; E) Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; F) Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay this Note; G) Fails to pay any taxes when due; H) Becomes the subject of a proceeding under any bankruptcy or insolvency law; I) Has a receiver or liquidator appointed for any part of their business or property; J) Makes an assignment for the benefit of creditors; K) Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay this Note; L) Dies; M) Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or, N) Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay this Note.

5. **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: A) Require immediate payment of all amounts owing under this Note; B) Have recourse to collect all amounts owing from any Borrower or Guarantor; C) File suit and obtain judgment; D) Take possession of any Collateral; or, E) Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: A) Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; B) Collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; C) Release anyone obligated to pay this Note; D) Compromise, release, renew, extend or substitute any of the Collateral; and E) Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. **WHEN FEDERAL LAW APPLIES:** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

MAIL ANY NOTICE OF DEFAULT TO:
U.S. SMALL BUSINESS ADMINISTRATION
2120 Riverfront Drive Suite 100
Little Rock, Arkansas, 72202

WHEN RECORDED MAIL TO:
U.S. SMALL BUSINESS ADMINISTRATION
360 Rainbow Blvd. South
Niagara Falls, NY 14303-1192
(716)282-4612

Majestic Voyages, Inc.
# 3364-00013 Loan No. DLB 49551140-05

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED / FILED

**26 OCT '01**          -10 : 00 AM

RECORDED: BOOK 8|-118 PAGE 692

DOCUMENTATI

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## PREFERRED MORTGAGE

Amount of Mortgage: $401,200.00

Maturity Date: October 2, 2031

Majestic Star, Inc.
Surfside 3 Marina Chelsea Piers, Pier 59, New York, New York 10011
(Mortgagor) 100%
U.S. Small Business Administration
(Mortgagee)

ON

### THE WHOLE OF THE VESSEL Star of America

THIS PREFERRED MORTGAGE made and given this 2nd day of October 2001, by Majestic Star, Inc. (hereinafter designated and referred to as "Mortgagor").

### WITNESSETH:

THAT, WHEREAS the Mortgagor is justly indebted to the Mortgagee in the sum of Four Hundred One Thousand Two Hundred and no/100 dollars ($401,200.00), as evidenced by a certain Promissory Note dated October 2, 2001, the interest thereon at the rate of 4.000 per centum per annum, payable as follows:   * signed by Majestic Voyages, Inc. and a Guaranty of the same date signed by Mortgagor
Installment payments, including principal and interest, of Two Thousand Nineteen and no/100 ($2,019.00) Dollars monthly, will begin Twelve (12) months from the date of the promissory Note. Balance of principal and interest will be payable Thirty (30) Years from the date of the promissory Note.

WHEREAS, the Mortgagor is the sole owner of the 1991 103.4' length, 24' breadth, 4' depth, aluminum hull material Vessel Called "Star of America" Official No. 973452; Gross Tons 67; Net Tons 57; Home Port Surfside 3 Marina Chelsea Piers, Pier 59, New York, New York 10011; Place Issued National Vessel Doc Center; Issued March 13, 1998;

NOW, THEREFORE, The Mortgagor, for the purpose of securing the payment of said sum so owed to the Mortgagee, and the performance and observance of all the agreements, covenants and conditions herein contained, has granted, bargained, sold and mortgaged, and by these presents does grant, bargain, sell and mortgage unto the Mortgagee, the whole of said vessel, together with all her engines, boilers, machinery, masts, bowsprits, sails, boats, anchors, cables, chains, rigging, tackle, tools, pumps, apparel and furniture, equipment and supplies and all other appurtenances thereto appertaining and belonging, and also any and all additions, improvements and replacements hereinafter made in to said vessel, or any part thereof, or in or to her equipment and appurtenances aforesaid.

TO HAVE AND TO HOLD said vessel and all appurtenances thereunto belonging, including all such additions, improvements and replacements unto the Mortgagee, its successors and assigns, to the sole and only proper use, benefit, and behalf of the Mortgagee, its successors and assigns, forever:

PROVIDED ALWAYS, and the conditions of these presents are such that if the Mortgagor shall pay or cause to be paid to the Mortgagee, its successors and assigns, the debt afor___ in accordance with the terms of this Mortgage and with the terms of said Note executed and given by the ___ e for valuable consideration to the Mortgagor, and if the Mortgagor, shall duly perform all the agreemen___ hs hereafter set forth, then these presents shall be void

 GOVERNMENT EXHIBIT 3P

and of no effect; otherwise, the same shall be, continue and remain in full force and effect. The Mortgagor hereby agrees to pay or cause to be paid the debt aforesaid according to the terms and conditions of said Note and of this Mortgage and to fulfill, perform and observe each and every one of the covenants, agreements and conditions herein contained.

The maturity date of this Mortgage shall be as of <u>October 2, 2031.</u>

ARTICLE I

PARTICULAR COVENANTS OF THE MORTGAGE

The Mortgagor covenants and agrees as in this article set forth:

SECTION 1.    At his own expense, so long as the indebtedness evidenced by said Note remains in any part outstanding, the Mortgagor will keep the vessel and its appurtenances insured in an amount equal to the full commercial value of and the same, but in any case for not less than the amount remaining unpaid on said indebtedness, with such hull insurance as the Mortgagee may require and otherwise with coverage satisfactory to the Mortgagee. The policy valuation in the hull policies shall not exceed the aggregate amount insured by hull policies. The hull insurance shall be placed under such form of policy as the Mortgagee may approve, insuring against the usual risks covered by such indebtedness, with such hull insurance as the Mortgagee may require and policies including four-fourths running down clause and Inchmaree clause. The Mortgagor will also at his own expense, if and when so required by the Mortgagee, keep the vessel insured for its full commercial value but in any case for not less than the amount remaining from time to time unpaid on the said indebtedness, against war risks and the risks of mines, torpedoes, bombs and aircraft, and covering damage to or destruction of said vessel caused by sabotage, malicious mischief, strikers, locked out workmen or persons taking part in labor disturbances or riots or civil commotions. All said insurance shall be placed with responsible underwriters and through responsible brokers all in good standing and satisfactory to the Mortgagee. All of said shall run for the account or whom it may concern, or in such other form fully covering the Mortgagee as may be satisfactory to the Mortgagee, any amount recovered or recoverable thereunder to be applied by the Mortgagee as follows:--

In the event of partial loss, if the Mortgagor is not in default under this Mortgage, the Mortgagee shall consent that the underwriters pay direct for repairs, salvage or other charges covered by insurance and/or reimburse the Mortgagor therefore, on evidence by certificate or otherwise satisfactory to the Mortgagee that the same have been paid by the Mortgagor, but if the Mortgagor is in default under this Mortgage, the Mortgagee shall be entitled to receive the proceeds of any such insurance and may apply such proceeds in the manner provided in Section 5 of Article II hereof.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.

The Mortgagor will also, at his own expense, keep the vessel fully covered by protection and indemnity insurance in a so-called protection and indemnity association or club in good standing and satisfactory to the Mortgagee or by clauses of like effect in a policy or policies issued by marine insurance companies and through brokers in good standing and satisfactory to the Mortgagee, such protection and indemnity also to protect the Mortgagee against any liability which the Mortgagor may incur.

All policies and/or binders and/or cover notes shall be delivered to the Mortgagee, and proper renewals of any expiring insurance shall be so delivered, not less than ten (10) days prior to the expiration of any expiring insurance, and the Mortgagee shall be furnished with evidence satisfactory to it of the maintenance as herein provided of any protection and indemnity insurance carried by any association or club.

The Mortgagor will cause said vessel to be continuously documented under the laws of the United States and maintained as a vessel of the United States.

Mortgagor shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department of agency thereof, nor remove the vessel from the limits of the territorial waters of the United States without first obtaining written permission of Mortgagee. Mortgagor shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel and condition of vessel is to be maintained in same condition as when Mortgaged with reasonable wear tear excepted.

SECTION 2.    Mortgagor is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Mortgagor shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the good faith affidavit filed herewith and of said note has been duly taken. If a corporation, Mortgagor is duly organized and is and shall continue in good standing under the laws of the State of New York and authorized to do business and in good standing in any other State wherein the nature of Mortgagor's activities requires it to be so authorized.

SECTION 3.    Mortgagor lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee

Majestic Voyages, Inc.
3364-00013 / DLB 49551140-05

against all persons whomsoever. Mortgagor shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Mortgagor against Mortgage and/or assignee under any past or future transaction.

SECTION 4.    The Mortgagor will not do any act, nor voluntarily suffer nor permit any act to be done, whereby any insurance is or may be suspended, impaired for defeated, and will not suffer or permit the vessel to engage in any voyage or to carry any cargo not permitted by the policies of insurance in effect, without first covering the vessel to the amount herein provided for by insurance satisfactory to the Mortgagee for such voyage or the carriage of such cargo.

SECTION 5.    Neither the Mortgagor nor the Master of the vessel shall have any right, power or authority to create, incur or permit to be imposed, and the Mortgagor agrees that there shall not be created, incurred or permitted to be imposed upon the vessel, any lien whatsoever except for crew's wages and salvage.

The Mortgagor agrees that there shall at all times be carried aboard the vessel with the ship's documents, a properly certified copy of this Mortgage, and that he will cause the same and the documents of the vessel to be exhibited by the Master to any person having business with the vessel which might give rise to a maritime lien upon the vessel or to the sale, conveyance or Mortgage thereof. The Mortgagor agrees to notify in writing in advance any person furnishing supplies or other necessaries to the vessel that neither the Mortgagor nor the Master have any right to create, incur or permit to be imposed upon the vessel any lien whatsoever except for crew's wages and salvage.

The Mortgagor further agrees to place and keep prominently in the pilot house and engine room of the vessel notices reading as follows:

"This vessel is covered by a first preferred Mortgage to the U.S. SMALL BUSINESS ADMINISTRATION, under authority of the SHIP MORTGAGE ACT, 1920, as amended. Under the terms of said Mortgage, neither the owner nor the Master of the vessel have any right, power or authority to create, incur or permit to be imposed upon the vessel any liens whatsoever, except for crew's wages or salvage."

If a libel should be filed against the vessel or if the vessel is otherwise levied against or taken into custody by virtue of any legal proceedings in any court, the Mortgagor will, within fifteen (15) days thereafter, cause the said vessel to be released and the lien to be discharged.

SECTION 6.    At all times, at his own expense, the Mortgagor will exercise due diligence to maintain and preserve the vessel in as good condition, working order and repair as at the time of the execution of this Mortgage, ordinary wear and tear and depreciation, with the vessel kept in proper repair, excepted, and will keep the vessel in such condition as will enable her to pass such inspection as may be required by marine underwriters as a condition to their writing such insurance and in such amounts as is required under this Mortgage.

SECTION 7.    At all times the Mortgagor will afford the Mortgagee or its authorized representatives full and complete access to the vessel for the purpose of inspecting the same and her cargoes and ship's papers; and to examine the Mortgagor's related accounts and records; and shall certify quarterly and if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

SECTION 8.    The Mortgagor will pay and discharge, when due and payable from time to time, all taxes, assessments and governmental charges, fines or penalties lawfully imposed on the vessel or upon the income and profits thereof.

SECTION 9.    The Mortgagee shall have the right but shall be under no obligation to make any payments and to do any acts which under the terms of this Mortgage the Mortgagor is required to make or do, but the making of any such payment or the doing of any such act by the Mortgagee shall not relieve the Mortgagor of any default in that respect or constitute in any respect a waiver of such default. The Mortgagor will reimburse the Mortgagee promptly, with interest at the rate of six per centum (6%) per annum, for any and all payments and expenditures so made or incurred by the Mortgagee at any time in taking possession of the vessel or otherwise protecting its rights hereunder and for any and all damages sustained by the Mortgagee from or by reason of any default or defaults of the Mortgagor, and all such payments, expenditures, advances and expenses shall be and are secured by this Mortgage.

SECTION 10.    The Mortgagor will not make any sale or other transfer or Mortgage of the vessel or of any interest therein without the written consent of the Mortgagee first being obtained, and such written consent to any one such sale or transfer shall not be deemed a waiver of this provision in respect to any subsequent proposed sale or transfer of interest; but the Mortgagor may, for uses lawful for American vessels and subject to all the provisions of this Mortgage, charter the vessel to citizens of the United States as defined in the Merchant Marine Act of 1920, subject to this Mortgage.

SECTION 11.    The Mortgagor will comply with and satisfy all the provisions of the Ship Mortgage Act, 1920, as amended, and of all acts amendatory thereof or supplementary thereto, compliance with which is necessary to establish and maintain this Mortgage as a first preferred Mortgage under said Act.

SECTION 12.    The Mortgagor will, at any time upon request, execute such other and further instruments, if any, as may be necessary to vest in the Mortgagee a first preferred Mortgage lien on said vessel in accordance with the intent of this instrument, and will execute such further assurances and instruments as may be required by the Mortgagee to safeguard the rights of the Mortgagee and carry out the intent of this instrument.

SECTION 13.    The Mortgagor covenants and warrants that he has good title to the whole of said vessel and its appurtenances and that the same are free from all liens and encumbrances, and that he will warrant and defend the same against the claims of all and every person or persons whomsoever.

## ARTICLE II
## DEFAULT

SECTION 1.    In case one or more of the following events, herein termed "Defaults", shall happen viz:

(a)    Default shall be made in the payment of principal and/or interest as above provided; or

(b)    The Mortgagor shall sell or Mortgage or attempt to sell or Mortgage the vessel, or any part thereof or transfer the flag of the vessel without the written consent of the Mortgagee; or

(c)    The vessel shall be libeled or levied upon or taken by virtue of any attachment or execution against the Mortgagor or otherwise subjected to lien or claim and not released within fifteen (15) days as herein provided, or the Mortgagor shall remove or attempt to remove the vessel beyond the limits of the United States save on voyage with the intention of returning to the United States; or

(d)    The Mortgagor shall make an assignment for the benefit of his creditors, or a receiver or receivers of his property or of said vessel shall be appointed by any court, or a petition for adjudication as bankrupt shall be filed by or against the Mortgagor, or in the event of the commencement of any proceeding under any bankruptcy or insolvency laws or any laws relating to the relief of debtors, readjustment of indebtedness, reorganization, composition or extension by or against the Mortgagor; or

(e)    Default shall be made in the prompt and faithful performance or observance of any of the other covenants, agreements or conditions herein contained and such default shall continue for fifteen (15) days after written notice thereof shall have been given to the Mortgagor by the Mortgagee.

THEN, AND IN EACH AND EVERY CASE, THE MORTGAGEE THEREUPON MAY-

(a)    Declare said promissory note to be immediately due and payable, and upon such declaration said note, shall together with any accrued interest thereon, become immediately due and payable.

(b)    Recover judgment for any amount due upon said indebtedness and collect the same out of any property of the Mortgagor without its security under this Mortgage being in any way affected or impaired thereby; and/or

(c)    Take possession of the vessel wherever the same may be found and hold, lease, charter, operate or otherwise use the vessel as the Mortgagee may deem to its best advantage; and/or

(d)    Take possession of the vessel wherever the same may be found; and with or without so taking possession, sell the same at public auction free from any claim by the Mortgagor in law, in equity, in admiralty, or by Statute after first giving proper notice and such sale may be held at such place or places and at such time or times as the Mortgagee may specify; and may be conducted without bringing the vessel to a place of sale, and in such manner generally as the Mortgagee may deem its best advantage, and the Mortgagee may become the purchaser at any such sale; and/or

(e)    Foreclose this Mortgage pursuant to the terms and provisions of the Ship Mortgage Act, 1920, as amended; and/or

(f)    Proceed, at its option, in any other lawful manner to enforce its rights under this Mortgage.

SECTION 2.    When any right to take possession of the vessel shall occur, the Mortgagee may take possession of the same wherever the same may be found, without prior demand and without legal process and for that purpose may enter upon any dock, pier or other premises where the vessel may be, and the Mortgagee may take possession of the vessel upon the high seas or in any port, harbor or other place; but without impairing the said right, the Mortgagor agrees that upon demand he will deliver the vessel at his own cost at such place or places as the Mortgagee shall designate and that the Mortgagee shall have the right to take the vessel at any dock, pier or other premises of the Mortgagor and to keep said vessel there without charge, or to dock the vessel at any other place at the expense of the Mortgagor. Also, that the mailing postage prepaid, of any demand or notice addressed to the Mortgagor

Majestic Voyages, Inc.
3364-00013 / DLB 49551140-05

at his last address known to the Mortgagee, shall be sufficient demand or notice where demand or notice is required under this Mortgage.

The Mortgagor further agrees that in any legal proceedings which may be taken by the Mortgagee for the enforcement of its rights hereunder, the Mortgagee shall be entitled to exercise the right of entry in taking possession, all other rights and powers herein conferred, including appointment of a receiver or receivers of the vessel and of the earnings, income, revenue, rents, issues or profits thereof, with such powers as the court making such appointments shall confer.

SECTION 3.    Each and every power or remedy herein specifically given to the Mortgagee shall be cumulative and shall be in addition to every other power or remedy herein specifically given or now or hereafter existing at law, in equity, in admiralty or by Statute, and each and every power of remedy, whether specifically herein given or otherwise so existing, may be exercised from time to time and as often and in such order as may be deemed expedient by the Mortgagee, and the exercise or the beginning of the exercise of any power or remedy shall not be deemed a waiver of the right to exercise at the same time or thereafter any other power or remedy. No delay nor omission by the Mortgagee in the exercise of any right or power accruing upon any event of default as above defined shall be construed to be a waiver of such default or any acquiescence therein; nor shall the acceptance by the Mortgagee of any security or of any payment after such default or any payment on account of any past default be deemed a waiver of any right to take advantage of any other default or of any past default not completely cured thereby.

SECTION 4.    If at any time after default and prior to the actual sale of the vessel by the Mortgagee, the Mortgagor shall offer to cure completely all defaults and to pay all expenses, advances and damages of the Mortgagee consequent on such default or defaults, together with interest at the highest legal rate, then the Mortgagee may in its discretion, but without any obligation to do so, accept such offer and payment and restore the Mortgagor to his former position.

SECTION 5.    The proceeds of any sale and the net earnings from any management, charter or other use of the vessel by the Mortgagee under any of the powers above specified and the proceeds of any judgement collected by the Mortgagee for any default hereunder, together with the proceeds of any insurance, and of any claims for damages on account of the vessel received by the Mortgagee while exercising any of such powers, shall be applied as follows:

FIRST:    To the payment of all expenses and charges, including the expense of sale, the expense of taking of possession, and any other expenses or advances made or incurred by the Mortgagee in the protection of its rights hereunder including its expenses for legal advice and services; and to the payment of any damages sustained by the Mortgagee from the default or defaults of the Mortgagor with interest as provided herein, and, at the discretion of the Mortgagee, to provide adequate indemnity against liens claiming priority over this Mortgage.

SECOND:    To the payment of the indebtedness secured hereby with interest to the date of such payment.

THIRD:    Any surplus thereafter remaining shall belong and be paid to the Mortgagor, his successors and assigns, or to whomever may be entitled to receive the same, or as a court of competent jurisdiction may direct. Mortgagee shall be entitled to collect any deficiency from Mortgagor.

SECTION 6.    All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Mortgagor on demand with interest at 9% per annum and until so paid shall be a debt due from Mortgagor to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Mortgagor of any obligation or default with respect thereto.

## ARTICLE III
## POSSESSION UNTIL DEFAULT

Until default shall have been made in the due and punctual payment of any installment of the principal of the indebtedness secured hereby, or until there shall have been a default in the conditions, covenants or agreements herein contained,the Mortgagor shall be suffered and permitted to retain possession of the vessel and to manage, operate and use the same and to collect, receive, take, use and enjoy the earnings, income revenue, rents, issues and profits subjected to the terms and conditions of this instrument.

## ARTICLE IV - SUNDRY PROVISIONS

All covenants and agreements of Mortgagee herein contained shall bind Mortgagor, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Mortgagor herein, "his" shall mean "their."

The Vessel covered by this Mortgage is not a towboat, barge, scow, lighter, carfloat, canal boat or tank vessel of less than 25 gross tons, as such words are used in 46 USC 922.

Page 5

FUTURE ADVANCES, This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Mortgagor has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized.

State of New York                          )
County of New York                         ) ss:

Majestic Star, Inc.

By:
Spiros E. Kopelakis, President

By:
Shirley B. Dreifus, Secretary

On the 18th day of October in the year 2001 before me the undersigned, a Notary Public in and for said state, personally appeared Spiros E. Kopelakis and Shirley B. Dreifus,

personally known to me or proved to me on the basis of satisfactory evidence to be an individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Elizabeth M. Metro
Registration #4677468
NOTARY PUBLIC, STATE OF NEW YORK
Qualified in Niagara County
My Commission Expires Nov. 11, 2003

AFFIDAVIT, AS TO GOOD FAITH, LIENS, ETC.

STATE OF _____                       )
                                           ) ss:
COUNTY OF _____                      )

being (severally) duly sworn, depose(s) that he is (they are) the individual
Mortgagor(s) _____
General Partner (s) of _____
The Partnership, (Title) _____
of _____, the corporation, described in and who (which) executed the foregoing Mortgage; and that the said Mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditor of the Mortgagor or any lienor of the Mortgaged vessel(s). There are no liens, encumbrances, charges or Mortgages outstanding against said vessel, other than the lien of the foregoing Mortgage.

If Mortgagor is a corporation, this affidavit is made pursuant to authority of its Board of Directors.

Subscribed and sworn to before me this _____ day of _____, 20_____.

_____
NOTARY PUBLIC



U.S. Small Business Adminstration
# UNCONDITIONAL GUARANTEE
# (DISASTER LOANS)

| SBA Loan # | DLB 49551140-05 |
|---|---|
| Control # | 3364-00013 |
| Guarantor | Majestic Star, Inc. |
| Borrower | Majestic Voyages, Inc. |
| Date | October 2, 2001 |
| Note Amount | $401,200.00 |

### 1. GUARANTEE:

Guarantor unconditionally guarantees payment to SBA of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when SBA makes written demand upon Guarantor. SBA is not required to seek payment from any other source before demanding payment from Guarantor.

### 2. NOTE:

The "Note" is the promissory note dated October 2, 2001 in the principal amount of Four Hundred One Thousand Two Hundred and no/100 Dollars, from Borrower to SBA. It includes any assumption, renewal, substitution, or replacement of the Note.

### 3. DEFINITIONS:

"Collateral" means property, if any, taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

### 4. SBA'S GENERAL POWERS:

SBA may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not SBA receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.  Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

H.  Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against SBA.

5.  **FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.  **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

A.  Guarantor waives all rights to:

  1)  Require presentment, protest, or demand upon Borrower;
  2)  Redeem any Collateral before or after SBA disposes of it;
  3)  Have any disposition of Collateral advertised; and
  4)  Require a valuation of Collateral before or after SBA disposes of it.

B.  Guarantor waives any notice of:

  1)  Any default under the Note;
  2)  Presentment, dishonor, protest, or demand;
  3)  Execution of the Note;
  4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
  5)  Any change in the financial condition or business operations of Borrower or any guarantor;
  6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
  7)  The time or place of any sale or other disposition of Collateral.

C.  Guarantor waives defenses based upon any claim that:

  1)  SBA failed to obtain any guarantee;
  2)  SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
  3)  SBA or others improperly valued or inspected the Collateral;
  4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;
  5)  SBA impaired the Collateral;
  6)  SBA did not dispose of any of the Collateral;
  7)  SBA did not conduct a commercially reasonable sale;
  8)  SBA did not obtain the fair market value of the Collateral;
  9)  SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
  10)  The financial condition of Borrower or any guarantor was overstated or has adversely changed;
  11)  SBA made errors or omissions in Loan Documents or administration of the Loan;
  12)  SBA did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
  13)  SBA impaired Guarantor's suretyship rights;
  14)  SBA modified the Note terms, other than to increase amounts due under the Note. If SBA modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
  15)  Borrower has avoided liability on the Note;  or

3364-00013 / DLB 49551140-05
Majestic Voyages, Inc.

      16) SBA has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. **DUTIES AS TO COLLATERAL:**

    Guarantor will preserve the Collateral, if any, pledged by Guarantor to secure this Guarantee. SBA has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS:**

    Under this Guarantee, Guarantor includes successors, and SBA includes successors and assigns.

9. **GENERAL PROVISIONS:**

    A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses SBA incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

    B. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

    C. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

    D. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral.

    E. FINANCIAL STATEMENTS. Guarantor must give SBA financial statements as SBA requires.

    F. SBA'S RIGHTS CUMULATIVE, NOT WAIVED. SBA may exercise any of its rights separately or together, as many times as it chooses. SBA may delay or forgo enforcing any of its rights without losing or impairing any of them.

    G. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

    H. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

    I. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by SBA as to the Loan.

10. **GUARANTOR ACKNOWLEDGMENT OF TERMS.**

    Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

11. **GUARANTOR NAME(S) AND SIGNATURE(S):**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Dated this _____ day of _____, 20_____.

State of New York       )
                        ) ss:
County of              )

On the _____ day of _____ in the year _____ before me the undersigned, a Notary Public in and for said state, personally appeared

_____,
personally known to me or proved to me on the basis of satisfactory evidence to be an individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Majestic Star, Inc.

By: _____
Spiros E. Kopelakis, President

By: _____
Shirley B. Dreifus, Secretary



U.S. Small Business Adminstration

# UNCONDITIONAL GUARANTEE
## (DISASTER LOANS)

| SBA Loan # | DLB 49551140-05 |
|---|---|
| Control # | 3364-00013 |
| Guarantor | Majestic Star, Inc. |
| Borrower | Majestic Voyages, Inc. |
| Date | February 13, 2003 |
| Note Amount | $642,700.00 |

1.  **GUARANTEE:**

    Guarantor unconditionally guarantees payment to SBA of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when SBA makes written demand upon Guarantor. SBA is not required to seek payment from any other source before demanding payment from Guarantor.

2.  **NOTE:**

    The "Note" is the promissory note dated February 13, 2003 in the principal amount of Six Hundred Forty-Two Thousand Seven Hundred and no/100 Dollars, from Borrower to SBA. It includes any assumption, renewal, substitution, or replacement of the Note.

3.  **DEFINITIONS:**

    "Collateral" means property, if any, taken as security for payment of the Note or any guarantee of the Note.

    "Loan" means the loan evidenced by the Note.

    "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

4.  **SBA'S GENERAL POWERS:**

    SBA may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

    A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

    B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

    C. Release any Borrower or any guarantor of the Note;

    D. Compromise or settle with the Borrower or any guarantor of the Note;

    E. Substitute or release any of the Collateral, whether or not SBA receives anything in return;

    F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against SBA.

5. **FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

A. Guarantor waives all rights to:

   1) Require presentment, protest, or demand upon Borrower;
   2) Redeem any Collateral before or after SBA disposes of it;
   3) Have any disposition of Collateral advertised; and
   4) Require a valuation of Collateral before or after SBA disposes of it.

B. Guarantor waives any notice of:

   1) Any default under the Note;
   2) Presentment, dishonor, protest, or demand;
   3) Execution of the Note;
   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5) Any change in the financial condition or business operations of Borrower or any guarantor;
   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

   1) SBA failed to obtain any guarantee;
   2) SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3) SBA or others improperly valued or inspected the Collateral;
   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;
   5) SBA impaired the Collateral;
   6) SBA did not dispose of any of the Collateral;
   7) SBA did not conduct a commercially reasonable sale;
   8) SBA did not obtain the fair market value of the Collateral;
   9) SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
   10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
   11) SBA made errors or omissions in Loan Documents or administration of the Loan;
   12) SBA did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
   13) SBA impaired Guarantor's suretyship rights;
   14) SBA modified the Note terms, other than to increase amounts due under the Note. If SBA modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
   15) Borrower has avoided liability on the Note; or

3364-00013 / DLB 49551140-05
Majestic Voyages, Inc.

16) SBA has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. **DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral, if any, pledged by Guarantor to secure this Guarantee. SBA has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes successors, and SBA includes successors and assigns.

9. **GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses SBA incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

C. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

D. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral.

E. FINANCIAL STATEMENTS. Guarantor must give SBA financial statements as SBA requires.

F. SBA'S RIGHTS CUMULATIVE, NOT WAIVED. SBA may exercise any of its rights separately or together, as many times as it chooses. SBA may delay or forgo enforcing any of its rights without losing or impairing any of them.

G. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

H. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

I. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by SBA as to the Loan.

10. **GUARANTOR ACKNOWLEDGMENT OF TERMS.**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

11. **GUARANTOR NAME(S) AND SIGNATURE(S):**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Dated this 21 day of FEB , 20 03.

State of New York                )
                                 )  ss:
County of New York               )

On the 21st day of February in the year 2003 before me the undersigned, a Notary Public in and for said state, personally appeared Spiros E. Kopelakis, and Shirley B. Dreifus personally known to me or proved to me on the basis of satisfactory evidence to be an individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

ROSEMARY N. MANONI
Notary Public, State of New York
No. 41-4946063
Qualified In Queens County
Commission Expires 1/27/2007

Majestic Star, Inc.

By:
Spiros E. Kopelakis, President

By:
Shirley B. Dreifus, Secretary

SBA FORM 2128 (5-00)                                                                                   Page 4

SBA LOAN NUMBER: 49551140-05

CONTROL NUMBER: 3364-00013



# MODIFICATION OF PREFERRED MORTGAGE

$642,700.00
Amount of Modified Mortgage

October 2, 2031
Final Maturity Date

Majestic Star, Inc.
(Mortgagor)

SOLE OWNER, 100%

TO
SMALL BUSINESS ADMINISTRATION (Mortgagee)

100%
ON

THE WHOLE OF THE VESSEL "Star of America" O.N. 973452; Gross Tons 67; Net Tons 57; Home Port Surfside Marina Chelsea Piers, Pier 60, New York, New York 10011; Place Issued National Vessel Doc Center; Issued March 13, 1998

FOR THE PURPOSE OF AMENDING THE PREFERRED MORTGAGE ON THE VESSEL Star of America made and given by Mortgagors to Mortgagee on February 13, 2003, received for record by THE UNITED STATES COAST GUARD, NATIONAL VESSEL DOCUMENTATION CENTER on October 26, 2001 at 10:00 am, recorded in Book No. 01-118, Page 692, and in consideration of the premises hereinafter set forth, it is agreed between Mortgagors and Mortgagee that the aforementioned Preferred Mortgage shall be amended and modified in the following particulars:

The principal sum of the Promissory Note said PREFERRED MORTGAGE secures has been increased/decreased from $401,200.00 to $642,700.00, and the monthly installment amount has been increased from $2,019.00 to $3,271.00, pursuant to a Modification of Promissory Note dated February 13, 2003. The final maturity of said Note as modified is October 2, 2031.

Except as hereinabove set forth, the aforementioned Preferred Mortgage shall remain otherwise in full force and effect.

IN WITNESS WHEREOF, Mortgagors have executed this MODIFICATION OF PREFERRED MORTGAGE this ___ day of _Feb_ 20 03

COUNTY OF _New York_ )
                          )ss
STATE OF _New York_ )

I, _Rosemary N. Manori_, a notary public in and for said county and state, do hereby certify that _Spiros E. Kapelakis_ _Shirley Dreifus +_
personally appeared before me this day and acknowledged that they, being informed of the contents of the instrument, signed, delivered and
executed the foregoing instrument. Witness my hand and notarial seal this the _21st_ day of _February_ , 2003.

_Rosemary N. Manori_
_____
Notary Public

My Commission Expires: _____

IN WITNESS WHEREOF, the Mortgagee has executed this MODIFICATION OF PREFERRED MORTGAGE this _15th_ day of
_February_ 20 _03_ .

                                  U.S. Small Business Administration

                                  By: _James A. Pryor_
                                      James A. Pryor
                                      rAttorney/Advisor
                                      Area 1 - Disaster Assistance

STATE OF NEW YORK     )
                      )ss
COUNTY OF NIAGARA     )

The undersigned, a Notary Public in and for said County, in the State aforesaid, do hereby certify that _James Pryor_ , personally known
to me to be the same person whose name is subscribed in the foregoing instrument as Attorney/Advisor, for the Administrator of the Small
Business Administration, appeared before me in person, and acknowledged that he/she, being duly authorized, signed, and delivered said
instrument as the free and voluntary act for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal, this _15th_ day of _February_ , 20 _03_ .

_Gina R Street_
_____
Notary Public

My Commission Expires: _____

                          GINA R. STREET
                          Registration # 01ST5037720
                          Notary Public, State of New York
                          Qualified in Erie County       2007
                          My Commission Expires January 3,

Control Number: ____

MAIL ANY NOTICE OF DEFAULT TO:
U.S. SMALL BUSINESS ADMINISTRATION
2120 Riverfront Drive Suite 100
Little Rock, Arkansas, 72202

**NATIONAL VESSEL DOCUMENTATION CENTER**
**USCG**
**RECEIVED / FILED**

WHEN RECORDED MAIL TO:
U.S. SMALL BUSINESS ADMINISTRATION
360 Rainbow Blvd. South
Niagara Falls, NY  14303-1192
(716)282-4612

**26 OCT '01**        -10 : 0 0 AM

RECORDED: BOOK _OL 118_ PAGE _695_

DOCUMENTATION OFFICIAL

Majestic Voyages, Inc.
# 3364-00013 Loan No. DLB 49551140-05

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### PREFERRED MORTGAGE

Amount of Mortgage: $401,200.00

Maturity Date: October  2, 2031

NATIONAL VESSEL DOCUMENTATION CENTER
U. S. COAST GUARD

Majestic Voyages, Inc.
Surfside 3 Marina, Chelsea Piers, Pier 59, New York, New York  10011
(Mortgagor) 100%

I HEREBY CERTIFY THIS TO BE A TRUE COPY U.S. Small Business Administration
OF THE RECORDS OF THIS OFFICE.                (Mortgagee)

_Lana L. Fithy_ OCT 3 1 2001          ON

DOCUMENTATION OFFICER          DATE
THE WHOLE OF THE VESSEL Majestic Star

THIS PREFERRED MORTGAGE made and given this 2nd day of October 2001, by Majestic Voyages, Inc. (hereinafter designated and referred to as "Mortgagor").

### WITNESSETH:

THAT, WHEREAS the Mortgagor is justly indebted to the Mortgagee in the sum of Four Hundred One Thousand Two Hundred and no/100 dollars ($401,200.00), as evidenced by a certain Promissory Note dated October  2, 2001, the interest thereon at the rate of 4.000 per centum per annum, payable as follows:  * signed by Majestic Voyages, Inc. and a Guaranty of same date signed by Mortgagor

Installment payments, including principal and interest, of Two Thousand Nineteen and no/100 ($2,019.00) Dollars monthly, will begin Twelve (12) months from the date of the promissory Note. Balance of principal and interest will be payable Thirty (30) Years from the date of the promissory Note.

WHEREAS, the Mortgagor is the sole owner of the 2000 94.8' length, 33.0' breadth, 9.8' depth, steel hull material Vessel Called "Majestic Star" Official No. 1100715; Gross Tons 97; Net Tons 87; Home Port Surfside 3 Marina Chelsea Piers, Pier 59, New York, New York 10011; Place Issued National Vessel Doc Center; Issued May 18, 2001;

NOW, THEREFORE, The Mortgagor, for the purpose of securing the payment of said sum so owed to the Mortgagee, and the performance and observance of all the agreements, covenants and conditions herein contained, has granted, bargained, sold and mortgaged, and by these presents does grant, bargain, sell and mortgage unto the Mortgagee, the whole of said vessel, together with all her engines, boilers, machinery, masts, bowsprits, sails, boats, anchors, cables, chains, rigging, tackle, tools, pumps, apparel and furniture, equipment and supplies and all other appurtenances thereto appertaining and belonging, and also any and all additions, improvements and replacements hereinafter made in to said vessel, or any part thereof, or in or to her equipment and appurtenances aforesaid.

TO HAVE AND TO HOLD said vessel and all appurtenances thereunto belonging, including all such additions, improvements and replacements unto the Mortgagee, its successors and assigns, to the sole and only proper use, benefit, and behalf of the Mortgagee, its successors and assigns, forever:

PROVIDED ALWAYS, and the conditions of these presents are such that if the Mortgagor shall pay or cause to be paid to the Mortgagee, its successors and assigns, the debt aforesaid and interest thereon, in accordance with the terms of this Mortgage and with the terms of said Note executed and given by the Mort[...] [...]r valuable consideration to the Mortgagor, and if the Mortgagor, shall duly perform all the agreements, [...] [...]reafter set forth, then these presents shall be void

**GOVERNMENT**
**EXHIBIT**
_3B_

and of no effect; otherwise, the same shall be, continue and remain in full force and effect. The Mortgagor hereby agrees to pay or cause to be paid the debt aforesaid according to the terms and conditions of said Note and of this Mortgage and to fulfill, perform and observe each and every one of the covenants, agreements and conditions herein contained.

The maturity date of this Mortgage shall be as of October 2, 2031.

## ARTICLE I
## PARTICULAR COVENANTS OF THE MORTGAGE

The Mortgagor covenants and agrees as in this article set forth:

SECTION 1.    At his own expense, so long as the indebtedness evidenced by said Note remains in any part outstanding, the Mortgagor will keep the vessel and its appurtenances insured in an amount equal to the full commercial value of and the same, but in any case for not less than the amount remaining unpaid on said indebtedness, with such hull insurance as the Mortgagee may require and otherwise with coverage satisfactory to the Mortgagee. The policy valuation in the hull policies shall not exceed the aggregate amount insured by hull policies. The hull insurance shall be placed under such form of policy as the Mortgagee may approve, insuring against the usual risks covered by such indebtedness, with such hull insurance as the Mortgagee may require and policies including four-fourths running down clause and Inchmaree clause. The Mortgagor will also at his own expense, if and when so required by the Mortgagee, keep the vessel insured for its full commercial value but in any case for not less than the amount remaining from time to time unpaid on the said indebtedness, against war risks and the risks of mines, torpedoes, bombs and aircraft, and covering damage to or destruction of said vessel caused by sabotage, malicious mischief, strikers, locked out workmen or persons taking part in labor disturbances or riots or civil commotions. All said insurance shall be placed with responsible underwriters and through responsible brokers all in good standing and satisfactory to the Mortgagee. All of said shall run for the account or whom it may concern, or in such other form fully covering the Mortgagee as may be satisfactory to the Mortgagee, any amount recovered or recoverable thereunder to be applied by the Mortgagee as follows:—

In the event of partial loss, if the Mortgagor is not in default under this Mortgage, the Mortgagee shall consent that the underwriters pay direct for repairs, salvage or other charges covered by insurance and/or reimburse the Mortgagor therefore, on evidence by certificate or otherwise satisfactory to the Mortgagee that the same have been paid by the Mortgagor, but if the Mortgagor is in default under this Mortgage, the Mortgagee shall be entitled to receive the proceeds of any such insurance and may apply such proceeds in the manner provided in Section 5 of Article II hereof.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.

The Mortgagor will also, at his own expense, keep the vessel fully covered by protection and indemnity insurance in a so-called protection and indemnity association or club in good standing and satisfactory to the Mortgagee or by clauses of like effect in a policy or policies issued by marine insurance companies and through brokers in good standing and satisfactory to the Mortgagee, such protection and indemnity also to protect the Mortgagee against any liability which the Mortgagor may incur.

All policies and/or binders and/or cover notes shall be delivered to the Mortgagee, and proper renewals of any expiring insurance shall be so delivered, not less than ten (10) days prior to the expiration of any expiring insurance, and the Mortgagee shall be furnished with evidence satisfactory to it of the maintenance as herein provided of any protection and indemnity insurance carried by any association or club.

The Mortgagor will cause said vessel to be continuously documented under the laws of the United States and maintained as a vessel of the United States.

Mortgagor shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department of agency thereof, nor remove the vessel from the limits of the territorial waters of the United States without first obtaining written permission of Mortgagee. Mortgagor shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel and condition of vessel is to be maintained in same condition as when Mortgaged with reasonable wear tear excepted.

SECTION 2.    Mortgagor is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Mortgagor shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the good faith affidavit filed herewith and of said note has been duly taken. If a corporation, Mortgagor is duly organized and is and shall continue in good standing under the laws of the State of New York and authorized to do business and in good standing in any other State wherein the nature of Mortgagor's activities requires it to be so authorized.

SECTION 3.    Mortgagor lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee

Majestic Voyages, Inc.
3364-00013 / DLB 49551140-05

against all persons whomsoever. Mortgagor shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Mortgagor against Mortgage and/or assignee under any past or future transaction.

SECTION 4.    The Mortgagor will not do any act, nor voluntarily suffer nor permit any act to be done, whereby any insurance is or may be suspended, impaired for defeated, and will not suffer or permit the vessel to engage in any voyage or to carry any cargo not permitted by the policies of insurance in effect, without first covering the vessel to the amount herein provided for by insurance satisfactory to the Mortgagee for such voyage or the carriage of such cargo.

SECTION 5.    Neither the Mortgagor nor the Master of the vessel shall have any right, power or authority to create, incur or permit to be imposed, and the Mortgagor agrees that there shall not be created, incurred or permitted to be imposed upon the vessel, any lien whatsoever except for crew's wages and salvage.

The Mortgagor agrees that there shall at all times be carried aboard the vessel with the ship's documents, a properly certified copy of this Mortgage, and that he will cause the same and the documents of the vessel to be exhibited by the Master to any person having business with the vessel which might give rise to a maritime lien upon the vessel or to the sale, conveyance or Mortgage thereof. The Mortgagor agrees to notify in writing in advance any person furnishing supplies or other necessaries to the vessel that neither the Mortgagor nor the Master have any right to create, incur or permit to be imposed upon the vessel any lien whatsoever except for crew's wages and salvage.

The Mortgagor further agrees to place and keep prominently in the pilot house and engine room of the vessel notices reading as follows:

"This vessel is covered by a first preferred Mortgage to the U.S. SMALL BUSINESS ADMINISTRATION, under authority of the SHIP MORTGAGE ACT, 1920, as amended. Under the terms of said Mortgage, neither the owner nor the Master of the vessel have any right, power or authority to create, incur or permit to be imposed upon the vessel any liens whatsoever, except for crew's wages or salvage."

If a libel should be filed against the vessel or if the vessel is otherwise levied against or taken into custody by virtue of any legal proceedings in any court, the Mortgagor will, within fifteen (15) days thereafter, cause the said vessel to be released and the lien to be discharged.

SECTION 6.    At all times, at his own expense, the Mortgagor will exercise due diligence to maintain and preserve the vessel in as good condition, working order and repair as at the time of the execution of this Mortgage, ordinary wear and tear and depreciation, with the vessel kept in proper repair, excepted, and will keep the vessel in such condition as will enable her to pass such inspection as may be required by marine underwriters as a condition to their writing such insurance and in such amounts as is required under this Mortgage.

SECTION 7.    At all times the Mortgagor will afford the Mortgagee or its authorized representatives full and complete access to the vessel for the purpose of inspecting the same and her cargoes and ship's papers; and to examine the Mortgagor's related accounts and records; and shall certify quarterly and if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

SECTION 8.    The Mortgagor will pay and discharge, when due and payable from time to time, all taxes, assessments and governmental charges, fines or penalties lawfully imposed on the vessel or upon the income and profits thereof.

SECTION 9.    The Mortgagee shall have the right but shall be under no obligation to make any payments and to do any acts which under the terms of this Mortgage the Mortgagor is required to make or do, but the making of any such payment or the doing of any such act by the Mortgagee shall not relieve the Mortgagor of any default in that respect or constitute in any respect a waiver of such default. The Mortgagor will reimburse the Mortgagee promptly, with interest at the rate of six per centum (6%) per annum, for any and all payments and expenditures so made or incurred by the Mortgagee at any time in taking possession of the vessel or otherwise protecting its rights hereunder and for any and all damages sustained by the Mortgagee from or by reason of any default or defaults of the Mortgagor, and all such payments, expenditures, advances and expenses shall be and are secured by this Mortgage.

SECTION 10.    The Mortgagor will not make any sale or other transfer or Mortgage of the vessel or of any interest therein without the written consent of the Mortgagee first being obtained, and such written consent to any one such sale or transfer shall not be deemed a waiver of this provision in respect to any subsequent proposed sale or transfer of interest; but the Mortgagor may, for uses lawful for American vessels and subject to all the provisions of this Mortgage, charter the vessel to citizens of the United States as defined in the Merchant Marine Act of 1920, subject to this Mortgage.

SECTION 11.    The Mortgagor will comply with and satisfy all the provisions of the Ship Mortgage Act, 1920, as amended, and of all acts amendatory thereof or supplementary thereto, compliance with which is necessary to establish and maintain this Mortgage as a first preferred Mortgage under said Act.

Page 3

SECTION 12.    The Mortgagor will, at any time upon request, execute such other and further instruments, if any, as may be necessary to vest in the Mortgagee a first preferred Mortgage lien on said vessel in accordance with the intent of this instrument, and will execute such further assurances and instruments as may be required by the Mortgagee to safeguard the rights of the Mortgagee and carry out the intent of this instrument.

SECTION 13.    The Mortgagor covenants and warrants that he has good title to the whole of said vessel and its appurtenances and that the same are free from all liens and encumbrances, and that he will warrant and defend the same against the claims of all and every person or persons whomsoever.

## ARTICLE II
## DEFAULT

SECTION 1.    In case one or more of the following events, herein termed "Defaults", shall happen viz:

(a)    Default shall be made in the payment of principal and/or interest as above provided; or

(b)    The Mortgagor shall sell or Mortgage or attempt to sell or Mortgage the vessel, or any part thereof or transfer the flag of the vessel without the written consent of the Mortgagee; or

(c)    The vessel shall be libeled or levied upon or taken by virtue of any attachment or execution against the Mortgagor or otherwise subjected to lien or claim and not released within fifteen (15) days as herein provided, or the Mortgagor shall remove or attempt to remove the vessel beyond the limits of the United States save on voyage with the intention of returning to the United States; or

(d)    The Mortgagor shall make an assignment for the benefit of his creditors, or a receiver or receivers of his property or of said vessel shall be appointed by any court, or a petition for adjudication as bankrupt shall be filed by or against the Mortgagor, or in the event of the commencement of any proceeding under any bankruptcy or insolvency laws or any laws relating to the relief of debtors, readjustment of indebtedness, reorganization, composition or extension by or against the Mortgagor; or

(e)    Default shall be made in the prompt and faithful performance or observance of any of the other covenants, agreements or conditions herein contained and such default shall continue for fifteen (15) days after written notice thereof shall have been given to the Mortgagor by the Mortgagee.

THEN, AND IN EACH AND EVERY CASE, THE MORTGAGEE THEREUPON MAY-

(a)    Declare said promissory note to be immediately due and payable, and upon such declaration said note, shall together with any accrued interest thereon, become immediately due and payable.

(b)    Recover judgment for any amount due upon said indebtedness and collect the same out of any property of the Mortgagor without its security under this Mortgage being in any way affected or impaired thereby; and/or

(c)    Take possession of the vessel wherever the same may be found and hold, lease, charter, operate or otherwise use the vessel as the Mortgagee may deem to its best advantage; and/or

(d)    Take possession of the vessel wherever the same may be found; and with or without so taking possession, sell the same at public auction free from any claim by the Mortgagor in law, in equity, in admiralty, or by Statute after first giving proper notice and such sale may be held at such place or places and at such time or times as the Mortgagee may specify; and may be conducted without bringing the vessel to a place of sale, and in such manner generally as the Mortgagee may deem its best advantage, and the Mortgagee may become the purchaser at any such sale; and/or

(e)    Foreclose this Mortgage pursuant to the terms and provisions of the Ship Mortgage Act, 1920, as amended; and/or

(f)    Proceed, at its option, in any other lawful manner to enforce its rights under this Mortgage.

SECTION 2.    When any right to take possession of the vessel shall occur, the Mortgagee may take possession of the same wherever the same may be found, without prior demand and without legal process and for that purpose may enter upon any dock, pier or other premises where the vessel may be, and the Mortgagee may take possession of the vessel upon the high seas or in any port, harbor or other place; but without impairing the said right, the Mortgagor agrees that upon demand he will deliver the vessel at his own cost at such place or places as the Mortgagee shall designate and that the Mortgagee shall have the right to take the vessel at any dock, pier or other premises of the Mortgagor and to keep said vessel there without charge, or to dock the vessel at any other place at the expense of the Mortgagor. Also, that the mailing postage prepaid, of any demand or notice addressed to the Mortgagor

Majestic Voyages, Inc.
3364-00013 / DLB 49551140-05

at his last address known to the Mortgagee, shall be sufficient demand or notice where demand or notice is required under this Mortgage.

The Mortgagor further agrees that in any legal proceedings which may be taken by the Mortgagee for the enforcement of its rights hereunder, the Mortgagee shall be entitled to exercise the right of entry in taking possession, all other rights and powers herein conferred, including appointment of a receiver or receivers of the vessel and of the earnings, income, revenue, rents, issues or profits thereof, with such powers as the court making such appointments shall confer.

SECTION 3.    Each and every power or remedy herein specifically given to the Mortgagee shall be cumulative and shall be in addition to every other power or remedy herein specifically given or now or hereafter existing at law, in equity, in admiralty or by Statute, and each and every power of remedy, whether specifically herein given or otherwise so existing, may be exercised from time to time and as often and in such order as may be deemed expedient by the Mortgagee, and the exercise or the beginning of the exercise of any power or remedy shall not be deemed a waiver of the right to exercise at the same time or thereafter any other power or remedy. No delay nor omission by the Mortgagee in the exercise of any right or power accruing upon any event of default as above defined shall be construed to be a waiver of such default or any acquiescence therein; nor shall the acceptance by the Mortgagee of any security or of any payment after such default or any payment on account of any past default be deemed a waiver of any right to take advantage of any other default or of any past default not completely cured thereby.

SECTION 4.    If at any time after default and prior to the actual sale of the vessel by the Mortgagee, the Mortgagor shall offer to cure completely all defaults and to pay all expenses, advances and damages of the Mortgagee consequent on such default or defaults, together with interest at the highest legal rate, then the Mortgagee may in its discretion, but without any obligation to do so, accept such offer and payment and restore the Mortgagor to his former position.

SECTION 5.    The proceeds of any sale and the net earnings from any management, charter or other use of the vessel by the Mortgagee under any of the powers above specified and the proceeds of any judgement collected by the Mortgagee for any default hereunder, together with the proceeds of any insurance, and of any claims for damages on account of the vessel received by the Mortgagee while exercising any of such powers, shall be applied as follows:

FIRST:       To the payment of all expenses and charges, including the expense of sale, the expense of taking of possession, and any other expenses or advances made or incurred by the Mortgagee in the protection of its rights hereunder including its expenses for legal advice and services; and to the payment of any damages sustained by the Mortgagee from the default or defaults of the Mortgagor with interest as provided herein, and, at the discretion of the Mortgagee, to provide adequate indemnity against liens claiming priority over this Mortgage.

SECOND:      To the payment of the indebtedness secured hereby with interest to the date of such payment.

THIRD:       Any surplus thereafter remaining shall belong and be paid to the Mortgagor, his successors and assigns, or to whomever may be entitled to receive the same, or as a court of competent jurisdiction may direct. Mortgagee shall be entitled to collect any deficiency from Mortgagor.

SECTION 6.    All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Mortgagor on demand with interest at 9% per annum and until so paid shall be a debt due from Mortgagor to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Mortgagor of any obligation or default with respect thereto.

## ARTICLE III
## POSSESSION UNTIL DEFAULT

Until default shall have been made in the due and punctual payment of any installment of the principal of the indebtedness secured hereby, or until there shall have been a default in the conditions, covenants or agreements herein contained, the Mortgagor shall be suffered and permitted to retain possession of the vessel and to manage, operate and use the same and to collect, receive, take, use and enjoy the earnings, income revenue, rents, issues and profits subjected to the terms and conditions of this instrument.

## ARTICLE IV - SUNDRY PROVISIONS

All covenants and agreements of Mortgagee herein contained shall bind Mortgagor, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Mortgagor herein, "his" shall mean "their."

The Vessel covered by this Mortgage is not a towboat, barge, scow, lighter, carfloat, canal boat or tank vessel of less than 25 gross tons, as such words are used in 46 USC 922.

FUTURE ADVANCES, This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Mortgagor has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized.

State of New York                      )
County of New York                     ) ss:

On the 18 day of October in the year 2001 before me the undersigned, a Notary Public in and for said state, personally appeared Spiros E. Kopelakis and Shirley B. Dreifus,
personally known to me or proved to me on the basis of satisfactory evidence to be an individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Elizabeth M Metro
Registration #4677468
NOTARY PUBLIC, STATE OF NEW YORK
Qualified in Niagara County
My Commission Expires January 31, 2003

Majestic Voyages, Inc.

By: _____
Spiros E. Kopelakis, President

By: _____
Shirley B. Dreifus, Secretary

AFFIDAVIT, AS TO GOOD FAITH, LIENS, ETC.

STATE OF _____        )
                                ) ss:
COUNTY OF _____        )

being (severally) duly sworn, depose(s) that he is (they are) the individual
Mortgagor(s) _____
General Partner (s) of _____
The Partnership, (Title) _____
of _____, the corporation,
described in and who (which) executed the foregoing Mortgage; and that the said Mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditor of the Mortgagor or any lienor of the Mortgaged vessel(s). There are no liens, encumbrances, charges or Mortgages outstanding against said vessel, other than the lien of the foregoing Mortgage.

If Mortgagor is a corporation, this affidavit is made pursuant to authority of its Board of Directors.

Subscribed and sworn to before me this _____ day of _____, 20_____.

_____
NOTARY PUBLIC

SEA LOAN NUMBER: 49551140-05

CONTROL NUMBER: 3364-00013

RECEIVED

2003 MAR -5 PM 3: 03

US SBA DAO 1
LEGAL DEPT.

# MODIFICATION
## OF
## PREFERRED
## MORTGAGE

$642,700.00                                                             October 2, 2031
Amount of Modified Mortgage                                             Final Maturity Date

Majestic Voyages, Inc.
(Mortgagor)

SOLE OWNER, 100%

TO
SMALL BUSINESS ADMINISTRATION (Mortgagee)

100%
ON

THE WHOLE OF THE VESSEL "Majestic Star" O.N. 1100715; Gross Tons 97; Net Tons 87; Home Port Surfside 3 Marina Chelsea Piers, Pier 60, New York, New York 10011; Place Issued National Vessel Doc Center; Issued May 18, 2001

FOR THE PURPOSE OF AMENDING THE PREFERRED MORTGAGE ON THE VESSEL Majestic Star made and given by Mortgagors to Mortgagee on February 13, 2003, received for record by THE UNITED STATES COAST GUARD, NATIONAL VESSEL DOCUMENTATION CENTER on October 26, 2001 at 10:00 am, recorded in Book No. 01-118, Page 695, and in consideration of the premises hereinafter set forth, it is agreed between Mortgagors and Mortgagee that the aforementioned Preferred Mortgage shall be amended and modified in the following particulars:

The principal sum of the Promissory Note said PREFERRED MORTGAGE secures has been increased from $401,200.00 to $642,700.00, and the monthly installment amount has been increased from $2,019.00 to $3,271.00, pursuant to a Modification of Promissory Note dated February 13, 2003. The final maturity of said Note as modified is October 2, 2031.

Except as hereinabove set forth, the aforementioned Preferred Mortgage shall remain otherwise in full force and effect.

IN WITNESS WHEREOF, Mortgagors have executed this MODIFICATION OF PREFERRED MORTGAGE this 21ˢᵗ day of FEB 20 03

COUNTY OF _New York_ )

STATE OF _New York_ )ss
)

I, _Rosemary N. Manoni_ , a notary public in and for said county and state, do hereby certify that _Spiros E. Kapdaitis_ _Shirley B Dreyfus_
personally appeared before me this day and acknowledged that they, being informed of the contents of the instrument, signed, delivered and executed the foregoing instrument. Witness my hand and notarial seal this the _25th_ day of _February_ , 20 _03_.

_Rosemary N. Manoni_
Notary Public

My Commission Expires: _____

ROSEMARY N. MANONI
Notary Public, State of New York
No. 41-4946063
Qualified in Queens County
Commission Expires 1/27/2007


IN WITNESS WHEREOF, the Mortgagee has executed this MODIFICATION OF PREFERRED MORTGAGE this _15th_ day of _February_ 20 _03_.

U.S. Small Business Administration

By: _____
James A. Pryor
Attorney/Advisor
Area 1 - Disaster Assistance


STATE OF NEW YORK    )
)ss
COUNTY OF NIAGARA    )


The undersigned, a Notary Public in and for said County, in the State aforesaid, do hereby certify that _James Pryor_ , personally known to me to be the same person whose name is subscribed in the foregoing instrument as Attorney/Advisor, for the Administrator of the Small Business Administration, appeared before me in person, and acknowledged that he/she, being duly authorized, signed, and delivered said instrument as the free and voluntary act for the uses and purposes therein set forth.


GIVEN under my hand and notarial seal, this _15th_ day of _February_ , 20 _03_.

_Gina R Street_
Notary Public

My Commission Expires: _____

GINA R. STREET
Registration # 01ST5037720
Notary Public, State of New York
Qualified in Erie County
My Commission Expires January 3, 2007

Control Number: